1  Janice F. Mulligan (State Bar No. 99080)
   mulligan@janmulligan.com
2  Elizabeth A. Banham (State Bar No. 131734)
   banham@janmulligan.com
3  Brian K. Findley (State Bar No. 251172)
   findley@janmulligan.com
4  **MULLIGAN, BANHAM & FINDLEY**
   2442 Fourth Avenue, Suite 100
5  San Diego, CA 92101
   Tel: (619)238-8700 | Fax: (619)238-8701
6
7  A.Mark Pope (State Bar No. 77798)
   pope@popeberger.com
8  Harvey C. Berger (State Bar No. 102973)
   berger@popeberger.com
9  **POPE, BERGER, WILLIAMS & REYNOLDS, LLP**
   401 B Street, Suite 2000
10 San Diego, California 92101
   (619) 595-1366 | Fax (619) 236-9677

11 Attorneys for Plaintiffs and the Putative Class

12                    **UNITED STATES DISTRICT COURT**

13                  **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SELENA MOORER, individually and on behalf of all others similarly situated, | ) Case No. 3:16-cv-02816-AJB-NLS |
| Plaintiffs, | ) **SECOND AMENDED CLASS ACTION COMPLAINT** |
| vs. | ) <u>Jury Trial Demanded</u> |
| STEMGENEX MEDICAL GROUP, INC., a California Corporation; STEMGENEX, INC., a California Corporation; STEM CELL RESEARCH CENTRE, INC., a California Corporation; ANDRE P. LALLANDE, D.O., an Individual; SCOTT SESSIONS, M.D., an Individual; RITA ALEXANDER, an Individual; and DOES 1-100, | ) 1. Violations of Bus. & Prof. Code §17200 et seq. (UCL); ) 2. Violations of Bus. & Prof. Code § 17500 et seq. (False Advertising) ) 3. Violations of Cal. Civ. Code §1750 et seq. (CLRA); ) 4. Violations of Cal. Health & Safety Code §24170, et seq. (Human Experimentation) |
| Defendants. | ) 5. Violation of 18 U.S.C. §1961 et seq. (RICO); ) 6. Fraud ) 7. Negligent Misrepresentation ) 8. [RESERVED] |

)   9.   Violation of Welf. & Inst. Code
)         §15600 et seq. (Financial Elder
)         Abuse)
)
)   Judge:  Hon. Anthony J. Battaglia
)   Dept:    3B (3rd Floor-Schwartz)

This case originated in the Superior Court for the State of California, County of San Diego.   The First Amended Complaint was filed in State Court before service and before any appearances were made by any Defendants.   The matter was then removed to Federal Court by Defendants.

This SECOND Amended Complaint is filed in response to Defendants' Notice of Motion and Motion to Dismiss First Amended Complaint under FRCP 8(a), 9(b) and 12(b), which was filed with the Federal Court and served *by mail* on Plaintiffs, who had not yet made an appearance in the Federal Court, on November 22, 2016. This Second Amended Complaint addresses the challenges made by that motion.   It dismisses the following parties, and a separate joint stipulation  as agreed will be filed with the court dismissing these parties *without prejudice*:   **SCOTT SESSIONS, M.D.;  Doe 1: STEM CELLS…THE HUMAN REPAIR KIT, a California Business Entity, Form Unknown; Doe 2: STEMGENEX BIOLOGIC LABORATORIES, a California Limited Liability Corporation;** and **Doe 3: STEM GENETIC, a California Business Entity, Form Unknown.**

This SECOND Amended Complaint adds a new Plaintiff putative class representative to this action, **ALEXANDRA GARDNER** ("Ms. GARDNER").   Ms. GARDNER will join STEPHEN GINSBERG, who appeared in the First Amended Complaint as a Plaintiff and who will particularly represent the putative Elder Subclass, as well as the original Plaintiff, SELENA MOORER (collectively, "The Plaintiffs").

The Plaintiffs, on behalf of themselves and all others similarly situated, hereby allege as follows:

## **NATURE OF ACTION**

1.      This is a class action against STEMGENEX MEDICAL GROUP, INC., and related persons and entities (collectively, "Defendants" or "StemGenex").  This action arises out of StemGenex's scheme to wrongfully market and sell "stem cell treatments" at their La Jolla, California location to consumers nationwide.

2.      StemGenex's consumers are often sick or disabled, suffering from incurable diseases and a dearth of hope.  StemGenex's marketing makes claims to these consumers that by performing liposuction of a person's adult fat cells, processing them, and injecting them back into a person as stem cells (the "Stem Cell Treatments"), they effectively treat a multitude of diseases.  StemGenex claims that 100% of its prior consumers are satisfied with its service.  StemGenex has no reasonable basis to make either of these claims.  StemGenex omits material information from all marketing about the Stem Cell Treatments and the dissatisfaction and complaints of ineffectiveness from people who have purchased the treatments.

3.      Plaintiff, SELENA MOORER, relied on StemGenex's false and misleading marketing and purchased a Stem Cell Treatment for $14,900.00.   Ms. Moorer brings this action on behalf of herself and a putative Class of wronged consumers, to seek remedies from this Court.

4.      Plaintiff, STEPHEN GINSBERG, also relied on StemGenex's false and misleading marketing and purchased a Stem Cell Treatment for at or about $14,900.00.   Mr. Ginsberg brings this action on behalf of himself and a putative Class of wronged consumers, as well as a subclass of "elders" under the law who have been harmed due to elder abuse, to seek remedies from this Court.

4A.      Plaintiff, ALEXANDRA GARDNER, also relied on StemGenex's false and misleading marketing and purchased a Stem Cell Treatment for $14,900.00. Ms. GARDNER brings this action on behalf of herself and a putative Class of wronged consumers, to seek remedies from this court.

**JURISDICTION AND VENUE**

5.     This matter has been removed from San Diego Superior Court to the United States District Court for the Southern District of California by Defendants. Jurisdiction and venue are proper in this Court because the actions at issue involves federal question and diversity, under 28 USC. Sections §§1331 and 1332(d).

6.     Jurisdiction of this Court is appropriate over the subject matter of this claim and the Defendants' marketing and sale of the Stem Cell Treatments. StemGenex's website represents that their services are not subject to evaluation or approval by the U.S. Food and Drug Administration (FDA), and that no approval has been sought by, or provided to, StemGenex, for its treatments, studies or research by the FDA.

7.     This Court has original jurisdiction to enforce this civil RICO action under 18 U.S.C. §1961 et seq.

**PARTIES**

A.  **Plaintiffs**

8.     Plaintiff, Selena Moorer ("Ms. Moorer") is a resident of the State of Florida who traveled to San Diego, California after relying on StemGenex's website, in order to have Stem Cell Treatment.   She was led by StemGenex to believe it would greatly improve her condition, lupus, an autoimmune disorder.   Ms. Moorer was greatly impressed by StemGenex's website (www.stemgenex.com), including indications on that site that all consumers were pleased with the outcomes of their treatments, statistics on the site showing no dissatisfaction by any consumers, and by video testimonials on the site.  Based on Defendants' misrepresentations and material omissions, Plaintiff took money she could ill-afford to spend and paid a non-refundable deposit of thousands of dollars to StemGenex, and thereafter flew to California with family members to undergo the treatment.   The total payment by Ms. Moorer to StemGenex, including the deposit, was $14,900.   This was the same base price paid to StemGenex by all other similarly situated consumers for each and every

Stem Cell Treatment.  Those consumers that had multiple treatments on different dates, again paid an additional minimum base price of $14,900 each time they returned to the company for a Stem Cell Treatment.   Ms. Moorer underwent the Stem Cell Treatment with StemGenex on or about April 5, 2016.  She did not benefit and also told the company she did not benefit and that she blamed them for a worsening of her condition.

9.     Plaintiff, Stephen Ginsberg ("Mr. Ginsberg") is a resident of the State of California, who traveled south to San Diego, California after relying on StemGenex's website, in order to have Stem Cell Treatment.   Mr. Ginsberg was at all times relevant over 65 years of age.   He was led by StemGenex to believe it would greatly improve his condition, diabetes, and other related conditions.    Mr. Ginsberg was greatly impressed by StemGenex's website ([www.stemgenex.com](www.stemgenex.com)), including but not limited to the statements about the number and percentage of satisfied consumers. Mr. Ginsberg paid StemGenex at or around $14,900 to get treatments in different parts of his body.  Mr. Ginsberg was given Stem Cell Treatment by StemGenex on or about November of 2015.  The treatment had no effect.   Mr. Ginsberg told StemGenex he received no effect from the treatment.

9A.     Plaintiff, **ALEXANDRA GARDNER** ("Ms. Gardner"), who is added by this SECOND Amended Complaint, is a resident of the State of Colorado, who traveled to San Diego, California after relying on StemGenex website, in order to have Stem Cell Treatment.  Ms. GARDNER particularly relied on the statistics of patient satisfaction ratings that appeared on the website at the time she and her family searched for possible treatments for her condition, Diabetes, which she has had since she was a baby.   Impressed by the website and those statistics, she and her family member made an appointment and traveled to San Diego to undergo the treatment.   Ms. GARDNER paid StemGenex $14,900.00 to have the treatment.  She underwent the treatment in July of 2015.   She had little to no effect from the treatment.   When she reported this to StemGenex, she

was told that it could take months for the treatment to take effect.  However, Ms. Gardner never experienced any significant positive effect from the treatment.

10.     Plaintiffs, and each of them, would not have paid for the Stem Cell Treatment had they known that the statistics on the StemGenex website regarding consumer satisfaction were false, and that StemGenex had no reasonable basis for its marketing claim that the Stem Cell Treatments were effective to treat diseases as advertised.

11.     Neither Ms. Moorer nor Mr. Ginsberg nor Ms. Gardner received any significant benefit or effect from the $14,900 Stem Cell Treatment they purchased from StemGenex.  They reported this to StemGenex.  StemGenex's website never varied its 100% client satisfaction approval statistics even after Ms. Moorer, Mr. Ginsberg, Ms. Gardner and others informed StemGenex of their dissatisfaction with the Stem Cell Treatments.  After StemGenex was informed of Ms. Moorer's dissatisfaction, StemGenex actually offered to sell her an additional Stem Cell Treatment for $14,900.

