1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT

9        SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  SELENA MOORER, individually and on behalf of all others similarly situated, | Case No.:  3:16-cv-02816-AJB-NLS |
| 12 | |
| 13                              Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |
| 14  v. | |
| 15  STEMGENEX MEDICAL GROUP, INC., a California Corporation; STEMGENEX, INC., a California Corporation; STEM CELL RESEARCH CENTRE, INC., a California Corporation; ANDRE P. LALLANDE, D.O., an individual; RITA ALEXANDER, an individual; and Does 1-100, | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20                              Defendants. | |
| 21 | |

22          Presently before the Court is Defendants' Stemgenex Medical Group, Inc.,

23   Stemgenex, Inc., Stem Cell Research Centre, Inc., Andre P. Lallande, D.O., and Rita

24   Alexander (collectively, "Defendants") motion to dismiss Plaintiffs' Selena Moorer,

25   Stephen Ginsberg, and Alexandra Gardner (collectively, "Plaintiffs") Second Amended

26   Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6).

27   (Doc. No. 33.) Having reviewed the parties' moving papers and controlling legal authority,

28

the Court finds the motion suitable for determination on the papers without oral argument pursuant to Local Rule 7.1.d.1. Accordingly, the motion hearing presently set for April 13, 2017 is **VACATED**. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

### BACKGROUND

On August 22, 2014, Plaintiffs filed a putative class action complaint against Defendants in the Superior Court of California, County of San Diego, alleging violations of California's Unfair Competition Law, Business and Professions Code section 17200, *et seq*., ("UCL"), California's False Advertising Law, Business and Professions Code section 17500, *et seq*., ("FAL"), California's Consumer Legal Remedies Act, California Civil Code section 1770, *et seq*., ("CLRA"), California's Health and Safety Code section 24170, *et seq*., ("Human Experimentation"), 18 U.S.C. section 1961, *et seq*., ("RICO"), Fraud, Negligent Misrepresentation, and Unjust Enrichment. (Doc. No. 1-2.) On September 15, 2016, Plaintiffs filed a First Amended Complaint, ("FAC"), to include a claim for damages under the CLRA. (Doc. No. 1-3.) The FAC contained similar factual allegations, but added Plaintiff Stephen Ginsberg to the action and alleged an additional claim for Financial Elder Abuse. (*Id*.) On November 16, 2016, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(a) and (b). (Doc. No. 1.)

On November 22, 2016, Defendants moved to dismiss the FAC on nearly identical grounds as their instant motion. (Doc. No. 6.) On December 13, 2016, Plaintiffs filed their SAC, (Doc. No. 24), and the Court denied Defendants' motion to dismiss as moot. (Doc. No. 25.) The SAC added Plaintiff Alexandra Gardner and withdrew the claim for unjust enrichment. (*Id*.) On December 28, 2016, the Court dismissed the following Defendants from the action pursuant to the parties' stipulation entered on December 27, 2016, (Doc. No. 30): Scott Sessions, M.D., Stem Cells The Human Repair Kit, Stemgenex Biologic Laboratories, LLC, and Stem Genetic. (Doc. No. 32.) On January 16, 2017, Defendants filed the instant motion to dismiss the SAC, (Doc. No. 33), Plaintiffs opposed on February 17, 2017, (Doc. No. 37), and Defendants replied on February 24, 2017, (Doc. No. 38.)

The operative complaint alleges that Defendants engage in a nationwide scheme to "wrongfully market and sell 'stem cell treatments'" to consumers who are often "sick or disabled, suffering from incurable diseases and a dearth of hope." (Doc. No. 24 at 3.) Specifically, Plaintiffs allege that Defendants advertise their "stem cell treatments" to consumers via their website and make misrepresentations that the treatments "effectively treat a multitude of diseases," when in actuality, Defendants maintain "no reasonable basis" to make these claims. (*Id.*) Plaintiffs further allege that Defendants represent to consumers that "100% of its prior consumers are satisfied with its service," while omitting material information about its services, including consumer dissatisfaction and complaints regarding the ineffectiveness of the treatments. (*Id.*) Plaintiffs seek to represent a class of all consumers nationwide who purchased Stem Cell Treatments from StemGenex between December 8, 2013 and present, and a subclass of all members of the nationwide class aged 65 years or older at the time of purchase. (*Id.* ¶¶ 64-65.)

Plaintiffs allege that each customer was exposed to Defendants' website, relied on Defendants' "false and misleading marketing" of the Stem Cell Treatments, and have been harmed as a result. (*Id.*)  Specifically, Plaintiff Moorer, suffering from lupus, Plaintiff Ginsberg, an elder over the age of 65 suffering from diabetes, and Plaintiff Gardener, suffering from diabetes, each relied upon the customer satisfaction statistics posted on the StemGenex website in deciding to purchase Defendants' Stem Cell Treatments. (*Id.* ¶¶ 8-9A.) Plaintiffs allege that each Plaintiff paid a total of $14,900.00 for the treatment, did not benefit from the treatment, and informed Defendants of their dissatisfaction. (*Id.* ¶¶ 8-9A, 11.) Further, Plaintiffs allege they would "not have paid for the Stem Cell Treatment had they known that the statistics on the StemGenex website regarding consumer satisfaction were false, and that StemGenex had no reasonable basis for its marketing claim that the Stem Cell Treatments were effective to treat diseases as advertised." (*Id.* ¶¶ 10.)