**B.  Defendants**

12.      The Defendants who are liable to Ms. Moorer, Mr. Ginsberg, Ms. Gardner,  and all others similarly situated, and from whom an injunction and other remedies are sought, are the following:

13.     STEMGENEX, INC., is an active California Corporation, located in the City of La Jolla, County of San Diego, State of California.   Its products and services are located in and it is doing business in the State of California.

14.     STEMGENEX MEDICAL GROUP, INC. is an active California Corporation, located in the City of La Jolla, County of San Diego, State of California. Its products and services are located in and it is doing business in the State of California.

15.     STEM CELL RESEARCH CENTRE, INC. is an active California Corporation, located in the City of La Jolla, County of San Diego, State of California. Its products and services are located in and it is doing business in the State of California.

16.     RITA ALEXANDER ("Ms. Alexander") is an individual residing in the County of San Diego, State of California.   Ms. Alexander is an owner, operator and/or controller of StemGenex, and its advertising, in whole or in part.   Plaintiffs also allege that Ms. Alexander is personally and directly liable to Plaintiffs and members of the Class on all Causes of Action below.   She is a Managing Agent who has authorized and ratified the actions alleged.

17.      ANDRE LALLANDE, D.O. ("Dr. Lallande") is an individual residing in the County of San Diego, State of California.   Dr. Lallande owns, operates and/or controls StemGenex and its advertising, in whole or in part.   Plaintiffs also allege that Dr. Lallande is personally and directly liable to Plaintiffs and members of the Class on all Causes of Action below.  He is a Managing Agent who has authorized and ratified the actions alleged.

18.     SCOTT SESSIONS, M.D. ("Dr. Sessions") *is dismissed without prejudice as of this SECOND AMENDED COMPLAINT, pending further discovery.*

19.     DOE Defendants 1 through 100, inclusive, whether individuals, corporations, partnerships or otherwise, are fictitious names of Defendants whose true names are, at this time, unknown to Plaintiffs. Plaintiffs are informed, believe, and thereon allege that each of said fictitiously-named Defendants contributed to the damages herein alleged and Plaintiffs will name such Defendants when their identities have been ascertained.

20.     Plaintiffs amended the original Complaint to add the following Defendants, initially identified as "DOES":

    a. DOE 1:  "STEM CELLS… THE HUMAN REPAIR KIT, a California Business Entity, Form Unknown";

b. DOE 2:   "STEMGENEX BIOLOGIC LABORATORIES, LLC, a California

Limited Liability Corporation"; and

c. DOE 3:  "STEM GENETIC, a California Business Entity, Form Unknown."    *These three Defendants are dismissed without prejudice as of this SECOND AMENDED COMPLAINT, pending further discovery.  If it is determined that Dr. Sessions or these entities are proper parties to this litigation, Plaintiffs will seek to amend to bring them back in with relation back to original filing.*

21.     Furthermore, Plaintiffs allege that the DOE Defendants in this action committed the same or similar acts alleged as the named Defendants in this cause of action. Therefore, all acts alleged to have been committed by the named Defendants are also alleged to have been committed by the DOE Defendants.

22.     Plaintiffs are informed, believe and thereon allege that each of the Defendants is the agent, joint venturer and/or employee of each of the remaining Defendants and in doing the things hereinafter alleged, each was acting within the course and scope of said agency, employment and/or joint venture with the advance knowledge, acquiescence or subsequent ratification of each and every remaining Defendant.

23.     All Defendants above, including DOES 1-100, are collectively referred to in this Complaint as "StemGenex."    Unless otherwise specified, "StemGenex" includes STEMGENEX, INC. and STEMGENEX MEDICAL GROUP, INC., and STEM CELL RESEARCH CENTRE, INC.

23A.   Certain representations complained of in this Second Amended Complaint continue to this day.   The **"Putative Class Period"**, with regard to misrepresentations and false and misleading information published to prospective consumers by StemGenex begins on December 8, 2013, as further described below.   It continues through present.

## ALTER EGO / PIERCE CORPORATE VEIL ALLEGATIONS

24.     Plaintiffs allege that some of the corporations, limited liability companies, and entities named as Defendants herein, including but not limited to DOES 1 through 100, and each of them, were at all times relevant the alter ego corporations of individual Defendants Ms. Alexander and Dr. Lallande by reason of the following:

(a) Plaintiffs allege that said individual defendants, at all times herein mentioned, dominated, influenced and controlled each of StemGenex Defendants and DOES and the officers thereof as well as the business, property, and affairs of each of said corporations.

(b) Plaintiffs allege that, at all times herein mentioned, there existed and now exists a unity of interest and ownership between said individual defendants and each of the StemGenex Defendants and DOES; the individuality and separateness of said individual defendants and each of the STEMGENEX entity Defendants and DOES have ceased.

(c) Plaintiffs allege that, at all times since the incorporation of each, each StemGenex entity Defendant and each DOE has been and now is a mere shell and naked framework which said individual defendants used as a conduit for the conduct of their personal business, property and affairs.

(d) Plaintiffs allege that, at all times herein mentioned, each of the StemGenex entity Defendants and each DOE was created and continued pursuant to a fraudulent plan, scheme and device conceived and operated by said individual Defendants Ms. Alexander and Dr. Lallande, whereby the income, revenue and profits of each of the StemGenex entities were diverted by said individual Defendants to themselves. Plaintiffs allege that STEM CELL RESEARCH CENTRE, INC., is a company formed in order to provide backing to previously published and published claims of clinical trials.   Plaintiffs allege that STEM CELL RESEARCH CENTRE, INC., is a company formed by RITA ALEXANDER for the purpose of avoiding liability of STEMGENEX and/or STEMGENEX MEDICAL GROUP.

(e) Plaintiffs allege that, at all times herein mentioned, each of the StemGenex entities and each DOE was organized by said individual defendants as a device to avoid individual liability and for the purpose of substituting financially irresponsible corporations in the place and stead of said individual defendants, and each of them, and accordingly, formed the entities and published the website Document about those entities hosted at www.stemgenex.com.

(f) Plaintiffs are informed and believe that the StemGenex entities and DOES were formed with capitalization totally inadequate for the business in which said corporation(s) were engaged.

(g) By virtue of the foregoing, adherence to the fiction of the separate corporate existence of each of the StemGenex corporate entities and each DOE would, under the circumstances, sanction a fraud and promote injustice in that Plaintiffs and members of the Class would be unable to realize upon any judgment in their favor.

25.     Plaintiffs allege that, at all times relevant hereto, the individual defendants Ms. Alexander and Dr. Lallande and the StemGenex entity Defendants and DOES acted for each other in connection with the conduct hereinafter alleged and that each of them performed the acts complained of herein or breached the duties herein complained of as agents of each other and each is therefore fully liable for the acts of the other.

## COMMON FACTUAL ALLEGATIONS

### A.    What is StemGenex?

26.     StemGenex was founded by a non-physician, Ms. Alexander.  It receives profits and revenues through the sale of Stem Cell Treatments to persons who have illnesses or medical conditions causing pain and/or disability.   Ms. Alexander directs and controls the businesses of STEMGENEX, STEMGENEX MEDICAL GROUP, INC. and STEM CELL RESEARCH CENTRE, INC., and/or their advertising and public representations.

27.     StemGenex's Stem Cell Treatments are carried out by Andre Lallande, D.O., and other individual physicians, with the assistance of other individuals who are

employees and/or agents of StemGenex.   Dr. LALLANDE directs and controls the businesses of STEMGENEX, STEMGENEX MEDICAL GROUP, INC. and STEM CELL RESEARCH CENTRE, INC., and/or their advertising and public representations, particularly statements of a medical nature in those publications.

28.     Defendant, StemGenex, Inc. has been operating in La Jolla, California, since 2011.   The primary operating facility and headquarters of StemGenex is located in La Jolla, California. STEMGENEX MEDICAL GROUP, INC., is a related company which is owned, operated and/or controlled by RITA ALEXANDER and/or Dr. LALLANDE, operating out of that same facility.   STEM CELL RESEARCH CENTRE, INC. is also noted in public filings to be operating out of that same location.   Unless otherwise noted below, "StemGenex" refers to all these entities, and each of them.   Representations relating to the website are published under the authority, control and/or authorization of RITA ALEXANDER and/or Dr. LALLANDE.

29.     Through July 2016, StemGenex represented on its website that it was accredited by the Accreditation Association for Ambulatory Care (AAAHC), which provides seals of approval for outpatient surgical centers.  The following logo was published on StemGenex's website, at the bottom of nearly every page:



30.     Plaintiffs are informed and believe that StemGenex was not, in fact, accredited by AAAHC.  Plaintiffs are informed and believe that the accreditation logo was removed from StemGenex's website in August 2016, when a newspaper reporter from the Los Angeles Times confronted StemGenex about the false accreditation and AAAHC issued a cease-and-desist letter to StemGenex.

### B.   What does StemGenex do?

31.   StemGenex holds itself out to consumers as a pioneer in research and devoted to effective Stem Cell Treatments, making representations during the putative Class Period such as the following on its website:

> StemGenex Medical Group has made great strides in the advancement of stem cell therapy and is dedicated to providing patients access to safe and effective stem cell treatments.

32.   Using its website and internet ads which direct consumers to that website, StemGenex pitches its services at people with crippling diseases, including Alzheimer's, Parkinson's disease, chronic lung disease, autoimmune conditions (such as multiple sclerosis, lupus, and rheumatoid arthritis) as well as many other debilitating conditions.

33.   Ms. Moorer, Mr. Ginsberg, Ms. Gardner and all others similarly situated, have been subject to StemGenex's repeated false advertising, deception, and misrepresentation regarding the quality, character and efficacy of its Stem Cell Treatment, as well as omissions of material fact regarding the truth about its services, the lack of data supporting their efficacy, and dissatisfaction rates.  StemGenex's website highlights this variety of claimed Stem Cell Treatments (sometimes referred to as "therapy") on its home page, with the following representations made during the putative Class Period:

**Stem Cell Therapy Studies**

**Alzheimer's Stem Cell Therapy**

With the onset of Alzheimer's disease, information transfer at the synapses (the connection between the nerve cells and extensions) starts to break down, and the number of synapses decreases significantly.

LEARN MORE

**Autoimmune Stem Cell Therapy**

Autoimmune diseases are conditions in which the patient's immune system generates cellular and antibody responses to substances and tissues normally present in the body.

LEARN MORE

**COPD Stem Cell Therapy**

In each condition there is chronic obstruction of the flow of air through the airways and out of the lungs, and the obstruction generally is permanent and may be progressive over time.