## I.   StemGenex, Rita Alexander, and Dr. Andre Lallande

StemGenex, Inc., has operated in La Jolla, California since 2011. (*Id.* ¶ 28.) Plaintiffs allege that the other entity Defendants StemGenex Medical Group, Inc. and Stem Cell

Research Centre, Inc. operate out of the same facility as StemGenex, Inc. (*Id.*) Plaintiffs further allege that the named entity Defendants "were the alter ego corporations of individual Defendants Rita Alexander and Dr. Andre Lallande." (*Id.* ¶¶ 24-25.) Plaintiffs allege that Defendants Alexander and Lallande own, operate, and/or control the businesses of Stemgenex, Stemgenex Medical Group, Inc., and Stem Cell Research Center, Inc., (collectively referred to as "StemGenex"), including the advertising and/or public relations of StemGenex. (*Id.* ¶¶ 16-17, 23-24, 26-27.) StemGenex engages in the business of providing Stem Cell Treatments, carried out by Defendant Lallande and other physicians, to consumers "who have illness or medical conditions causing pain and/or disability." (*Id.* ¶¶ 26-27.) The treatments involve conducting liposuction of a person's adult fat cells, processing them, and re-injecting them back into the person as stem cells. (*Id.* ¶ 2.) The total base price of $14,900.00 for each treatment is the same price charged to each customer. (*Id.* ¶ 47.) Customers are directed to pay for treatments by making a $2,500.00 nonrefundable deposit over the phone and then paying the remainder via cashier's check in person at the StemGenex location. (*Id.* ¶ 127.)

## II.   Defendants' Website

Plaintiffs allege Defendants conduct their false and misleading marketing scheme in part through misrepresentations made on their website, www.stemgenex.com. (Doc. No. 24 ¶ 33.) Specifically, Plaintiffs allege that "[r]epresentations relating to the website are published under the authority, control and/or authorization" of Defendants Alexander and/or Dr. Lallande. (*Id.* ¶ 28.) Through their website, Defendants communicate to consumers that StemGenex is "a pioneer in research and devoted to effective Stem Cell Treatments." (*Id.* ¶ 31.) Defendants "offer[] patients access to cutting edge adipose stem cell therapy for many degenerative diseases" such as Alzheimer's disease, COPD, Parkinson's disease, diabetes, and multiple sclerosis. (*Id.* at 12-15.) Defendants further represents that the treatment is a "minimally invasive procedure using an individual's own stem cells to treat diseases" and that "the key to the most effective stem cell treatment is through treatment plan customization." (*Id.* at 15, 19.) The StemGenex website also

suggests stem cell therapy may be repeated and that "[c]urrent studies indicate the strong possibility of a cumulative effect from multiple stem cell therapies." (*Id.* ¶ 49.) Plaintiffs allege that up until August 2016, Defendants misrepresented on their website that StemGenex was accredited by the Accreditation Association for Ambulatory Health Care, Inc., (AAAHC), which provides seals of approval for outpatient surgical centers. (*Id.* ¶¶ 29-30.)

### A. Customer Satisfaction Representations

Plaintiffs allege that Defendants engaged in a false and misleading marketing scheme regarding the efficacy of the Stem Cell Treatments by manipulating customers' reports of dissatisfaction and misrepresenting satisfaction statistics. (*Id.* ¶¶ 2, 33, 40A, 49-59.) Specifically, Plaintiffs allege that Defendants Alexander and Lallande "authorized and ratified that statements of dissatisfaction be kept out of the patients' medical files," hidden from the public, and "changed the wording of notes to make it appear that the patients were satisfied when they were not." (*Id.* ¶ 49.) Plaintiffs allege that when customers haven't received results, StemGenex employees, referred to as "Patient Advocates," encourage customers to receive multiple treatments. (*Id.* ¶¶ 50A-51.)

As early as December 8, 2013, Defendants began advertising "Patient Ratings" on their website, which steadily represented that StemGenex customers reported 100% positive feedback after receiving Defendants' services. (*Id.* at 22-26.) Defendants' website displays pie charts showing 100% of customers believe that StemGenex exceeded or at least met their expectations, that StemGenex is a trusted partner in the treatment of their disease, and were "extremely satisfied" with the medical team that performed their Stem Cell Treatment. (*Id.* at 24-25.) Defendants identify the source of the statistics as "data received from patient exit surveys evaluating patient experience and care, accommodations, staff and facilities." (*Id.*) Plaintiffs allege that Defendants know "the 100% satisfaction rate was and is not true and all evidence available to StemGenex proves it was not true at the time the representations were made." (*Id.* ¶ 56.) Plaintiffs further allege that Defendants engage in a systematic practice of controlling survey results and

misrepresenting consumer ratings to create the false and misleading premise that no customer was "unsatisfied" with the Stem Cell Treatments. (*Id.* at 26-27.)

## LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). When ruling on a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations pleaded in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). In doing so however, the court is not bound to accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). As a result, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated … laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983).

Complaints alleging fraud must satisfy the heightened pleading requirements of Rule 9(b). Rule 9(b) requires that in all averments of fraud or mistake, the circumstances constituting fraud or mistake should be stated with particularity. A pleading is

sufficient under Rule 9(b) if it "state[s] the time, place[,] and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Miscellaneous Serv. Workers, Drivers & Helpers, Teamsters Local No. 427 v. Philco-Ford Corp.,* 661 F.2d 776, 782 (9th Cir. 1981) (citations omitted); *see also Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Regardless of the title given to a particular claim, allegations grounded in fraud are subject to Rule 9(b)'s pleading requirements. *Vess*, 317 F.3d at 1103-04; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). A complaint sounds in fraud where it alleges a "unified course of fraudulent conduct and re[lies] entirely on that course of conduct as the basis of a claim." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005) (quoting *Vess*, 317 F.3d at 1103).

<h2 style="text-align:center">DISCUSSION</h2>

Prior to analyzing the merits of Defendants' motion, the Court must resolve Plaintiffs' request for judicial notice and Defendants' various evidentiary objections to Plaintiffs' request, Exhibit 1 to the SAC, and the declaration of Elizabeth A. Banham ("Banham Declaration") in support thereof. (Doc. Nos. 37-4, 38-1.)