LEARN MORE

**Rheumatoid Arthritis Stem Cell Therapy**

Rheumatoid Arthritis is an autoimmune disease that attacks the body's own tissues, specifically the synovium, a thin membrane lining the joints. As a result, joint fluid builds up, causing pain in the joints and inflammation that's systemic.

LEARN MORE

**Parkinson's Stem Cell Treatment**

Parkinson's disease is a chronic progressive neurological disease that affects nerve cells (neurons) in an area of the brain known as the substantia nigra.

LEARN MORE

**Osteoarthritis Stem Cell Therapy**

Osteoarthritis, or degenerative joint disease, is the most common type of arthritis. It is caused by the degradation of a joint's cartilage.

LEARN MORE

**Multiple Sclerosis Stem Cell Treatment**

Multiple sclerosis (or MS) is a degenerative disease involving the deterioration of nerve cells. MS attacks the central nervous system (CNS), which is made up of the brain, spinal cord, and optic nerves.

LEARN MORE

**Diabetes Stem Cell Therapy**

Diabetes is the condition in which the body does not properly process food for use as energy. When you have diabetes, your body either doesn't make enough insulin or can't use its own insulin as well as it should.

LEARN MORE

34.     StemGenex represents that they can effectively treat degenerative diseases generally accepted by the relevant scientific community as incurable:

> StemGenex Medical Group offers patients access to cutting-edge adipose stem cell therapy for many degenerative diseases. We offer patients access to stem cell treatments with a level of quality and patient-centric care that simply cannot be found elsewhere. StemGenex Medical Group utilizes board-certified surgeons and a accredited surgical center along with our own PhD neuroscientist setting forth and refining stem cell processing protocols. These cutting-edge protocols utilize targeted administration methods and the latest activation methods to ensure the safest most effective stem cell treatments possible. We believe in providing patients with IRB approved studies for stem cell treatments registered through The National Institutes of Health. Through these stem cell therapy studies, we hope to provide patients with options that may change the course of their lives as well as the course of their disease.

35.     The StemGenex business is fueled by its robust website advertising campaign, which reaches consumers nationwide and beyond.  StemGenex represents on its website that "over 70% of patients travel to StemGenex Medical Group from out of state."  StemGenex directs internet traffic, including social media traffic, and requests for information to its website, which Plaintiffs are informed and believe is viewed by every prospective StemGenex Stem Cell Treatment purchaser throughout the country.   Through this advertising and subsequent direct contact made with the company , StemGenex, including but not limited to STEMGENEX, STEMGENEX MEDICAL GROUP and STEM CELL RESEARCH CENTRE, INC., received dozens or more paying patients a month for stem cell treatments, during the Putative Class Period.

36.     StemGenex's website represents that it's "adult adipose-derived stem cell therapy" is "effective" to "treat diseases":

## The Future is Here

**The StemGenex Medical Group prides itself in being the world-wide pioneers in providing stem cell therapy to patients throughout the world and is passionately committed to helping people with unmet clinical needs achieve optimum health and better quality of life through the healing benefits of their own stem cells.**

As the premiere leader in the United States for regenerative medicine, StemGenex Medical Group is dedicated to providing stem cell therapy options to help individuals suffering with inflammatory and degenerative illnesses. Board Certified Physicians administer safe and effective adult adipose-derived stem cell therapy, a minimally invasive procedure using an individual's own stem cells to treat diseases including Multiple Sclerosis, Parkinson's, Rheumatoid Arthritis, COPD and Osteoarthritis.

37.    "Adipose-derived" means from the fatty tissue of the body.  StemGenex' website offers treatments based on injecting consumers with stem cells supposedly drawn and created from their own adult body fat.    The Stem Cell Treatments offered at StemGenex begin with liposuction – they take part of the consumer's belly fat and then, after minimal processing, inject the "stem cells" back into the same spot, and/or other spots on the body.

38.    StemGenex appeals to consumers with the thought they will be receiving special attention, getting an approach that is not "cookie-cutter", and that this will increase the effectiveness of the treatment:

> **Customized Treatment Plans**
>
> Every patient treated through StemGenex Medical Group receives a customized treatment plan based upon the disease and complications they are experiencing. Stem cell treatment centers using a cookie-cutter approach to stem cell therapy undoubtedly limit the effectiveness of the patient's treatment. StemGenex Medical Group treatment plans consist of cutting edge protocols developed by top physicians over the years. Patients receiving treatment through StemGenex Medical Group can be confident they will always have access to the latest advancements in stem cell treatment.

39.     StemGenex at various times represents its work as treatment, and at other times as "studies."   This is often done within the same paragraph.   As an example, on its home page, StemGenex represents, "These cutting-edge protocols utilize targeted administration methods and the latest activation methods to ensure the safest **most effective** stem cell *treatments* possible." (Emphasis added.)  StemGenex offers at the end of the same paragraph:  "Through these stem cell therapy *studies*, we hope to provide patients with options that may change the course of their lives as well as the course of their disease." (Emphasis added.)  In the recesses of its website, and completely contrary to its own promises and representations in all prominent portions of the website, StemGenex attempts to quietly disavow that "treatment using autologous stem cells [that is, cells drawn from the patient's own body] are a cure for any condition, disease or injury."

40.     StemGenex apparently does not publish its <u>research</u> nor the results of its "studies" anywhere to the knowledge of Plaintiffs. Instead, it presents "anecdotal" video testimonials from clients. According to StemGenex' website, its "principal purpose is helping people with unmet clinical needs achieve optimum health and better quality of life," and that it has "**anecdotal feedback**…. from our patients that their symptoms have dramatically improved and their quality of life has substantially increased." (Emphasis added).   These anecdotal testimonials are in violation of the Federal Trade Commission's guides for endorsements on social media, which

represent the applicable standard of care for these types of advertisements.   The testimonials do not reflect that the results are not typical nor does it disclose clearly and conspicuously the generally expected circumstances.  StemGenex does not have adequate proof to back up the claims that the results shown in the ad are typical. Additionally, endorsements by employees or paid or compensated individuals should be identified as such.  The video segments on the website are therefore further misrepresentations published by StemGenex.

40A.   In July of 2014, RITA ALEXANDER formed STEM CELL RESEARCH CENTRE, INC.   By that time, Defendant StemGenex, including but not limited to STEMGENEX, STEMGENEX MEDICAL GROUP, Ms. ALEXANDER and Dr. LALLANDE, had been advertising that STEMGENEX was engaging in clinical trials.  By that time, those same Defendants had also been publishing patient statistics of satisfaction.  RITA ALEXANDER formed STEM CELL RESEARCH CENTRE, INC., in order to bolster publication of false patient satisfaction statistics and false data collection for clinical "trials." Ms. ALEXANDER admitted during the Putative Class Period that STEM CELL RESEARCH CENTRE, INC., was a corporation formed to avoid liability of STEMGENEX and STEMGENEX MEDICAL GROUP.   At all times, RITA ALEXANDER, STEMGENEX, STEMGENEX MEDICAL GROUP, Dr. LALLANDE and STEM CELL RESEARCH CENTRE, INC. (the latter since its formation in 2014) were involved in the publication of false information with regard to the involvement in clinical trials – particularly that there was active participation and/or scientific gathering and/or reporting of medical evidence – and that patients were 100% satisfied with the outcome of their procedures.

41.     StemGenex admits that its Stem Cell Treatment is ***not FDA approved***. Indeed Plaintiffs can find no evidence that Defendants ever even submitted an application for FDA approval.  The ability of stem cells derived from adult body fat to

rebuild damaged tissue or neurons in the human body by injection is an unproven hypothesis.  At the present time, ***no such therapy has shown its safety and efficacy in clinical trials, as the FDA requires before approval.***   **During the pendency of this action**, Defendants have added a small print disclaimer, still non-prominent, to the bottom of each page of their website that says, "Stem cell therapy is not FDA approved and is not a cure for any medical condition."   This disclaimer was not on the various pages of the website at the times Putative Class Members, and Putative Class Representatives Ms. Moorer, Mr. Ginsberg and Ms. Gardner, saw and relied on the website.  It also contradicts other, more prominent claims on the website.

42.    Experts will testify that the generally accepted scientific consensus is that there is <u>no</u> treatment for degenerative diseases, or any disease, with a person's own adult adipose stem cells, that has been proven "effective" at any level. Yet StemGenex promises consumers "the most effective stem cell treatments possible," giving the consumer the clear impression that some "effect" will occur if they pay for the "treatment."

43.    Certain language is repeated over and over on its site, creating an echo of benefit.  StemGenex uses terms like "truly benefit" and "significantly improve one's quality of life."   On virtually <u>every page</u> of its website, StemGenex makes the following claim:

StemGenex Medical Group offers access to individualized stem cell treatment plans. Most stem cell treatment centers and clinics offer a standard treatment utilizing an IV or direct injections. We believe the key to the most effective stem cell treatment is through treatment plan customization. As each patient's disease is different, each treatment must be tailored around their specific disease related complications and symptoms. This is why StemGenex Medical Group offers access to individualized treatment plans which consist of targeted administration methods to hone in on each part of the body where the complications exist. Through customized, targeted stem cell treatment plans our goal is to offer patients access to stem cell treatment options a patient can truly benefit from to significantly improve one's quality of life.

44.     StemGenex, including but not limited to RITA ALEXANDER, Dr. LALLANDE, STEMGENEX, STEMGENEX MEDICAL GROUP and STEM CELL RESEARCH CENTRE, INC. omits on these pages the information it knows to be true:  **Aside from a possible placebo effect, it cannot make any supportable claims regarding this experimental therapy's ability to treat, cure, mitigate, relieve or impact ANY disease, condition or malady**.

C.     **Who Buys StemGenex's Treatments?**

45.     Many of StemGenex's consumers are ill and/or disabled from work. Most are seeking hope and some possibility of an effective and lasting treatment for their disease, or at least an improvement in their relative levels of disability.  Many are in great financial hardship because of a preexisting disease.

46.     StemGenex puts the consumers up in hotels and supplies them a car service to get to and from the clinic once they arrive in the San Diego area.   Photos of

a lovely hotel and happy people entering a limo grace the pages of the site under the section, "We Make Getting Here Easy."