**I.    Plaintiffs' Request for Judicial Notice and Defendants' Evidentiary Objections**

Federal Rule of Evidence 201 allows a court to "take judicial notice of facts that are not subject to reasonable dispute because they are either generally known or can be readily determined by reference to sources whose accuracy cannot reasonably be questioned." *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1098 (S.D. Cal. 2015). "Under FRE 201(c), the Court must take notice if requested by a party and if supplied with the necessary information." *Shalaby v. Bernzomatic*, 281 F.R.D. 565, 570 (S.D. Cal. 2012). "Screen shots of web pages, especially because of the ever-changing content, are not typically the type of document containing facts, the accuracy of which is capable of ready determination." *Evenchik v. Avis Rent A Car Sys., LLC,* No. 12-cv-61 BEN (DHB), 2012 WL 4111382, at *1 (S.D. Cal. Sept. 17, 2012). *See e.g.*, *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1167-68 (S.D. Cal. 2010) (declining to take judicial notice of changing web screen

shots). "As a general rule, the court 'may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *Rich v. Shrader*, No. 09-CV-0652-AJB (BGS), 2011 WL 4434852, at *4 (S.D. Cal. Sept. 22, 2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds*). "The court may, however, consider materials that are submitted with and attached to the complaint, as well as unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Rich*, 2011 WL 4434852, at *4 (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). *See e.g.*, *Castagnola v. Hewlett-Packard Co.*, No. C 11-05772 JSW, 2012 WL 2159385, at *7-10 (N.D. Cal. June 13, 2012) (considering screen shots of defendant's web pages which plaintiff incorporated into his complaint). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

In support of their Opposition, Plaintiffs request judicial notice of Defendants' websites, www.stemgenex.com and past iterations of the StemGenex webpage on web archives at https://archive.org/web, and the search term https://stemgenex.com. (Doc. No. 37-4.) The Banham Declaration attests that these website addresses are offered "to show what was posted at various times throughout the Class Period" as relied upon in the SAC and to rebut a claim made in Defendants' motion. (Doc. No. 37-3 ¶ 3.) Banham declares that the archived webpages reveal that the Defendants' "disclaimer tag line about satisfaction data being based on patient exit surveys was not added to the StemGenex web advertising until between November 25, 2015 and May 16, 2016." (*Id.* ¶ 4.) Defendants object to Plaintiffs' request on the basis that they haven't attached screenshots of the referenced webpages, nor provided the specific webpage addresses for such content. (Doc. No. 38-1 at 7.)

The Court finds that Plaintiff's request for judicial notice of Defendants' webpages is inappropriate. *In re Easysaver*, 737 F. Supp. 2d at 1167. *See generally Rivera v. Phillip*

*Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005) ("Because the effect of judicial notice is to deprive a party of an opportunity to use rebuttal evidence, cross-examination, and arguments to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)."). "The Court finds that whether these are the webpages Plaintiffs would have viewed during their online transactions is subject to a 'reasonable dispute.'" *In re Easysaver*, 737 F. Supp. 2d at 1168 (quoting Fed. R. Evid. 201). "It would be inappropriate for the Court to compare and contrast the several versions of [archived] webpages to determine if there are any material differences in the language." *Id.* However, the Court believes the doctrine of incorporation by reference applies to the excerpts of Defendants' webpages inserted into the SAC.

The Court finds the StemGenex website ads undoubtedly form the basis of Plaintiffs' claims because the SAC revolves around allegations that Defendants communicated the misrepresentations to consumers in part through their website. Plaintiffs incorporate various screenshots of Defendants' website data into their SAC. (Doc. No. 24 at 12-16, 19, 22-25.) Since the customer satisfaction ratings on the StemGenex website are integral to Plaintiffs' claims, the Court incorporates them by reference. *Ritchie*, 342 F.3d at 907-08. However, the Court believes attachment of Defendants' *archived* webpages is necessary, especially here where the parties disagree over the significance of the patient satisfaction reports. *See Caldwell v. Caldwell*, No. C 05-4166 PJH, 2006 WL 618511, at *4 (N.D. Cal. March 13, 2006). Most importantly, the SAC is devoid of allegations about when Defendants' allegedly added the "disclaimer tag line" to their website ads. It appears Plaintiffs place much weight in their Opposition about the significance of a "disclaimer tag line" utilized by Defendants in conjunction with their customer satisfaction ratings prior to November 25, 2015. (*See* Doc. No. 37 at 5, 13-14.) Thus, since this archived content assists Plaintiffs' false advertising claims and Defendants dispute the significance of such, Plaintiffs should provide printouts of the specific archived webpages upon which they base their arguments. *Id.* Plaintiffs' request for judicial notice is therefore **DENIED**.  However,

the Court incorporates by reference the screenshots from Defendants' websites that Plaintiffs inserted into the SAC.

Defendants also object to Plaintiffs' attachment of a former StemGenex employee's online review, Exhibit 1 to the SAC, and the Banham Declaration, and request that these documents be stricken from the record. (*See* Doc. No. 38-1.) The SAC refers to a November 24, 2015 online review by a former StemGenex employee posted on an employment website, Glassdoor.com. (Doc. No. 24 at 26-27.) Plaintiffs attach the review in support of their claim that Defendants engaged in a comprehensive false and misleading scheme to misrepresent the percentage of customer satisfaction to prospective customers. (*Id.*) However, Defendants entirely dispute its authenticity and Plaintiffs fail to attach a declaration to authenticate. Thus, the Court finds the review to be extrinsic evidence inappropriate for consideration on the motion to dismiss. *See In re Easysaver,* 737 F. Supp. 2d at 1168 ("Information from the internet does not necessarily bear an indicia of reliability and therefore must be properly authenticated by affidavit."). Thus, Defendants' objection to Exhibit 1 is **SUSTAINED.**