**D.**      **How Much Money Do Consumers Pay StemGenex?**

47.     Sadly, because of their desperation, many consumers with serious conditions rely on their families to help them to pay StemGenex.  All consumers must pay a non-refundable initial deposit and then an additional payment for a total base price of $14,900 *per treatment*, exclusive of "add-ons."  This cost is not covered by health insurance plans.  This cost is not covered by government benefit programs such as Medicare or Medicaid.

47A.   Of interest, payments for the surgery must be made in advance, and StemGenex requires all patients to pay in the form of a cashier's check for the balance after deposit.  This is part of the scheme to avoid return of funds due to dissatisfaction, and easier liquidity of funds.

48.     Consumers are encouraged by StemGenex employees to begin crowd-sourcing fundraising activities, such as "Go Fund Me" pages, in order to raise the money to pay for StemGenex's fees.

49.     StemGenex promotes the idea that consumers should have more than one Stem Cell Treatment.  This is done both on its website, and in follow-up calls to consumers, even those that are in the hospital undergoing other treatments.  The representation is made on StemGenex' website:  "*Could a stem cell therapy be repeated*?  Yes, a stem cell therapy may be repeated.  **Current studies indicate the strong possibility of a cumulative effect from multiple stem cell therapies a consumer received for their condition**.  Long-term studies will attempt to better understand this detail."   RITA ALEXANDER and Dr. LALLANDE, on behalf of themselves and StemGenex, and their employees at their direction sold the consumers another treatment if they were unhappy with the outcome of the first treatment. RITA ALEXANDER and Dr. LALLANDE, on behalf of themselves and StemGenex, encouraged the manipulation of data to appear as if consumers were satisified.  RITA

ALEXANDER and Dr. LALLANDE, on behalf of themselves and StemGenex, authorized and ratified that statements of dissatisfaction be kept out of the patients' medical files. RITA ALEXANDER and DR. LALLANDE, on behalf of themselves and StemGenex, authorized and ratified that statements of dissatisfaction be not revealed to the public. RITA ALEXANDER and Dr. LALLANDE, on behalf of themselves and StemGenex discouraged employees from speaking out about these practices. Managers of StemGenex, on behalf of RITA ALEXANDER and DR. LALLANDE, and with their authorization and ratification, changed the wording of notes to make it appear that the patients were satisfied when they were not.

50. StemGenex, including RITA ALEXANDER, Dr. LALLANDE, STEMGENEX, STEMGENEX MEDICAL GROUP and STEM CELL RESEARCH CENTRE, INC., has no reasonable basis to make this claims of cumulative effect of treatments making the patients better. Dissatisfied consumers are simply led to believe that the first treatment did not 'take' and that the consumers should return for more, expensive Stem Cell Treatments.

50A. The persons leading dissatisfied consumers to believe that the treatments take more time to work are called "Patient Advocates". These StemGenex employees are under the control of RITA ALEXANDER and/or DR. LALLANDE. Patient advocates often have no medical training, but make statements of a medical nature to prospective consumers and also to those who are calling back in with questions or statements of dissatisfaction. As an example, they will qualify patients for treatment, telling them they can have treatments and/or are telling them they need two treatments. Employees of StemGenex make commissions for the sale of the treatments. Dr. Lallande also often sells patients supplements or other costly treatments if their initial treatment is reported to have not worked.

51. Consumers are told by StemGenex employees at the direction and control of RITA ALEXANDER and DR. LALLANDE: "Some consumers have taken up to 6

months before seeing the full effect of the treatment." And, StemGenex posts the following:

▼ **How long will it take to see results?**

Each condition and patient is unique, and there is no guarantee of what results will be achieved or how quickly they may be observed. Most patients report the results become apparent over 1-3 months, but it can take as long as 6-9 months.

**E.** **What About StemGenex's 100% Satisfied "Patient Ratings"?**

52. On or about December 8, 2013, StemGenex, through the direction of RITA ALEXANDER and/or Dr. LALLANDE, began advertising "**Patient Ratings**." On December 17, 2013, a Press Release was published by StemGenex through the direction of RITA ALEXANDER and/or Dr. LALLANDE, stating, "StemGenex®, the leading resource for adult adipose stem cell therapy in the US aimed at improving the lives of patients dealing with degenerative diseases today announced the public release of their satisfaction ratings for patients who have received stem cell therapy through StemGenex. Patients have trusted StemGenex for years to provide them with access to cutting edge stem cell therapies at the absolute highest levels of care. StemGenex believes this is something that has been lacking in the industry for some time now. These ratings now allow the public transparency into patient satisfaction in multiple categories which are now posted and updated monthly on the StemGenex website."

53. As an example, at the time of drafting of this Complaint, the ratings appear on the home page of StemGenex's website in the following format:



54.      The "Patient Ratings" from July of 2016, on the home page of StemGenex's website, read as follows:



SECOND AMENDED COMPLAINT



55.     In all of StemGenex's representations to the public, for August of 2016 through present, the satisfaction levels add up to **100% of consumers being satisfied.** StemGenex made these same or substantially similar representations of 100% consumer satisfaction all the way back to at least December 2013.

56.     <u>**StemGenex, including but not limited to STEMGENEX, STEMGENEX MEDICAL GROUP, RITA ALEXANDER and Dr. LALLANDE (and STEM CELL RESEARCH CENTRE, INC. since its inception) knows, and knew at all times of publication, the 100% satisfaction rate was and is not true and evidence available to StemGenex proves it was not true at the time the representations were made**</u>.   At the time of these publications of 100% satisfaction, and those earlier since December of 2013, StemGenex had received complaints, including but not limited to statements from consumers that no effect had been experienced, the promised effect had not been experienced, and/or that they wanted a refund because StemGenex did not live up to its promises.   During the Putative Class Period, on multiple occasions, employees of StemGenex were directed by RITA

ALEXANDER and DR. LALLANDE to not record, or to change records, about the **actual** satisfaction rates.  Again, at all times during the Putative Class Period, it was falsely made to appear on the website by RITA ALEXANDER, DR. LALLANDE, STEMGENEX, STEMGENEX MEDICAL GROUP, and/or STEM CELL RESEARCH CENTRE, INC., that 100% of patients were at least satisfied, if not extremely satisfied.  The express wording was used "0% Unsatisfied" at points in the Putative Class Period until this lawsuit was filed.  Also, in an effort to bolster satisfaction rates, Dr. LALLANDE and/or a nurse under his direction or that of RITA ALEXANDER, during the Putative Class Period, would go to patients' hotel rooms the day after their surgery and be there while patients filled out the patient survey and take the survey back from them at that time.  This control of the "survey results" further ensured that they would be less likely to "rate" the experience as anything but satisfactory.   This also had the effect of achieving a "rating" before the patients actually had time to truly and accurately report on the effects of the surgery or their satisfaction with this service/product.    Also, when prospective consumers called, the StemGenex sales team was made to claim a high percentage of satisfaction, as is further reported in Exhibit "1".

57.     StemGenex knew that not all persons who receive or received its Stem Cell Treatment are benefited or satisfied and a significant portion are dissatisfied. Nevertheless, **StemGenex's statements and representations to the public contain <u>false and misleading information</u> that misrepresent or omit this information and StemGenex is being, and has been, unjustly enriched as a result.**  StemGenex's marketing of its product is in violation of laws of the state of California and the United States. Plaintiffs and others have been harmed by reliance on StemGenex's misrepresentations and omissions.

58.     StemGenex's methods for gathering information from former consumers follows no systemic protocol, is inaccurately recorded, and does not accurately measure consumer satisfaction. As a result, month after month, false and misleading

"consumer ratings" are posted anew in a prominent position on their website.  These monthly false "statistics" give consumers a sense of comfort and willingness to go forward with the treatment.  **They, STEMGENEX, STEMGENEX MEDICAL GROUP, STEM CELL RESEARCH CENTRE, INC., RITA ALEXANDER and Dr. LALLANDE, during the Putative Class Period, make the express statement that NO ONE was unsatisfied with the service at any time prior.  <u>After this action was on file,</u> the language has changed to no longer show the exact quote "0% Unsatisfied", although the graph shows 100% expectations met.   The overall EFFECT of this statement still makes the same appearance to prospective consumers:  that there are still no unsatisfied consumers.**

**F.      <u>What About Positive Consumer Reviews On Other Websites?</u>**

59.      **False reviews** have been posted by StemGenex on various consumer review websites, through the direction and authorization of RITA ALEXANDER and/or Dr. LALLANDE.  At least prior to Nov. 2015, StemGenex requested its own employees to write reviews of the company as if they were actual consumers, and to give high ratings.  These or other false ratings were then published by agents and/or employees of StemGenex, at the direction of RITA ALEXANDER and Dr. LALLANDE about StemGenex, which gave the public another further sense of security that the product/service they were purchasing was of high and effective quality.  As evidence and support of this, Plaintiffs attach as "Exhibit 1" a review on the employment site Glassdoor.com, which appears even now on the website from a former employee.   "StemGenex's Response" from C.E.O. RITA ALEXANDER appears following it, indicating knowledge of the employee who posted that information publicly on Nov. 24, 2015.

**G.      <u>What Can Be Done About It?</u>**

60.      StemGenex has taken advantage of desperate consumers, particularly consumers that are sick with degenerative and incurable diseases, and has given false hope to consumers who can ill afford their fees, at times encouraging them to take out

loans or solicit funds from others in order to pay them.  They have not told the truth to the public about their services, via false statements, misleading statements, and material omissions.  They have taken large amounts of money from the Class members under false pretenses.

61.     The false and misleading representations complained of in this lawsuit are made primarily via StemGenex's primary marketing tool, its website.  Further, aside from StemGenex's website, this action is based upon the material omission of important information from any communication by StemGenex to its consumers: That StemGenex has no data or reasonable basis to support the efficacy of its Stem Cell Treatments, meaning, that they are different from a placebo effect in any significant way, at actually treating, curing, mitigating, relieving or impacting any disease, condition or malady.

62.     While individual actions by consumers would be expensive, time consuming, and unlikely to support the cost of litigation, StemGenex's wronged consumers, as well as its prospective consumers and the public at large, would be benefited by the damages and injunctive relief requested here on a class-wide basis.

## **CLASS ACTION ALLEGATIONS**

63.     Plaintiffs bring this action on behalf of themselves and all others similarly situated as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

64.     The Class which Plaintiffs seek to represent is defined as follows: All persons, nationwide, who purchased Stem Cell Treatment from StemGenex between December 8, 2013 and present.