As to the Banham Declaration, Defendants object to its entirety on the grounds that Banham's declaration is not based on personal knowledge, lacks necessary foundation, constitutes hearsay, and violates the Best Evidence Rule. (Doc. No. 38-1.) Banham does not attest that the information set forth in her declaration is based upon her personal knowledge. While it is untrue that recitation of the words "personal knowledge" is necessary, Banham nonetheless fails to describe any of her own actions, which set forth the basis for her personal knowledge of such facts. *Cf. Dabbas v. Moffitt & Assocs.,* No. 07cv0040, 2008 WL 686687, fn. 1 (S.D. Cal. March 12, 2008). Overall, the content of the Banham Declaration goes to Plaintiffs' allegations regarding the false and misleading nature of Defendants' use of a "disclaimer tag" in support of consumer satisfaction ratings. This testimony supports Plaintiffs' request for judicial notice of Defendants' archived webpages, and thus, will not be considered due to the denial of the same addressed above. Thus, the Court also **SUSTAINS** Defendants' evidentiary objection as to the Banham

Declaration. *See Ritchie*, 342 F.3d at 909 (holding it would have been improper for the court to consider the declaration and exhibits attached to the plaintiff's opposition to the motion to dismiss without converting the motion into a motion for summary judgment and giving defendant an opportunity to respond).

Accordingly, the Court **DENIES** Plaintiffs' request for judicial notice and **SUSTAINS** Defendants' evidentiary objections. As discussed below, the Court was able to decide the motion to dismiss without reliance on the former employee online review, the archived webpages, and corresponding testimony of the Banham Declaration. Moreover, the absence of such documents did not alter the Court's analysis. The Court must accept the truth of Plaintiffs' allegations that they were misled by Defendants' tactics to promote the purchase of StemGenex stem cell treatments.

## III. Motion to Dismiss

Defendants move to dismiss each of Plaintiff's seven claims alleged in the SAC on the grounds that Plaintiffs failed to state a claim under Fed. R. Civ. P. 12(b)(6), failed to plead fraud with specificity under Rule 9(b), and failed to satisfy the general pleading requirements under Rule 8(a). The Court addresses each claim in turn.

*First Alleged Misrepresentation: Efficacy of Stem Cell Treatments*

### A.    Lack of Substantiation

At the outset, Defendants contend that Plaintiffs' UCL, FAL, and CLRA claims, as well as the common law fraud and negligent misrepresentation claims, must be dismissed because they "are based solely upon the supposed lack of substantiation for the advertised efficacy of StemGenex's Stem Cell Treatment." (Doc. No. 33-1 at 13.) Specifically, Defendants point to the plain reading of the SAC, which demonstrates that the action "is based upon the material omission of important information from any communication by Stemgenex to its consumers: That StemGenex has no data or reasonable basis to support the efficacy of its Stem Cell Treatments." (Doc. No. 38 at 5) (quoting Doc. No. 24 ¶ 61.) Plaintiffs respond that the scientific substantiation of the efficacy Defendants' stem cell treatment is "**not the focus of this case**." (Doc. No. 37 at 12) (Emphasis in original.)

Rather, the "crux of the complaint is that Defendants knowingly posted false information that all of their consumers had good and/or satisfactory outcomes, yet they know that not all of them did." (*Id.*) To the extent this case is about the efficacy of the stem cell treatments, Plaintiffs state they have medical and scientific experts "present and ready on Plaintiff's side," but are "not needed to show that Defendants are in possession of knowledge that many of their own patients do not feel their expectations were met." (Doc. No. 37 at 12.)

Despite Plaintiffs' contention, the Court discerns that the crux of Plaintiffs' SAC is actually twofold: Plaintiffs specifically allege in the SAC that Defendants misrepresent (1) "the quality, character, and efficacy of its Stem Cell Treatment, ***as well as***" (2) "omissions of material fact regarding the truth about its services, the lack of data supporting their efficacy, and dissatisfaction rates." (Doc. No. 24 at ¶ 33, emphasis added.) Since "lack of substantiation" regards the purported efficacy of the stem cell treatments, the Court will evaluate the merits of Plaintiffs' claims as to the efficacy misrepresentation.

"False-advertising claims based on a lack of substantiation, rather than provable falsehood, are not cognizable under the California consumer-protection laws." *Kanfer*, 142 F. Supp. 3d at 1103; *see In re Clorox Consumer Litig.*, 894 F. Supp. 3d 1224, 1232 (N.D. Cal. 2012) (collecting cases). "Challenges based on a lack of substantiation are left to the Attorney General and other prosecuting authorities; private plaintiffs, in contrast, have the burden of proving that advertising is *actually* false or misleading." *Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB, 2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013); *see Nat'l Council Against Health Fraud v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1345 (2003) ("Private plaintiffs are not authorized to demand substantiation for advertising claims.").

"Courts have been careful to distinguish between allegations that a defendant's advertising claims are actually false and allegations that such claims lack substantiation." *In re Clorox*, 894 F. Supp. 2d at 1232. *See e.g. Fraker v. Bayer Corp.*, No. CV F 08-1564 AWI GSA, 2009 WL 5865687, at *8 (E.D. Cal. Oct. 6, 2009) ("If Plaintiff is going to

maintain an action against Defendant for false or misleading advertising, then Plaintiff will be required to adduce evidence sufficient to present to a jury to show that Defendant's advertising claims with respect to Product are actually false; not simply that they are not backed up by scientific evidence."). "Courts look to a plaintiff's complaint as a whole when determining if a plaintiff merely alleged a lack of substantiation claim." *Bronson*, 2013 WL 1629191, at *8. "A claim can survive a lack of substantiation challenge by, for example, alleging studies showing that a defendant's statement is false." *Id.* "In contrast, a plaintiff's reliance on a lack of scientific evidence or inconclusive, rather than contradictory, evidence is not sufficient to state a claim." *Id.*