65.     Plaintiff, Stephen Ginsberg, seeks to represent a subclass, defined as follows: *Elder Abuse Subclass:*  All members of the Class aged 65 years or older at the time of purchase.

66.     Excluded from the Class are (i) StemGenex, which includes STEMGENEX, STEMGENEX MEDICAL GROUP, STEM CELL RESEARCH

CENTRE, INC., RITA ALEXANDER and DR. LALLANDE, any entity in which StemGenex has a controlling interest or which has a controlling interest in StemGenex, and StemGenex's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) StemGenex's employees, officers, directors, agents, and representatives and their family members; and (iv) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family.

67.     Plaintiffs reserve the right to amend the Class definition if discovery and/or further investigation reveal the Class should be expanded or otherwise modified.

68.     This action has been brought and may properly be maintained as a class action, because there is a well-defined community of interest in the litigation in which common issues predominate, the Class is so numerous as to make it impracticable to bring all of its members before the Court, and the proposed class is easily ascertainable.

69.     **Numerosity**. StemGenex's Stem Cell Treatment is and was sold directly by StemGenex in California, and was marketed through the internet to consumers throughout the United States. Plaintiffs are informed and believe that the proposed putative Class is made-up of at least several hundred, if not thousands, of residents of California and other U.S. states.

70.     **Common Issues Predominate**. Common questions of law and fact exist as to all members of the Class and predominate over any questions which affect only individual members of the Class. This action is based primarily upon false and misleading statements made by StemGenex about consumer satisfaction and efficacy of its Stem Cell Treatments via its primary point of contact with consumers, its website (www.stemgenex.com), as well as material omissions.  The StemGenex website contained the false and misleading statements complained of in this action from December 8, 2013 through the date of the filing of this complaint.  Each class member purchasing Stem Cell Treatments from StemGenex would have viewed

identical false and misleading statements as complained of in this action.  Plaintiffs are informed and believe that no Class member was provided the information alleged as material omissions in this complaint, via the website or otherwise.  The StemGenex website and dissemination of information about StemGenex's Stem Cell Treatments was within StemGenex's possession and control at all relevant times.  There is a well-defined community of interest in the questions of law and fact involved and that affect consumers who purchased the Stem Cell Treatments.  These questions of law and fact predominate over questions that affect only individual Class members. The common questions of law and fact include, without limitation:

i. Whether StemGenex's statements and statistics regarding prior consumer satisfaction were false or misleading;

ii. Whether StemGenex's statements regarding the efficacy of its Stem Cell Treatments were false or misleading;

iii. Whether StemGenex knew and/or recklessly disregarded the falsity or misleading nature of their statements;

iv. Whether StemGenex concealed and failed to disclose material facts in its communications and disclosures to Plaintiffs and Class members regarding its Stem Cell Treatments;

v. Whether StemGenex has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in connection with the marketing and sale of its Stem Cell Treatments;

vi. Whether StemGenex's conduct constitutes violations of law as alleged in this Complaint;

vii. Whether consumers are and were likely to be deceived by StemGenex's conduct;

viii. Whether, as a result of StemGenex's misconduct, Plaintiffs and the Class members have suffered damages, and if so, the appropriate amount thereof; and

ix. Whether, as a result of StemGenex's misconduct, Plaintiffs and Class members are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

71. **Typicality**.   Plaintiffs' claims are typical of the claims of the Class members in that Plaintiffs and the Class members made a direct purchase from StemGenex based upon identical, false and misleading marketing statements made by StemGenex.  StemGenex made the same uniform omissions to all consumers. Therefore, the claims of Plaintiffs are and will be typical of Class members.

72. **The Class is Ascertainable**. Plaintiffs have adequately and objectively defined the Class, as detailed above, so the Court and Class members will be able to use the definition to determine Class membership.

73. **Adequacy**.  Plaintiffs will fairly and adequately represent the interests of all Class members. Plaintiffs have purchased a stem cell treatment from StemGenex and are adequate representatives of the Class as they have no interests which are adverse to the interests of absent Class members.  Plaintiffs have retained counsel with experience and success in the prosecution of complex medical and consumer class action litigation.

74. **Superiority**.  A class action is superior to other available means for the fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  The disposition of their claims in this case and as part of a single class action lawsuit, rather than hundreds or thousands of individual lawsuits, will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds of separate lawsuits. Furthermore, given the extraordinary expenses and burden in  conducting discovery and presentation of evidence, the burden of individual litigation would make it extremely difficult, if not impossible for

individual members of the Class to redress the wrongs asserted herein, while an important public interest will be served by addressing the matter as a class action. Moreover, separate prosecution by hundreds or thousands of individual members of the Class would likely establish inconsistent standards of conduct for the StemGenex and result in the impairment of and potential harm to, Class members' rights and the disposition of their interests through actions to which they were not parties. Plaintiffs are informed and believe that a great amount of time and expense will be saved by conducting the discovery and presentation of evidence in a single class action lawsuit, in contrast to the repeated discovery and presentation of evidence in hundreds or thousands of separate lawsuits brought on the common questions presented by the allegations of this complaint. Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

### **FIRST CAUSE OF ACTION**

(Violations of Cal. Bus. & Prof. Code § 17200 et seq.)

*Against All Defendants*

75.     Plaintiffs repeat and re-allege all paragraphs within this SECOND AMENDED COMPLAINT and incorporate them as if fully set forth herein.

76.     Plaintiffs bring this cause of action on behalf of themselves and the Class, pursuant to California Business and Professions Code, §17200, et seq. specifically making allegations as particularly stated in Paragraphs 8 through 23A and 26 through 62

77.     StemGenex's conduct constitutes unfair, unlawful and fraudulent business acts and/or practices because StemGenex's practices have caused and are likely to cause substantial injury to Plaintiffs and the Class, which injury is not reasonably avoidable by Plaintiffs and the Class in light of StemGenex's exclusive knowledge of the truth about its Stem Cell Treatments, its consumer satisfaction rates, and the basis for claims about the efficacy of its Stem Cell Treatments, though it

misrepresented, concealed and omitted this truth. Such conduct is ongoing and continues to this date.

78.     StemGenex's acts and practices are unlawful because they violate the Consumer Legal Remedies Act, Civil Code 1750 et seq., Bus. & Prof. Code § 17500, and the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1961 et seq., as alleged in this Complaint and incorporated here by reference.

79.     StemGenex's acts and practices are fraudulent in that they have deceived and/or are "likely to deceive" Plaintiffs and a significant portion of the consuming public and/or of targeted consumers. StemGenex sold Plaintiffs and Class members Stem Cell Treatments and/or induced them to make deposits for such treatments, for which they made false and misleading statements, and omitted material information, in order to induce reliance and encourage deposits and purchases by Plaintiffs and members of the Class.

80.     StemGenex was obliged to disclose the material facts because: a) StemGenex had exclusive knowledge of the material facts not known to Plaintiffs and Class members, since only StemGenex had access to the aggregate data from its consumers, its own research and tests, and complaints from its consumers; and b) StemGenex actively concealed and suppressed the material facts from Plaintiffs and Class members in regard to the true facts available on those subjects.

81.     The injury to consumers is substantial, particularly due to the substantial cost of the Stem Cell Treatments. Plaintiffs and Class members paid thousands of dollars for Stem Cell Treatments that they would not otherwise have spent, had they known the truth about the Stem Cell Treatments. The Stem Cell Treatments are worth substantially less than Plaintiffs and Class members paid for them, if anything at all.

82.     The injury to consumers is not outweighed by any countervailing benefits to consumers or competition. Any purported benefits to consumers are negated by consumers' interests in knowing the true facts regarding services offered for purchase, particularly medical or pseudo-medical treatments they are purchasing at substantial

cost.  Consumers have an important interest in being informed of this information at an adequate time and location remote from purchase and performance of the service, in order to make an intelligent and informed decision about whether to purchase the service.

83.    The injury to consumers is not an injury that consumers themselves could reasonably have avoided because consumers did not know the true facts regarding the Stem Cell Treatments and had no reason to believe that StemGenex's statements were false, misleading, or omitted material information.

84.    StemGenex's acts and practices offend established public policy and are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers.

85.    Plaintiffs and Class members relied on StemGenex's unfair, unlawful and fraudulent conduct and would not have purchased the Stem Cell Treatments or would have paid less for the Stem Cell Treatments had StemGenex conducted itself fairly with respect to the transactions. StemGenex's conduct caused Plaintiffs' and Class members' injuries in that Plaintiffs and Class members would not have purchased the Stem Cell Treatments, would have paid less for them, or would not have paid deposits for them, had StemGenex conducted itself fairly during the transactions.

86.    StemGenex's unfair, unlawful and fraudulent business acts and practices directly and proximately caused Plaintiffs' and Class members' injuries as complained of in this complaint.  StemGenex's omissions and misrepresentations have a tendency to deceive a significant portion of the consuming public and/or of targeted consumers.

87.    Plaintiffs and Class members seek an order of this Court awarding restitution, injunctive relief and all other relief allowed under Section 17200, et seq., plus interest, attorneys' fees, and costs.

/

/

**SECOND CAUSE OF ACTION**

(Violations of Cal. Bus. & Prof. Code § 17500 et seq.)

*Against All Defendants*

88.     Plaintiffs repeat and re-allege all paragraphs within this SECOND AMENDED COMPLAINT and incorporate them as if fully set forth herein.

89.     Plaintiffs bring this cause of action on behalf of themselves and the Class pursuant to California Business and Professions Code, §17500, et seq., with more specific allegations as particularly stated in Paragraphs 8 through 23A and 26 through 62

90.     StemGenex is a "person" as defined by Cal. Bus. & Prof. Code § 17506.

91.     StemGenex falsely advertised the Stem Cell Treatments by making partial, false and misleading representations, while omitting material information, as alleged in this complaint.

92.     StemGenex's false advertising has deceived and is "likely to deceive" Plaintiffs and Class members.

93.     Plaintiffs and Class members relied on StemGenex's false advertising to their detriment in that they would not have purchased the Stem Cell Treatments or made non-refundable deposits on the same, had StemGenex disclosed the true facts.

94.     StemGenex's false advertising directly and proximately caused Plaintiffs' and Class members' injuries in that StemGenex's false statements, misleading statements and omissions were a substantial factor in their deposits and purchases of the Stem Cell Treatments and at the significant amount that was charged, and that but for StemGenex's failures to disclose material information, Plaintiffs and Class members would not have put deposits upon, paid for and/or overpaid for the treatments.