Looking at the SAC as a whole, the Court agrees with Defendants and finds Plaintiffs' claims are deeply entrenched in a lack of substantiation theory. Plaintiffs allege "StemGenex has no reasonable basis" to make the claim that the treatments effectively treat a multitude of diseases, "does not have adequate proof" to back up their claims, and has "no data" to support the efficacy of its Stem Cell Treatments. (Doc. No. 24 ¶¶ 2, 40, 61.) Plaintiffs further allege that at present, "no such therapy has shown its safety and efficacy in clinical trials." (*Id.* ¶ 41.) The closest Plaintiffs get to alleging falsity is when they state that "experts will testify that the generally accepted scientific consensus is that there is <u>no</u> treatment for degenerative diseases, or any disease, with a person's own adult adipose stem cells, that has been proven "effective" at any level." (*Id.* ¶ 42.) However, the significance of this statement is unclear—is it currently the scientific consensus that no treatment exists because it has in fact been tested and disproven, or rather, is it because no study regarding its efficacy has been conducted yet, and thus, scientific literature is devoid of a conclusion?

Furthermore, it is unclear from the face of the SAC whether Plaintiffs will be able to demonstrate that Defendants' representations about the efficacy of their Stem Cell Treatments are actually false or misleading because they have not alleged that Defendants' claims have actually been disproved. Plaintiffs fail to mention the existence of any scientific study that purports to prove Defendants' stem cell therapy procedure to be false

or misleading. *Cf. Kanfer*, 142 F. Supp. 3d at 1103 (finding Plaintiff alleged falsity by claiming "several studies have shown that ginkgo biloba has no effect on improving sexual function," and "the FDA has determined that labeling claims for aphrodisiacs for [over-the-counter] use are either false, misleading, or unsupported by scientific data."); *Eckler v. Wal-Mart Stores, Inc.*, No. 12-cv-727-LAB-MDD, 2012 WL 5382218, at *3 (S.D. Cal. Nov. 1, 2012) (finding where the plaintiff pointed to studies that "allegedly debunk the purported benefits of glucosamine hydrochloride, she isn't just saying those benefits are unsubstantiated", but are "positively false."). What is clear from the SAC, however, is that Plaintiffs continuously repeat that Defendants have "no supporting data or other reasonable basis" in making claims regarding the efficacy of their stem cell treatments. As read, "the Court discerns no plausibly pled claims other than the impermissible allegations that Defendants' claims lack scientific substantiation," *Bronson*, 2013 WL 1629191, at *8, and on that basis, must dismiss. *See Fraker*, 2009 WL 5865687, at *8-9 (dismissing plaintiff's claim for false advertising because plaintiff alleged only that defendant "had no reasonable basis, consisting of competent and reliable scientific evidence to substantiate" its health-benefit claim related to the "WeightSmart" multivitamin).

Accordingly, the Court **GRANTS IN PART** Defendants' motion on the basis that Plaintiffs pled a lack of substantiation as to their false advertising claims for the efficacy of the stem cell treatments. To the extent Plaintiffs do not intend to bring a claim based on the efficacy of the treatments, as hinted at in their Opposition, Plaintiffs should consider clarifying this stance in their next amended complaint. Thus, because the Court dismisses Plaintiffs' claims as pled based on the alleged misrepresentation of efficacy under the UCL, FAL, CLRA, negligent misrepresentation, and fraud, the Court need not discuss the merits of Defendants' challenges under Rules 8, 9(b), and 12(b)(6) as to these claims.

The remainder of this order will discuss the merits of Plaintiffs' claims as applied to the alleged misrepresentation of patient satisfaction.

//

//

*Second Alleged Misrepresentation: Patient Satisfaction Ratings*

Defendants argue that dismissal of the entire SAC is appropriate because all of Plaintiffs' claims, which are based on the "overarching assertion" that Defendants have made false and misleading statements and material omissions, are subject to the Rule 9(b) heightened pleading requirement. (Doc. No. 33-1 at 5.) Specifically, Defendants argue that Plaintiffs have failed to allege the "who, what, when, where, and how" and have failed to identify each Defendant's role in the alleged misconduct. (*Id.* at 7.) Plaintiffs do not dispute that Rule 9(b) applies, but rather believe they have pled with sufficient particularity to meet this standard. (Doc. No. 37 at 4.)

## A.   UCL, FAL, and CLRA Claims

Plaintiffs' first, second, and third claims allege that Defendants violated the UCL, FAL, and CLRA by advertising false and misleading information about their consumer satisfaction rates in a way that is deceptive to potential customers.

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "The FAL makes it unlawful to induce the public to enter into any obligation through the dissemination of 'untrue or misleading' statements." *In re Clorox*, 894 F. Supp. 2d at 1231 (citing Cal. Bus. & Prof. Code § 17500). "[A]ny violation of the false advertising law … necessarily violates' the UCL." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002) (internal quotations omitted). The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770.

Claims under the UCL, FAL, and CLRA are "governed by the reasonable consumer test.'" *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). This standard also applies to common law fraud and negligent misrepresentation claims. *Freeman*, 68 F.3d at 289 (common law fraud requires showing that the advertisement would mislead a reasonable person); *Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 Fed. Appx. 561, 562 (9th Cir. 2008) (equating "justifiable reliance" element of negligent misrepresentation to the

"reasonable consumer" standard). Under that standard, the plaintiff must "show that members of the public are likely to be deceived." *Freeman*, 68 F.3d at 289 (quotation marks and citations omitted). Defendants are liable for "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Kasky*, 27 Cal. 4th at 951. Generally, the question of whether a business practice is deceptive is an issue of fact inappropriate for a decision on a motion to dismiss. *Id.* at 938-39. Dismissal of such claims is appropriate where the plaintiff fails to show the likelihood that a reasonable consumer would be deceived. *Freeman*, 68 F.3d at 289-90.