95.     Plaintiffs and Class members have suffered injury in fact and have lost money as a result of StemGenex's false advertising as above.

96.     Pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17535, Plaintiffs seek an order 1) requiring StemGenex to immediately cease the unlawful, unfair, and or fraudulent business acts and/or practices and false and misleading advertising complained of herein; 2) enjoining StemGenex from continuing to falsely advertise the Stem Cell Treatments; and 3) requiring StemGenex to provide full restitution to Plaintiffs and Class members, plus interest and attorneys' fees.

## THIRD CAUSE OF ACTION

(Violations of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. – Seeking Injunctive Relief and Damages)

*Against All Defendants*

97.     Plaintiffs repeat and re-allege all paragraphs within the SECOND AMENDED COMPLAINT and incorporate them as if fully set forth herein.

98.     Plaintiffs seek to enjoin StemGenex's violation of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 et seq. Plaintiffs also seek damages on behalf of themselves and the Class, specifically alleging as particularly already stated in Paragraphs 8 through 23A and 26 through 62.

99.     At all times relevant hereto, Plaintiffs and Class members were "consumer[s]" as that term is defined in Civ. Code § 1761(d).

100.    At all times relevant hereto, StemGenex constituted a "person" as that term is defined in Civ. Code § 1761(c).

101.    StemGenex's false statements, misleading statements and omissions as detailed in this complaint represented that their services had sponsorship, approval, characteristics, ingredients, uses, benefits or qualities that they do not have and that their personnel has sponsorship, approval, status, affiliation or connection that they do not have, in violation of Cal. Civ. Code §1770 (a)(5).

102.    StemGenex's false statements, misleading statements and omissions as detailed in this complaint represented that their services are of a particular standard, quality or grade when they are not, in violation of Cal. Civ. Code §1770 (a)(7).

103.    StemGenex's false statements, misleading statements and omissions as detailed in this complaint advertised services with intent not to sell them as advertised, in violation of Cal. Civ. Code §1770 (a)(9).

104.    At all times relevant hereto, Plaintiffs' and Class members' purchases of StemGenex's Stem Cell Treatments and deposits for the same constituted a "transaction" as that term is defined in Civ. Code § 1761(e).

105.    At all times relevant hereto, StemGenex provided "services" to Plaintiffs and members of the Class within the meaning of Civil Code § 1761(b).

106.    Plaintiffs and Class members would have behaved differently by not purchasing the Stem Cell Treatments from StemGenex, or paying deposits toward them, and/or by paying less for the Stem Cell Treatments, had they been aware of the true facts.

107.    StemGenex was obliged to disclose the material facts because: a) StemGenex had exclusive knowledge of the material facts not known to Plaintiffs and Class members, since only StemGenex had access to the aggregate data from its consumers, its own research and tests, and complaints from its consumers; and b) StemGenex actively concealed and suppressed the material facts from Plaintiffs and Class members in regard to the true facts available on those subjects.

108.    Plaintiffs and Class members justifiably acted or relied to their detriment upon the false statements, misleading statements, and concealment and/or non-disclosure of material facts as evidenced by their purchases of the Stem Cell Treatments.  Had StemGenex disclosed the true material facts, Plaintiffs and the Class members would have behaved differently by not buying the service, not paying deposits, and/or paying less.

109.    StemGenex's false statements, misleading statements, and omissions of material facts directly and proximately caused Plaintiffs' and Class members' injuries in that Plaintiffs and Class members would not have overpaid for the Stem Cell

1  Treatments, or purchased them at all. As such, Plaintiffs and Class members did not

2  receive the benefit of the bargain.

3      110.    Cal. Civ. Code § 1780 (a)(2) permits any court of competent jurisdiction

4  to enjoin practices that violate Civil Code § 1770.  Pursuant to Cal. Civ. Code §

5  1782(d), Plaintiffs seek injunctive relief under this cause of action.

6      111.    Plaintiff Selena Moorer, on behalf of herself and all others similarly

7  situated, sent StemGenex a notice letter that complies with Cal. Civ. Code § 1782(a).

8  On August 30, 2016, the notice period of that letter expired.  At the time of this filing,

9  StemGenex has not satisfied any of the elements of Cal. Civ. Code § 1782(c)(1)-(4),

10  on indicated its agreement to satisfy those elements.  Plaintiffs now amend this

11  complaint to include a claim for damages under the CLRA:

12      (a) As a result of such conduct in violation of California Civil Code §§1770, et

13          seq., Plaintiffs and members of the Class have suffered damages. Plaintiffs

14          and members of the Class had actual reliance on Defendants'

15          misrepresentations and suffered actual injury as a result of those

16          misrepresentations.

17      (b) Pursuant to California Civil Code §1780, et seq., Plaintiffs and members of

18          the Class are entitled to actual damages, punitive damages, court costs and

19          attorneys fees.

20      (c) The aforesaid acts of Defendants, and each of them, which were performed,

21          authorized and/or ratified by Defendants' officers, directors and/or managing

22          agents were malicious, fraudulent  and/or oppressive, as defined by Civil

23          Code Section 3294, therefore justifying an award of exemplary and punitive

24          damages.

25          /

26          /

27          /

28          /

## **FOURTH CAUSE OF ACTION**

(Violation of Human Experimentation Law –

Cal. Health & Safety Code § 24170, et seq.)

*Against All Defendants*

112.    Plaintiffs repeat and re-allege all paragraphs within the SECOND AMENDED COMPLAINT and incorporate them as if fully set forth herein.

113.    Pursuant to *California Health & Safety* Code Section 24175(a), no person shall be subjected to a medical experimentation.  The practice of administering adipose derived stem cell therapy to treat, prevent, or mitigate various diseases is not FDA approved and remains classified experimental in nature.  Ms. Moorer and Mr. Ginsberg, including others similarly situated, were misled **particularly into believing that StemGenex had no unsatisfied other patients**, and did not give informed consent to be part of a medical experiment in which there had been previously unsatisfied participants.  This claim for illegal human experimentation via the Stem Cell Treatments arises under Section 24175 (a)(1), requiring that a patient be properly informed of investigational research.   Plaintiffs specifically plead as particularly alleged in Paragraphs 8 through 23A and 26 through 62.

114.    The wording of the StemGenex website and other materials runs directly counter to the notification requirements of human experimentation law.  StemGenex was required to inform its patients in accord with 21 CFR 50.27(a), as well as California Health & Safety Code Section 24172(a) and (b), which also requires the patient be informed and consent.

115.    Under Health & Safety Code Section 24173, "informed consent" means the authorization given pursuant to Section 24175 to have a medical experiment performed after **each** of the following conditions, and others in the code, have been satisfied:

(c) The subject or subject's conservator or guardian, or other representative, as specified in Section 24175, is informed both verbally and within the written

consent form, in nontechnical terms and in a language in which the subject or the subject's conservator or guardian, or other representative, as specified in Section 24175, is fluent, of the following facts of the proposed medical experiment, which might influence the decision to undergo the experiment, including, but not limited to:

(1) An explanation of the procedures to be followed in the medical experiment and any drug or device to be utilized, including the purposes of the procedures, drugs, or devices. **If a placebo is to be administered** or dispensed to a portion of the subjects involved in a medical experiment, all subjects of the experiment shall be informed of that fact; however, they need not be informed as to whether they will actually be administered or dispensed a placebo.

(2) A description of any attendant discomfort and risks to the subject reasonably to be
expected.

(3) **An explanation of any benefits to the subject reasonably to be expected, if applicable.**

(4) A disclosure of **any appropriate alternative procedures**, drugs, or devices that might be advantageous to the subject, and their relative risks and benefits.
….

(11) The material financial stake or interest, if any, that the investigator or research institution has in the outcome of the medical experiment.   For purposes of this section, "material" means ten thousand dollars ($10,000) or more in securities or other assets valued at the date of disclosure, or in relevant cumulative salary or other income, regardless of when it is earned or expected to be earned.

116.    Consent under this code must be voluntarily and freely given by the human subject or the conservator or guardian, or other representative, as specified by Section 24175, without the intervention of any element of force, **fraud, deceit, duress, coercion, or undue influence.**    Plaintiff and members of the Class were defrauded and did not voluntarily and freely give consent.

117.    The Stem Cell Treatments to Plaintiffs and members of the Class fall under Section 24174 "medical experiment", which means:   (a) The severance or penetration or damaging of tissues of a human subject or the use of a drug or device, as defined in Section 109920 or 109925, electromagnetic radiation, heat or cold, or a biological substance or organism, in or upon a human subject in the practice or

research of medicine in a manner not reasonably related to maintaining or improving the health of the subject or otherwise directly benefiting the subject.   .....

118.   Under Section 24175 (a) no person shall be subjected to any medical experiment unless the informed consent of such person is obtained.  Informed consent was not obtained from Plaintiffs nor any of the other Class Members.

119.   As a result of the negligent failure to obtain informed consent on these experiments, StemGenex and all Defendants are liable for damages under Section 24176  (a) Any person who is primarily responsible for conduct of a medical experiment and who **negligently** allows the experiment to be conducted without a subject's informed consent, as provided in this chapter, shall be liable to the subject in an amount not to exceed ten thousand dollars ($10,000), as determined by the court. The minimum amount of damages awarded shall be five hundred dollars ($500).

120.   Plaintiffs allege in the alternative that the failure to obtain informed consent was intentional.  As a result of the intentional failure to obtain informed consent on these experiments, StemGenex and all Defendants are liable for damages under Section 24176 (b) Any person who is primarily responsible for the conduct of a medical experiment and who **willfully** fails to obtain the subject's informed consent, as provided in this chapter, shall be liable to the subject in an amount not to exceed twenty-five thousand dollars ($25,000) as determined by the court. The minimum amount of damages awarded shall be one thousand dollars ($1,000).

121.   Each and every medical experiment performed in violation of any provision of this chapter is a separate and actionable offense.

122.   **Any attempted or purported waiver** of the rights guaranteed, or requirements prescribed by this chapter, whether by a subject or by a subject's conservator or guardian, or other representative, as specified in Section 24175, **is void.**

123.   Plaintiffs and the members of the Class pray for all damages available under *Cal. Health & Safety Code* § 24170, et seq.