Here, the Court believes Plaintiffs have alleged enough facts at this stage to demonstrate that Defendants presented their customer satisfaction data in a way that was likely to deceive or confuse reasonable consumers. For instance, Defendants represent to potential consumers that their patient satisfaction ratings are monitored and updated on a monthly basis. (Doc. 24 at 22-23.) Plaintiffs allege that even after Defendants received complaints from the named Plaintiffs and other customers that they were unsatisfied with the stem cell treatment or had not experienced an effect, they continued to publicize 100% satisfaction ratings on the StemGenex website. (*Id.* at 4-6, 25-27.) Plaintiffs further allege that after filing suit, Defendants removed language stating "0% Unsatisfied," while the graph continued to represent that 100% of expectations were met. (*Id.* ¶ 58.) The Court finds these allegations are enough to infer that the customer satisfaction ratings are *at least* misleading to potential customers. It is not necessary at this stage to determine whether they are actually false. *See In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011) ("A statement may be deceptive and actionable under the UCL, FAL, and CLRA even though it is truthful.") (citing *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255 (2009) ("A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL.").

Thus, the Court **DENIES** Defendants' motion as to the UCL, FAL, and CLRA claims regarding the misrepresentation of customer satisfaction ratings.

### B.    Fraud and Negligent Misrepresentation Claims

Plaintiffs' sixth and seventh claims allege that StemGenex intentionally and negligently misrepresented "that it had no dissatisfied customers, when in fact that was not true." (Doc. No. 24 ¶¶ 136, 149.) Defendants move to dismiss these claims on three grounds. First, Plaintiffs mischaracterize the nature of the data reported in Defendants' customer satisfaction advertisements. Second, Plaintiffs fail to allege that the customer satisfaction data is false. Lastly, Plaintiffs fail to allege that the purported inaccuracies in the data are material. (Doc. No. 33-1 at 17-18.)

The elements of common law fraud in California are (1) a misrepresentation of material fact (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud, i.e. to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Robinson Helicopter Co., Inc. v. Dana Corp.,* 34 Cal. 4th 979, 990 (2004). A plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Vess*, 317 F.3d at 1106-1107 (stating that a plaintiff must include "the who, what, where, when and how" of the fraud). Additionally "where multiple defendants are asked to respond to allegations of fraud, the complaint must inform each defendant of his alleged participation in the fraud." *Castaneda v. Saxon Mortg. Servs., Inc.*, 2009 WL 4640673, at *4 (E.D. Cal. Dec. 3, 2009). "The elements of negligent misrepresentation are the same as intentional fraud with the exception of the requirement of scienter." *Chan v. Chancelor*, No. 09CV1839 AJB (CAB), 2011 WL 5914263, at *5 (S.D. Cal. Nov. 28, 2011) (citing *Melican v. Regents of Univ. of Cal.*, 151 Cal. App. 4th 168, 181-82 (2007)). "Like a claim for intentional fraud, a claim for negligent misrepresentation must meet the particularity requirement of Rule 9(b)." *Id.*

Plaintiffs have met the heightened pleading standard of Rule 9(b) for their fraud and negligent misrepresentation claims. Plaintiffs identify Defendant Alexander, the founder of StemGenex, who controls the business, advertising, and public relations of StemGenex

and all of its allegedly related companies. (Doc. No. 24 ¶ 26.) Plaintiffs also identify Defendant Lallande as the physician responsible for conducting the stem cell treatments at StemGenex and allege he is also involved in directing and controlling the business and advertising at StemGenex. (*Id.* ¶ 27.) Plaintiffs further allege that Defendants Alexander and Lallande publish the patient satisfaction statistics to Defendants' website and were directly involved in attaining customer feedback after treatment. (*Id.* ¶¶ 40A, 52, 56, 59.) Plaintiffs specify the "what, when, where, and how" in alleging that Defendants deceptively conveyed, through the StemGenex website, that 100% of customers were satisfied with the stem cell treatments from December 8, 2013 through present, in order to induce prospective customers to purchase such treatments, when in reality, Defendants received negative customer reports and failed to communicate their dissatisfaction. (*Id.* ¶¶ 8-9A, 11, 52-58, 64.) "These allegations are sufficient to give Defendant ample notice of the particular circumstances underlying Plaintiffs' claims against it." *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1035 (N.D. Cal. 2016).

Plaintiffs also plead enough facts to allege claims for fraud and negligent misrepresentation. Plaintiffs sufficiently allege the satisfaction statistics were material to the customer's purchasing decision and that Plaintiffs justifiably relied on such information. Plaintiffs Moorer, Ginsberg, and Gardner each allege that they informed StemGenex of their dissatisfaction after the treatments and that the satisfaction percentage on the website never fluctuated thereafter, even where Defendants purport to "update [the statistics] on a monthly basis." (*Id.* ¶¶ 8-11, 53.) This raises an inference that Defendants were aware of dissatisfaction and chose to omit or conceal this information from their website. Moreover, each Plaintiff alleges they viewed the StemGenex website, including the positive customer statistics, made their decision to receive the treatments in reliance on those statistics, and would not have paid for the treatments had they known the data was false. (*Id.*) *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1142 (9th Cir. 2012) (defining a "material fact" as one where if it had not been omitted, one would have behaved differently).

Lastly, Defendants' argument that Plaintiffs "mischaracterize" the data is more of a concern of semantics. Defendants argue that the data doesn't report effectiveness of the treatment and a lack of complaints, but rather, it reports "overall experience" with StemGenex, whether the customer considers StemGenex a trusted partner in the treatment of their disease, and whether the customer was satisfied with the "medical team" that performed their treatment. (Doc. No. 33-1 at 18.) However, similar to Plaintiffs' claims under the UCL, FAL, and CLRA discussed above, Plaintiffs' allegations are sufficient to create the inference that the customer data was at the very least incomplete due to the omitted information, and thus, false and misleading. *See Strumlauf*, 192 F. Supp. 3d at 1036.