# **FIFTH CAUSE OF ACTION**

(Violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) –

18 U.S.C. §1961 et seq.)

*Against All Defendants*

124.    Plaintiffs repeat and re-allege all paragraphs within this SECOND AMENDED COMPLAINT and incorporate them as if fully set forth herein.

125.    At all relevant times, RITA ALEXANDER and DR. LALLANDE, individual and through  StemGenex employees acting at their direction, used StemGenex to conduct substantial business in the State of California, including marketing, advertising, and performing its treatments in the State and in the County of San Diego.

126.    StemGenex is an "enterprise" within the meaning of 18 U.S.C. §1961(4), through which Defendants conducted the pattern of racketeering described in this Complaint.

127.    RITA ALEXANDER and Dr. LALLANDE, individually and through StemGenex employees acting at their direction  used StemGenex, STEMGENEX, STEMGENEX MEDICAL GROUP, STEM CELL RESEARCH CENTRE, INC. (collectively "StemGenex") to engage in, and perform activities affecting interstate commerce through a business enterprise involving activities across state lines, including, but not limited to, a national internet marketing campaign and direct solicitation of consumers in other states by telephone, including Plaintiffs. StemGenex's business activities with other members of the Class involved communication, solicitation of business, requests for payments and transfer of payments by Class members to StemGenex, in exchange for Stem Cell Treatments, via its website, mail, email, telephone, and bank wires.  For example, members of the Class, including Plaintiffs Ms. Moorer, Mr. Ginsberg and/or Ms. Gardner were routinely directed to and did give credit card information over the phone to StemGenex employees in the amount of $2,500.00 as a *nonrefundable* deposit, and

class members were told on the telephone words to the effect to hand carry across state lines to California, a cashier's check for the remaining balance owed to StemGenex which the consumer then delivered to StemGenex employees upon arrival in California. With the specific intent to defraud, RITA ALEXANDER and Dr. LALLLANDE, individually and through StemGenex employees acting at their direction, used these methods of payment in furtherance of their scheme to commit fraud knowing both the deposit and the cashier's check were nonrefundable. This method of payment involving nonrefundable credit card deposits required to be given over the telephone and nonrefundable cashier's checks hand carried over state lines to California were routinely required for members of the Class again and again, and as such formed a pattern of racketeering by these Defendants.

128.    With the specific intent to defraud, Defendants, and each of them, including RITA ALEXANDER and DR. LALLANDE, individually and through StemGenex employees acting at their direction, exercised substantial control over the affairs of the StemGenex enterprise, through creation and approval of its marketing materials and scheme to defraud consumers, providing capital, collateral and/or guarantees to fund the scheme, providing services to perform the Stem Cell Treatments and further the scheme, instructing, encouraging and incentivizing StemGenex employees and personnel to participate in the fraudulent scheme, including by posting positive, false consumer reviews on multiple internet websites, and other means.

129.    The StemGenex enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which Defendants, and each of them, have engaged. The StemGenex enterprise is separate and distinct from each Defendant alone.

130.    Defendants, including RITA ALEXANDER and DR. LALLANDE, STEMGENEX, STEMGENEX MEDICAL GROUP, STEM CELL RESEARCH CENTRE, INC., and each of them, were knowing and willing participants in the

scheme, and reaped revenues and/or profits from it.  StemGenex Defendants, and each of them, knowingly, willfully and unlawfully conducted or participated, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§1961(1), 1961(5) and 1962(c), as described in this Complaint.  The racketeering activity was made possible by the regular and repeated use of the facilities, services, distribution channels and employees of the StemGenex enterprise.

131.   The racketeering acts were not isolated, but rather were related in that they had the same or similar purposes and results, participants, victims and methods of commission.  Further, the racketeering acts were continuous, occurring on a regular basis beginning by at least December 8, 2013, when Defendants, including RITA ALEXANDER , Dr. LALLANDE, STEMGENEX, STEMGENEX MEDICAL GROUP, (and STEM CELL RESEARCH CENTRE, INC. upon its inception) began advertising its false patient satisfaction review statistics, and continuing through the present.

132.   In devising and executing the Scheme, StemGenex, its personnel, Defendants and each of them, committed acts constituting indictable offenses under 18 U.S.C. §§1341 and 1343, in that Defendants RITA ALEXANDER, DR. LALLANDE, directed employees of STEMGENEX, STEMGENEX MEDICAL GROUP and/or STEM CELL RESEARCH CENTRE, INC. to devise and knowingly carry out a material scheme or artifice to defraud or to obtain money by means of materially false or fraudulent pretenses, representations, promises, or omissions of material facts. For the purpose of executing the scheme, Defendants committed these racketeering acts, which number in the hundreds or thousands, intentionally and knowingly, with the specific intent to advance the illegal scheme.

133.   StemGenex, Defendants, and each of them, used hundreds or thousands of mail and interstate wire communications throughout the Class period to create and

perpetuate the Scheme through virtually uniform misrepresentations, concealments and material omissions.

134.    Plaintiffs and members of the Class relied on the fraudulent misrepresentations and omissions by StemGenex, Defendants, and each of them, were harmed by the scheme, and are entitled to treble damages, attorney's fees, and other relief authorized by 18 U.S.C. §1964(c) and the RICO Act.

## <u>SIXTH CAUSE OF ACTION</u>

(Fraud)

*Against All Defendants*

135.    Plaintiffs repeat and re-allege all paragraphs in this SECOND AMENDED COMPLAINT and incorporate them as if fully set forth herein.

136.    StemGenex, by and through its managing agents RITA ALEXANDER and/or Dr. LALLANDE intentionally misrepresented or caused to be intentionally misrepresented to Plaintiffs and members of the Class that it had no dissatisfied consumers, when in fact that was not true.   StemGenex repeatedly published charts/pie charts/diagrams that showed 100% of its consumers' expectations were met and that 0% were satisfied.  This was untrue and StemGenex knew it at the time of StemGenex's publication.   As used in this cause of action, "StemGenex" includes STEMGENEX, STEMGENEX MEDICAL GROUP, INC., STEM CELL RESEARCH CENTRE, INC., RITA ALEXANDER and Dr. LALLANDE.  All allegations in this cause of action were done by RITA ALEXANDER and/or Dr. LALLANDE on behalf of themselves and StemGenex, as if individually set forth herein, and with incorporation of the detailed specific allegations above.    As to each of the allegations in this Cause of Action, please see the incorporated specific allegations of Paragraphs 8 through 23A and 26 through 62, herein.

137.    Additionally, as particularly alleged in Paragraphs 8 through 23A and 26 through 62,StemGenex intentionally misrepresented to Plaintiffs and members of the Class that they would truly benefit from the StemGenex Stem Cell Treatment when in

fact StemGenex had no reasonable supporting data or other reasonable basis to claim that this was true.

138.    Additionally, as particularly alleged in Paragraphs 8 through 23A and 26 through 62, StemGenex intentionally misrepresented to Plaintiffs and members of the Class that they would significantly improve from the StemGenex Stem Cell Treatment when in fact StemGenex had no reasonable supporting data or other reasonable basis to claim that this was true.

139.    These intentional misrepresentations constitute fraud.  StemGenex perpetrated this fraud on Plaintiffs and members of the Class by purveying these false statements on its website at www.stemgenex.com.

140.    StemGenex also perpetrated this fraud on Plaintiffs and members of the Class by making similar verbal false statements to them.   When Plaintiffs called StemGenex as a result of being drawn in through the website during the Putative Class Period, Patient Advocates would repeat the statements as particularly alleged in Paragraphs 8 through 23A and 26 through 62

141.    StemGenex also perpetrated this fraud on Plaintiffs and members of the Class by publishing or directing to be published false and fabricated reviews of its services on the internet.   Plaintiffs will provide supporting evidence related to this, as shown in Exhibit "1".

142.    StemGenex knowingly concealed and omitted material information from its consumers as described in this Complaint, as particularly alleged in Paragraphs 8 through 23A and 26 through 62, despite a duty to disclose the information.

143.    StemGenex knew that the representations above were false when they made them or StemGenex made the representations recklessly and without regard for their truth, as particularly alleged in Paragraphs 8 through 23A and 26 through 62.

144.    StemGenex intended that Plaintiffs and the members of the Class rely on StemGenex' representation.  StemGenex knew that by putting out information that all consumers, 100%, were satisfied or extremely satisfied with its services that

consumers would be more apt to go forward with this expensive full payment and service, as particularly alleged in Paragraphs 8 through 23A and 26 through 62.

145.   Plaintiffs and the members of the Class relied on the false representations and material omissions.   Their reliance upon StemGenex's representations was justified because of the manner in which StemGenex made the representations.   This included an impressive website with not just a statement about the statistics, but round graphic representations.   These statistics were simply "cooked up" and were not based on actual and complete consumer feedback.  In fact, at the time, StemGenex knew that some consumers were dissatisfied, had had no effects and/or wanted their money back.  RITA ALEXANDER and DR. LALLANDE knew this, but took steps to conceal this from the public, for the benefit of themselves and StemGenex entities, and each of them.   But, Plaintiffs and members of the Class had no reasonable way to know this.     The reasonable reliance also came about because of powerful and persuasive on-line reviews which were actually manufactured by StemGenex itself through direction to its agents and employees.   This also included firm and repeated verbal false statements about the nature, quality and efficacy of the StemGenex's Stem Cell Treatment.

146.   Plaintiffs and the members of the Class were harmed.  Defendants have taken money from them on false pretenses.

147.   Plaintiffs' and Class members' reliance on StemGenex's false representations and material omissions was a substantial factor in causing their harm. Plaintiffs pray for damages for intentional misrepresentation/fraud as below, and exemplary and punitive damages to punish and make an example of Defendants.

## SEVENTH CAUSE OF ACTION

(Negligent Misrepresentation)

*Against All Defendants*

148.   Plaintiffs repeat and re-allege all paragraphs within this SECOND AMENDED COMPLAINT and incorporate them as if fully set forth herein.

149.    StemGenex, including misrepresented to the Plaintiffs and members of the Class that it had no dissatisfied consumers, when in fact that was not true.  As used in this cause of action, "StemGenex" includes STEMGENEX, STEMGENEX MEDICAL GROUP, INC., STEM CELL RESEARCH CENTRE, INC., RITA ALEXANDER and Dr. LALLANDE.  All allegations in this cause of action were done by RITA ALEXANDER and/or Dr. LALLANDE on behalf of themselves and StemGenex, as if individually set forth herein, and with incorporation of the detailed specific allegations above.    As to each of the allegations in this Cause of Action, please see the incorporated specific allegations of Paragraphs 8 through 23A and 26 through 62, herein.