Accordingly, the Court **DENIES** Defendants' motion as to the fraud and negligent misrepresentation claims regarding the misrepresentation of customer satisfaction statistics.

### C. <u>Financial Elder Abuse Claim</u>

Plaintiffs append a claim for financial elder abuse on behalf of Plaintiff Ginsberg and putative class members over the age of 65 against all Defendants. Plaintiffs allege Defendants communicated false misrepresentations via the website and through Defendants' "Patient Advocates," exerting undue influence which resulted in the loss of money to Plaintiffs. (Doc. No. 24 at 49-52.) Plaintiffs further allege that the elders were "influenced by the aggressive campaign of StemGenex, and the false statistics and graphs making it appear that there were no unsatisfied consumers." (*Id.* ¶ 167E.) Further, Plaintiffs identify StemGenex, its employees, and managing agents, and "Patient Advocates" as the "influencer[s]" and allege that they "drew the elders in with their representations, particularly about the high number of people this had worked for/large number of satisfied consumers." (*Id.*) Plaintiffs allege that Defendants "occupied a position of trust when they began to give [the elders] medical treatment over the website and phone" and thereafter exerted undue influence in influencing them to purchase the treatments. (*Id.* ¶ 169A.) Defendants move to dismiss Plaintiffs' ninth cause of action because Plaintiffs failed to

plead it with sufficient particularity. (Doc. No. 33-1 at 20-22.) Specifically, Defendants contend that Plaintiffs fail to distinguish between which Defendants committed the alleged conduct, allege how Defendants stood in a position of trust to the elders, and identify the "further misrepresentations" of the "Patient Advocates" that demonstrate an intent to defraud. (*Id.*)

"[E]lder financial abuse occurs when a person or entity '[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.'" *Quintero Family Trust v. OneWest Bank, F.S.B.,* No. 09-CV-1561-IEG (WVG), 2010 WL 392312, at *16 (S.D. Cal. Jan. 27, 2010) (quoting Cal. Wel. & Inst. Code § 15610.30(a)(1)). "Elder financial abuse also occurs when a person or entity assists another in such conduct." *Id.* § 15610.30(a)(2). "Undue influence" is defined as "excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and results in inequity." *Id.* § 15610.70(a).

Unlike Plaintiffs' claims for fraud and misrepresentation, their claim for financial elder abuse fails to state with any specificity which particular Defendant did what, when it was done, how it was fraudulent, and how it was a product undue influence. *See Quintero Family Trust*, 2010 WL 392312, at *16. Defendants are correct that Plaintiffs must distinguish each Defendant's role in the alleged misconduct and by lumping Defendants together, Plaintiffs fail to satisfy this requirement. *See Moran v. Bromma*, No. 13-cv-00487 JAM-CKD, 2014 WL 348952 at *4 (E.D. Cal. Jan. 31, 2014) (citing *Levine v. Entrust Grp., Inc.*, C 12-03959, 2013 WL 2606407, at *5 (N.D. Cal. June 11, 2013) (noting that the Ninth Circuit "has held that 9(b) prevents plaintiffs from lumping defendants together for purposes of fraud allegations). Although Plaintiffs identify StemGenex, its employees, managing agents, and "Patient Advocates" as the "influencers," the identity of Defendants' agents and their roles in the alleged misconduct remain unclear. *See Orlando v. Carolina Cas. Ins. Co.*, No. CIV F 07-0092 AWI SMS, 2007 WL 781598, at *8 (E.D. Cal. Mar. 13, 2007) (noting that "[b]ecause corporations speak through agents, allegations that a

corporation or its 'agents' committed fraud or made misrepresentations are generally insufficient, and the specific identity of the agent must be alleged for purposes of Rule 9(b)"). Next, Plaintiffs allege undue influence was exerted upon the elders via two channels: the website and through communications with Defendants and their "Patient Advocates." However, Plaintiffs fail to identify the "excessive persuasion" that compelled the elders to pay for the stem cell treatments. The Court agrees with Defendants that an elder prospective customer viewing the website on his or her own volition is not enough to constitute "undue influence." Moreover, Plaintiffs do not allege what was communicated to the elders to wrongfully persuade them to purchase Defendants' services to their alleged detriment.[1] Without more specificity, a claim for financial elder abuse cannot stand. *See* Wel. & Inst. Code § 15610.70(b) ("Evidence of an inequitable result, without more, is not sufficient to prove undue influence."); *Guccione v. JPMorgan Chase Bank, N.A.*, No. 14-cv-4587 LB, 2015 WL 1968114, at *19 (N.D. Cal. May 1, 2015).

For the foregoing reasons, the Court **GRANTS** Defendants' motion as to the claim for financial elder abuse as currently plead.

### D.   <u>Human Experimentation Claim</u>

Plaintiffs' fourth cause of action alleges Defendants are liable for statutory damages under Cal. Health & Safety Code § 24176 because Defendants subjected Plaintiffs and putative class members to medical experiments without first obtaining their informed consent pursuant to Section 24175. Defendants move to dismiss this claim on the basis that the StemGenex stem cell treatments are not actionable "medical experiments" under the Code. (Doc. No. 33-1 at 22.) Plaintiffs retort that because Defendants interchangeably refer to their treatments as "studies" and claim to be a "pioneer in research," they project the

---

[1] The Court is cognizant of Plaintiffs' attempt to expound upon how Defendants' "Patient Advocates" established a position of trust with elder prospective customers in their Opposition. However, that detail is lacking from the SAC as currently pled.

3:16-cv-02816-AJB-NLS

idea that the stem cell treatments are a "*frontier* of medicine," and thus, constitute "medical experiments" under Section 24174(a). (Doc. No. 37 at 16.)