150.    StemGenex misrepresented to Plaintiffs and members of the Class that they would truly benefit from the StemGenex Stem Cell Treatment when in fact StemGenex had no reasonable supporting data or other reasonable basis to claim that this was true.

151.    StemGenex misrepresented to Plaintiffs and members of the Class that they would significantly improve from the StemGenex Stem Cell Treatment when in fact StemGenex had no reasonable supporting data or other reasonable basis to claim that this was true.

152.    StemGenex omitted material information from disclosure to Plaintiffs and the members of the Class, though it had a duty to disclose it.

153.    StemGenex may have believed its representations were reasonably made and omitted information was reasonably concealed or not disclosed, but its belief was unreasonable and fell below the applicable duty of care.

154.    StemGenex intended Plaintiffs and members of the Class to rely on these representations and its disclosures.

155.    Plaintiffs and the members of the Class reasonably relied on StemGenex' representations.

156.    Plaintiffs and the members of the Class were harmed.

157.   Plaintiffs and the members of the Class' reliance on the representations and material omissions, and each of them, was a substantial factor in causing their harm.

## EIGHTH CAUSE OF ACTION

### (Unjust Enrichment) - WITHDRAWN

*Against All Defendants*

158-163.  [RESERVED]

## NINTH CAUSE OF ACTION

(Financial Elder Abuse; Violation of Welfare & Institutions Code §15600, et seq.)

*By Plaintiff, STEPHEN GINSBERG, and All Others Similarly Situated, Against All DEFENDANTS*

164.   Plaintiffs repeat and re-allege all paragraphs within this SECOND AMENDED COMPLAINT and incorporate them as if fully set forth herein.

165.   At all times herein mentioned, Plaintiff Stephen Ginsberg and all other members of the Putative Class who reside in the State of California and are over the age of 65 are "elders" as defined by California Welfare & Institutions Code Section 15610.27.   These persons are referred to in this Complaint as "the Elder Subclass."  At all relevant times mentioned, Defendants stood in a position of trust to the Elder Subclass.   Elder Subclass Representative, Stephen Ginsberg, was over the age of 65 at the time of his Stem Cell Treatment and at all times has resided in California.

166.   As set forth above, the Defendants made false representations to Stephen Ginsberg and the Elder Subclass, took advantage of their conditions and unduly influenced them to give money in exchange for no real consideration. Further, Defendants have not returned to Stephen Ginsberg and the Elder Subclass the money taken.

167.     The above-described false representations, taking advantage of elderly persons and undue influence were wrongful and in bad faith, and Defendants engaged in such conduct for their sole economic gain to the detriment of Stephen Ginsberg and the Elder Subclass.  Defendants' conduct constitutes "financial abuse" of elders as defined by California Welfare & Institutions Code §§ 15610.30 and 15610.07(a).

167A.   StemGenex, including but not limited to STEMGENEX, STEMGENEX MEDICAL GROUP, STEM CELL RESEARCH CENTRE, INC., RITA ALEXANDER and Dr. LALLANDE, took, secreted, appropriated or retained funds from elderly individuals such as STEPHEN GINSBERG and they knew or should have known that their conduct as alleged herein was harmed.   They knew or should have known that their conduct was harmful to elderly adults.   They took, secreted, appropriated, obtained and/or retained money from elders for their wrongful use and with intent to defraud as particularly alleged in Paragraphs 8 through 23A and 26 through 62.

167B.   StemGenex, including but not limited to STEMGENEX, STEMGENEX MEDICAL GROUP, STEM CELL RESEARCH CENTRE, INC., RITA ALEXANDER and Dr. LALLANDE took, secreted, appropriated, obtained and/or retained money from Mr. GINSBERG and other elders by undue influence as particularly alleged in Paragraphs 8 through 23A and 26 through 62.

167C.   StemGenex, including but not limited to STEMGENEX, STEMGENEX MEDICAL GROUP, STEM CELL RESEARCH CENTRE, INC., RITA ALEXANDER and Dr. LALLANDE took and retained this money for their own use and profit, which was their wrongful use of the elders' money.

167D.   The misrepresentations and efforts to defraud as particularly alleged in Paragraphs 8 through 23A and 26 through 62, did not take place simply through the website.  Rather, as to each and every of the elders in this subclass, after they were drawn in to StemGenex through its marketing, they were then further sold on the service through the further misrepresentations of the "Patient Advocates", who were under the direction and control of RITA ALEXANDER, Dr. LALLANDE, and other managing agents of StemGenex.

167E.    These elders were vulnerable, in that they all had conditions which StemGenex claimed to treat.  They were in need of relief for their conditions, and were retirees and/or on limited incomes.  They were influenced by the aggressive campaign of StemGenex, and the false statistics and graphs making it appear that there were no unsatisfied consumers.  The influencer, StemGenex and its managing agents and employees, and particularly the "Patient Advocates", drew the elders in with their representations, particularly about the high number of people this had worked for/large number of satisfied consumers, as further alleged in Paragraph 56, and as further shown in Exhibit "1".  The result was highly inequitable, with the subclass spending large sums of money for the unproven and usually ineffective treatment.

168.    As a proximate result of Defendants' conduct and the facts herein alleged that Plaintiffs have suffered damages in the jurisdictional limits of this court, the exact amount to be determined according to proof at trial.

169.    Under the circumstances set forth above, Defendants' false and fraudulent representations to Stephen Ginsberg and the Elder Subclass, their taking advantage of Stephen Ginsberg and the Elder Subclass' age and weakened physical and mental states, and their undue influence to obtain money from Plaintiffs, constitutes unfair and deceptive acts against elders.

169A.  Control, falsehoods and secrecy was used to gain the respect and payments of these elders.  They used excessive persuasion filled with inaccurate information that caused the elders to choose this method of treatment over others.  Defendants occupied a position of trust when they began to give them medical advice over the website and the phone.   They were then in a position of trust and were able to exert undue influence.  Also, when the Elder Subclass went to lengths to come to San Diego to undergo these treatments, they were further in a position where they were vulnerable to Defendants and their tactics.

170.    In summary, Defendants knew and specifically directed their conduct at elders.   Defendants' conduct caused Plaintiff, Stephen Ginsberg to sustain a substantial loss of money which could have better been used for other important expenses, assets/funds essential to the health and welfare of the Plaintiffs.   Moreover, Stephen Ginsberg and the Elder Subclass were more vulnerable to Defendants' wrongful conduct than other members of the public because of, among other things, their age, ill health and the trust and confidence placed in Defendants.  Stephen Ginsberg and the Elder Subclass actually suffered substantial damage resulting from Defendants' conduct. **Therefore, Stephen Ginsberg and the Elder Subclass are also entitled to treble damages pursuant to California Civil Code §3345(b).**

171.    The above conduct of Defendants was despicable, willful, malicious, fraudulent, and oppressive conduct which subjected Stephen Ginsberg and the Elder Subclass to cruel and unjust hardships in conscious disregard of their rights, so as to justify an award of exemplary and punitive damages in an amount to be determined by the trier of fact.

172.    Pursuant to California Welfare & Institutions Code §15657, Stephen Ginsberg and the Elder Subclass are entitled to recover their attorneys' fees and costs.

# **PRAYER**

WHEREFORE, Plaintiffs, individually, on behalf of the Class and on behalf of the public, pray for judgment against Defendants as follows:

1.      That this action be certified as a class action, pursuant to Code of Civil Procedure §382 and/or the Consumer Legal Remedies Act, Civil Code §1781;

2.      That this law firm be appointed as counsel for the Class;

3.      That Plaintiffs be appointed Class Representatives as requested in this Complaint;

4.      That Plaintiffs be afforded a jury trial on behalf of themselves and the Class, and a jury trial is demanded;

5.      That pursuant to the CLRA, UCL and False Advertising Law, all defendants, their officers, directors, principals, assignees, successors, agents, representatives, employees, subsidiaries, affiliates, and all persons, corporations and other entities acting by, through, under, or on behalf of said defendants, or acting in concert or participation with them, be permanently enjoined from directly or indirectly making any illegal, untrue or misleading statements in violation of the CLRA, Business and Professions Code §§ 17200 et seq. and 17500 et seq., including, but not limited to, the untrue or misleading statements alleged in this complaint;

6.      Awarding Plaintiffs and members of the Class, pursuant to California Civil Code §1750, et seq., actual damages, punitive damages, court costs and attorneys' fees.

7.      Awarding Plaintiffs and members of the Class treble damages and attorney's fees as authorized by 18 U.S.C. §1964(c).

8.      Ordering the disgorgement of all sums unjustly obtained from Plaintiffs, the members of the Class and the public;

9.      Ordering defendants to make restitution to Plaintiffs, the members of the Class and the public;

10.     Awarding Plaintiff, Stephen Ginsberg, and members of the Elder Subclass treble damages pursuant to Civil Code §3345, in an amount according to proof at trial;

11.     Awarding Plaintiff, Stephen Ginsberg, and members of the Elder Subclass attorney's fees and costs under Welfare and Institutions Code §15657;

12.     Awarding Plaintiff, Stephen Ginsberg, and members of the Elder Subclass statutory penalties, attorney fees and costs, and injunctive relief under California Health & Safety Code §1430(b);

13.     Awarding Plaintiffs and the members of the Class compensatory damages according to proof;

14.     Awarding Plaintiffs and the members of the Class general damages according to proof;

15.     Awarding Plaintiffs and the members of the Class economic damages according to proof;

16.     Awarding Plaintiffs and the members of the Class damages for violation of Cal. Health & Safety Code § 24170, et seq.

17.     Awarding Plaintiffs and members of the Class and Elder Subclass punitive and exemplary damages according to proof;

18.     Awarding prejudgment and post-judgment interest at the maximum legal rate;

19.     Awarding attorneys' fees according to proof;

20.     Awarding costs of suit; and

21.     All such other and further relief as the Court deems just and proper.

Dated:  December 13, 2016              MULLIGAN, BANHAM, & FINDLEY
                                       /s/ Brian K. Findley
                                       Brian K. Findley, Esq.
                                       findley@janmulligan.com
                                       Attorneys for Plaintiff and the Putative Class