Section 24175(a) provides in part that "no person shall be subjected to any medical experiment unless the informed consent of such person is obtained." "Informed consent" under section 24173 requires "a written consent form must be signed and dated, and the subject must be informed both verbally and within the written consent form of certain enumerated facts regarding the proposed medical experiment." *Perez v. Nidek Co., Ltd.*, 657 F. Supp. 2d 1156, 1163 (S.D. Cal. 2009). To qualify as a "medical experiment," the use of a device must be "in the practice or research of medicine in a manner not reasonably related to maintaining or improving the health of the subject or otherwise directly benefiting the subject." Cal. Health & Safety Code § 24174(a). *See Trantafello v. Med. Ctr. of Tarzana*, 182 Cal. App. 3d 315, 320 n.2 (1986) (discussing that Section 24174 addresses experiments conducted in the course of "pure research.").

Defendants contend that their stem cell treatments fall outside the ambit of "pure research" and the Court agrees. This notion is also corroborated by Plaintiffs' allegations in the SAC. For instance, Plaintiffs allege that each named Plaintiff sought the treatment to "improve" their condition or disorder because StemGenex represented they could "effectively treat degenerative diseases." (Doc. No. 24 ¶ 34.) Further, Plaintiffs allege that StemGenex advertises that their treatments "significantly improve one's quality of life" and that these representations are the bases on which Plaintiffs and putative class member relied in purchasing the treatments. (*Id.* ¶ 43.) Based on the allegations as currently pled, the Court finds the stem cell treatments are at least "reasonably related" to maintaining or improving the health of prospective customers and do not constitute "pure research." *See Perez*, 657 F. Supp. 2d at 1164. To the extent that the stem cell treatments represent a fairly newer body of research and development, the Court does not find the innovative nature of the treatment to rise to the level requiring informed consent under the Code. *See Trantafello*, 182 Cal. App. 3d at 320, n. 2.

Accordingly, the Court **GRANTS** Defendants' motion as to Plaintiffs' claim for human experimentation.

### E.   RICO Claim

Plaintiffs' fifth claim is against all Defendants for RICO under 28 U.S.C. § 1962(c), which prohibits an enterprise from engaging in a pattern of racketeering conduct. Plaintiffs claim that StemGenex is an enterprise through which Defendants Alexander and Lallande conducted a pattern of racketeering conduct by advertising StemGenex's false patient satisfaction ratings on the website and accepting payment for the stem cell treatments over the phone "in furtherance of their scheme." (Doc. No. 24 at 42-44.) To state a RICO claim under section 1962(c), "a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc). Defendants dispute the second, third, and fourth elements and argue that Plaintiffs' conclusory allegations do not allege specific facts to meet the pleading standard for a RICO claim. At the outset, the Court finds Plaintiffs' claim fails to meet the "enterprise" element, and on that basis, dismisses Plaintiffs' RICO claim. *See e.g. Zappia v. World Sav. F.S.B.,* No. 14cv1428 WQH (DHB), 2015 WL 11439034, at *10 (S.D. Cal. June 19, 2015).

   1. *Enterprise*

   "[T]o establish liability under § 1962(c), one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); *see also Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1533 (9th Cir. 1992) (explaining the RICO defendant must be distinct from the enterprise whose business the defendant is conducting). "Therefore, for the purposes of a single action, a corporate defendant cannot be both the RICO person and the RICO enterprise. . ." *Sever*, 978 F.2d at 1534.

   Plaintiffs' pleadings conflate this distinction. Plaintiffs' SAC names five Defendants: StemGenex Medical Group, StemGenex, Stem Cell Research Centre, Andre

P. Lallande, and Rita Alexander. Plaintiffs' fifth cause of action for RICO is brought against "All Defendants." (Doc. No. 24 at 42.) In one breath, Plaintiffs allege that Defendants Alexander and Lallande are the alter egos of StemGenex, (Doc. No. 24 ¶¶ 24-25), while in the next, allege that StemGenex is the "enterprise" and Defendants Alexander and Lallande are the persons conducting its affairs. (*Id.* at ¶¶ 126-127.) Additionally, since Plaintiffs bring this claim against all Defendants, they effectively name StemGenex as a RICO defendant while simultaneously identifying StemGenex as the enterprise. (*Id.* at 42.) Plaintiffs are correct that the Supreme Court in *Cedric Kushner Promotions* clarified that a corporate owner/employee is distinct from the corporation itself for purposes of satisfying RICO's "separateness" requirement. *Id.* at 163-65. However, as currently pled, the Court cannot reconcile Plaintiffs' alter ego theory of liability, that the "individuality and separateness" of StemGenex, the other entities, and individuals have ceased, with Plaintiffs' contention that the RICO enterprise is distinct from its persons, i.e. that StemGenex is separate from Defendants Alexander and Lallande.

Currently, the Court finds that Plaintiffs' allegations are ambiguous and fail to put Defendants on proper notice of their purported misconduct due to the confusion in distinguishing the enterprise from the RICO defendants. Thus, the Court **GRANTS** Defendants' motion as to the RICO claim based upon Plaintiff's failure to allege that an enterprise exists separate and distinct from Defendants Alexander and Lallande. *See Zappia*, 2011 WL 11439034, at *10 (dismissing plaintiff's RICO claim for failure to allege a "'RICO defendant' and a distinct 'RICO enterprise.'"). Because Plaintiffs' claim fails under the "enterprise" prong, the Court need not discuss the remaining elements. Plaintiffs will be given leave to amend to more clearly distinguish the RICO enterprise from the RICO defendants in light of Plaintiffs' alter ego liability theory.

### CONCLUSION

In light of the above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss the SAC. The Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' UCL, FAL, CLRA, fraud, and negligent misrepresentation claims

as to the lack of efficacy misrepresentation, as well as Plaintiffs' claims for human experimentation, financial elder abuse, and RICO. Plaintiffs are advised to correct the deficiencies noted herein by filing an amended complaint no later than **_May 11, 2017_**.

**IT IS SO ORDERED.**

Dated:  April 6, 2017

Hon. Anthony J. Battaglia
United States District Judge