Janice F. Mulligan (State Bar No. 99080)
mulligan@janmulligan.com
Elizabeth A. Banham (State Bar No. 131734)
banham@janmulligan.com
Brian K. Findley (State Bar No. 251172)
findley@janmulligan.com
**MULLIGAN, BANHAM & FINDLEY**
2442 Fourth Avenue, Suite 100
San Diego, CA 92101
Tel: (619)238-8700 | Fax: (619)238-8701

A.Mark Pope (State Bar No. 77798)
pope@popeberger.com
Harvey C. Berger (State Bar No. 102973)
berger@popeberger.com
**POPE, BERGER, WILLIAMS & REYNOLDS, LLP**
401 B Street, Suite 2000
San Diego, California 92101
(619) 595-1366 | Fax (619) 236-9677

Attorneys for Plaintiffs and the Putative Class

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SELENA MOORER, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>vs.<br><br>STEMGENEX MEDICAL GROUP, INC., a California Corporation; STEMGENEX, INC., a California Corporation; STEM CELL RESEARCH CENTRE, INC., a California Corporation; ANDRE P. LALLANDE, D.O., an Individual; SCOTT SESSIONS, M.D., an Individual; RITA ALEXANDER, an Individual; and DOES 1-100,<br><br>          Defendants. | Case No. 3:16-cv-02816-AJB-NLS<br><br>**FOURTH AMENDED CLASS ACTION COMPLAINT**<br><br><u>Jury Trial Demanded</u><br><br>1.  Violations of Bus. & Prof. Code §17200 et seq. (UCL)<br>2.  Violations of Bus. & Prof. Code § 17500 et seq. (False Advertising)<br>3.  Violations of Cal. Civ. Code §1750 et seq. (CLRA)<br>4.  Fraud<br>5.  Negligent Misrepresentation<br><br>Judge:  Hon. Anthony J. Battaglia<br>Dept:    3B (3rd Floor-Schwartz) |

The Plaintiffs, on behalf of themselves and all others similarly situated, hereby allege as follows:

## NATURE OF ACTION

1.      This is a class action against STEMGENEX MEDICAL GROUP, INC., and related persons and entities (collectively, "Defendants" or "StemGenex").  This action arises out of StemGenex's scheme to wrongfully market and sell "stem cell treatments" at their La Jolla, California location to consumers nationwide.

2.      StemGenex's consumers are often sick or disabled, suffering from incurable diseases and a dearth of hope.  StemGenex's marketing makes claims to these consumers that by performing liposuction of a person's adult fat cells, processing them, and injecting them back into a person as stem cells (the "Stem Cell Treatments"), they effectively treat a multitude of diseases.

3.      StemGenex claims that 100% of its prior consumers are satisfied with its service.  StemGenex has no reasonable basis to make the claim it has made about 100% consumer satisfaction.  StemGenex omits material information from all marketing about the Stem Cell Treatments and the dissatisfaction and complaints of ineffectiveness from people who have purchased the treatments.

4.      Plaintiffs, and each of them, relied on StemGenex's false and misleading marketing and each purchased a Stem Cell Treatment from Defendants for $14,900.00.  Plaintiffs bring this action on behalf of themselves and a putative Class of wronged consumers, to seek remedies from this Court.

## JURISDICTION AND VENUE

5.      This matter has been removed from San Diego Superior Court to the United States District Court for the Southern District of California by Defendants. Jurisdiction and venue are proper in this Court because the action at issue involves federal question and diversity, under 28 USC. Sections §§1331 and 1332(d).

## PARTIES

### A.  Plaintiffs

6.      Plaintiff, SELENA MOORER ("Ms. Moorer"), is a resident of the State of Florida who traveled to San Diego, California after relying on StemGenex's website, in order to have Stem Cell Treatment.   She was led by StemGenex to believe it would greatly improve her condition, lupus, an autoimmune disorder.   Ms. Moorer was greatly impressed by StemGenex's website (www.stemgenex.com), including indications on that site that 100% of consumers were pleased with the outcomes of their treatments, with statistics on the site showing no dissatisfaction by any consumers, and by video testimonials on the site.  Based on Defendants' misrepresentations and material omissions, Plaintiff took money she could ill-afford to spend and paid a non-refundable deposit of thousands of dollars to StemGenex, and thereafter flew to California with family members to undergo the treatment.   The total payment by Ms. Moorer to StemGenex, including the deposit, was $14,900.   This was the <u>same</u> base price paid to StemGenex by all other similarly situated consumers for each and every Stem Cell Treatment. Ms. Moorer underwent the Stem Cell Treatment with StemGenex on or about April 5, 2016.  She did not benefit and also told the company she did not benefit and that she blamed them for a worsening of her condition.

7.      Plaintiff, **STEPHEN GINSBERG** ("Mr. Ginsberg"), is a resident of the State of California, who traveled south to San Diego, California after relying on StemGenex's website, in order to have Stem Cell Treatment.   He was led by StemGenex to believe it would greatly improve his condition, diabetes, and other related conditions.   Mr. Ginsberg was greatly impressed by StemGenex's website (www.stemgenex.com), including but not limited to the statements about the number and percentage of satisfied consumers.  Mr. Ginsberg paid StemGenex at or around $14,900 to get treatments in different parts of his body.  Mr. Ginsberg was given Stem

Cell Treatment by StemGenex on or about November of 2015.  The treatment had no effect.   Mr. Ginsberg told StemGenex he received no effect from the treatment.

8A.     Plaintiff, **ALEXANDRA GARDNER** ("Ms. Gardner"), is a resident of the State of Colorado, who traveled to San Diego, California after relying on StemGenex' website, in order to have Stem Cell Treatment.  Ms. GARDNER particularly relied on the statistics of patient satisfaction ratings that appeared on the website at the time she and her family searched for possible treatments for her condition, diabetes, which she has had since she was a baby.   Impressed by the website and those statistics, in July 2015 she traveled to San Diego and paid StemGenex $14,900.00 to undergo the stem cell treatment. She had little to no effect from the treatment.   When she reported this to StemGenex, she was told that it could take months for the treatment to take effect.  However, Ms. Gardner never experienced any significant positive effect from the treatment.

8B.     Plaintiff, **JENNIFER BREWER** ("Ms. Brewer"), is a resident of the State of Montana, who traveled to the Santa Monica, California, STEMGENEX location, after relying on StemGenex' website, in order to have treatment.  Ms. BREWER particularly relied on the statistics of patient satisfaction ratings that appeared on the website at the time she was looking for treatment for a painful condition affecting her spine and joints.  Impressed by the website and customer satisfaction claims, she raised money with the help of friends, paid a cashier's check advance, and traveled to California to receive the treatment.   She paid approx.$14,900, and like others, she incurred airfare and travel expenses to come to California.  RITA ALEXANDER told her and the other patients in the pre-surgical meeting in California that the payment to STEMGENEX was "non-refundable."  RITA ALEXANDER also told Ms. BREWER and others prospective patients who were there from all over the country that patients feel wonderful after their first treatment. At no time before the treatment was Ms. BREWER told she would need or be expected to have multiple treatments, nor did she have the funds for

such.   She underwent the treatment in October of 2014 but had no effect from the treatment.  When she reported to StemGenex that she had no effect, she was told she would need to wait up to six months for it to take effect and she would have to have another treatment.  She was later told by a STEMGENEX "Patient Advocate" that she was recommended to have a treatment every six months.

8C.    Plaintiff, **REBECCA KING**, ("Ms. King"), is a resident of the State of Arkansas, who traveled to San Diego to have stem cell treatment by StemGenex for the long term effects of Multiple Sclerosis.   Ms. King relied on statistics of patient satisfaction published by StemGenex, including pie charts without disclaimers (as similar to the graph shown in Paragraph 54, below), showing 100% satisfaction.   She borrowed money from her father and grandfather in order to have treatment.  Ms. King had the treatment at StemGenex in or around August of 2015.  She later reported to StemGenex that she had no positive change and her husband told StemGenex they wanted their money back.   Defendant, ANDRE LALLANDE, D.O., told her she could get another treatment for a "discounted price."   She did not receive a full or partial refund from Defendants.

9.    Plaintiffs, and each of them, would not have paid for the Stem Cell Treatment had they known that the statistics on the StemGenex website regarding consumer satisfaction were false, and that StemGenex had no reasonable basis for its marketing claim that 100% of its customers were satisfied.

10.    No Plaintiff received any significant benefit from the $14,900 Stem Cell Treatment they purchased from StemGenex.  Although Plaintiffs, and each of them, reported this to StemGenex, its website never varied its 100% client satisfaction approval statistics even after Plaintiffs and, on information and belief, others informed StemGenex of their dissatisfaction with the Stem Cell Treatments.  After StemGenex was informed of Ms. Moorer's and others dissatisfaction, for instance, StemGenex offered to sell each of them an additional Stem Cell Treatment or multiple treatments.

**B.   Defendants**

11.      The Defendants who are liable to Plaintiffs,  and all others similarly situated, and from whom an injunction and other remedies are sought, are the following:

12.      STEMGENEX, INC., is an active California Corporation, located in the City of La Jolla, County of San Diego, State of California. Its products and services are located in and it is doing business in the State of California.

13.      STEMGENEX MEDICAL GROUP, INC. is an active California Corporation, located in the City of La Jolla, County of San Diego, State of California. Its products and services are located in and it is doing business in the State of California.

14.      STEM CELL RESEARCH CENTRE, INC. is an active California Corporation, located in the City of La Jolla, County of San Diego, State of California. Its products and services are located in and it is doing business in the State of California.

15.      RITA ALEXANDER ("Ms. ALEXANDER") is an individual residing in the County of San Diego, State of California.   Ms. ALEXANDER is an owner, operator and/or controller of StemGenex, and is wholly or partially responsible for the content of its advertising.. .   Ms. ALEXANDER is a Managing Agent of the remaining Defendants who has authorized and ratified the actions alleged and is, therefore, personally and directly liable to Plaintiffs and members of the Class on all Causes of Action below.

16.      ANDRE LALLANDE, D.O. ("Dr. LALLANDE") is an individual residing in the County of San Diego, State of California.   Dr. LALLANDE owns, operates and/or controls StemGenex and is wholly or partially responsible for the content of its advertising.. Dr. LALLANDE is a Managing Agent of the remaining Defendants, who has authorized and ratified the actions alleged and is, therefore, personally and directly liable to Plaintiffs and members of the Class on all Causes of

Action below.

17.    DOE Defendants 1 through 100, inclusive, whether individuals, corporations, partnerships or otherwise, are fictitious names of Defendants whose true names are, at this time, unknown to Plaintiffs. Plaintiffs are informed andbelieve, and thereon allege that each of the fictitiously-named Defendants caused or contributed to the damages herein alleged and Plaintiffs will name such Defendants when their identities have been ascertained.

18.    Furthermore, Plaintiffs allege that the DOE Defendants in this action committed the same or similar acts alleged as the named Defendants in this cause of action. Therefore, all acts alleged to have been committed by the named Defendants are also alleged to have been committed by the DOE Defendants.

19.    Plaintiffs are informed, believe and thereon allege that each of the Defendants is the principal, employer, employee, agent, or joint venturer of each of the remaining Defendants and in doing the things hereinafter alleged, each was acting within the course and scope of said agency, employment and/or joint venture with the advance knowledge, acquiescence or subsequent ratification of each and every remaining Defendant.

20.    All Defendants above, including DOES 1-100, are collectively referred to in this Complaint as "StemGenex."    Unless otherwise specified, "StemGenex" includes STEMGENEX, INC. and STEMGENEX MEDICAL GROUP, INC., and STEM CELL RESEARCH CENTRE, INC.

21.    The "Putative Class Period", with regard to misrepresentations and false and misleading information published to prospective consumers by StemGenex begins on December 8, 2013, as further described below.    Plaintiffs believe that the statistical ratings complained of here were taken down from StemGenex website in or after March, 2017, during the pendency of the Defendants' 12(b)(6) Motion to Dismiss.   However, Plaintiffs do not know whether the statistical ratings/pie charts showing 100% satisfaction are still being mailed to potential customers.This issue is

pending discovery.  Injunctive relief is sought on all further publication of the false information in any format.

## **ALTER EGO ALLEGATIONS**

22.     Plaintiffs allege that some of the corporations, limited liability companies, and entities named as Defendants herein, including but not limited to DOES 1 through 100, and each of them, were at all times relevant the alter egos of individual Defendants Ms. ALEXANDER and Dr. LALLANDE by reason of the following:

(a) Plaintiffs are informed and believe that, at all times herein mentioned, Ms. ALEXANDER and Dr. LALLANDE dominated, influenced and controlled each of the StemGenex Defendants and DOES and the officers thereof as well as the business, property, and affairs of each of said corporations.

(b) Plaintiffs are informed and believe that, at all times herein mentioned, there existed and now exists a unity of interest and ownership between Ms. ALEXANDER and Dr. LALLANDE and each of the StemGenex Defendants and DOES; the individuality and separateness of Ms. ALEXANDER and Dr. LALLANDE and each of the STEMGENEX entity Defendants and DOES have ceased.

(c) Plaintiffs are informed and believe that, at all times since the incorporation of each, each StemGenex entity Defendant and each DOE has been and now is a mere shell and naked framework which Ms. ALEXANDER and Dr. LALLANDE used as a conduit for the conduct of their personal business, property, and affairs.

(d) Plaintiffs are informed and believe that, at all times herein mentioned, each of the StemGenex entity Defendants and each DOE was created and continued pursuant to a fraudulent plan, scheme, and device conceived and operated by Defendants, Ms. ALEXANDER and Dr. LALLANDE, whereby the income, revenue and profits of each of the StemGenex entities were diverted by those Defendants to themselves.   Plaintiffs are informed and believe that STEM CELL RESEARCH CENTRE, INC., is a company formed to provide backing to previously published and published claims of clinical trials.   Plaintiffs are informed and believe that STEM

CELL RESEARCH CENTRE, INC., is a company formed by Ms. ALEXANDER for the purpose of avoiding liability of STEMGENEX and/or STEMGENEX MEDICAL GROUP.

(e) Plaintiffs are informed and believe that, at all times herein mentioned, each of the StemGenex entities and each DOE was organized by Defendants, Ms. ALEXANDER and Dr. LALLANDE, as a device to avoid individual liability and for the purpose of substituting financially irresponsible corporations in the place and stead of Defendants, Ms. ALEXANDER and Dr. LALLANDE,, and each of them, and accordingly, those Defendants formed the entities and published the website Document about those entities hosted at www.stemgenex.com.

(f) Plaintiffs are informed and believe that the StemGenex entities and DOES were formed with capitalization totally inadequate for the business in which said corporation(s) were engaged.

(g) By virtue of the foregoing, adherence to the fiction of the separate corporate existence of each of the StemGenex corporate entities and each DOE would, under the circumstances, sanction a fraud and promote injustice in that Plaintiffs and members of the Class would be unable to collect on any judgment in their favor.

23.    Plaintiffs allege that, at all times relevant hereto, the defendants, Ms. ALEXANDER and Dr. LALLANDE and the StemGenex entity Defendants and DOES acted for each other in connection with the conduct herein alleged and that each of them performed the acts complained of herein or breached the duties herein complained of as agents of each other and each is therefore fully liable for the acts of the other.

## COMMON FACTUAL ALLEGATIONS

### A.    What is StemGenex?

24.    StemGenex was founded by a non-physician, Ms. ALEXANDER.  It receives profits and revenues through the sale of Stem Cell Treatments to persons who have illnesses or medical conditions causing pain and/or disability.   Ms. ALEXANDER directs and controls the businesses of STEMGENEX, STEMGENEX

MEDICAL GROUP, INC. and STEM CELL RESEARCH CENTRE, INC., and their advertising and public representations.

25.     StemGenex's Stem Cell Treatments are carried out by Defendant, Andre LALLANDE, D.O., and other individual physicians, with the assistance of other individuals who are employees and/or agents of StemGenex.   Dr. LALLANDE directs and controls the businesses of STEMGENEX, STEMGENEX MEDICAL GROUP, INC. and STEM CELL RESEARCH CENTRE, INC., and their advertising and public representations, particularly statements of a medical nature in those publications.

26.     The primary operating facility and headquarters of Defendant, StemGenex, Inc. is located in La Jolla, California, where it has been operating since 2011. STEMGENEX MEDICAL GROUP, INC., is a related company which is owned, operated and/or controlled by Ms. ALEXANDER and Dr. LALLANDE, operating out of that same facility.   STEM CELL RESEARCH CENTRE, INC. is also noted in public filings to be operating out of that same location.  Operations are also advertised by StemGenex to take place in Del Mar, California.  Unless otherwise noted below, "StemGenex" refers to all these entities, other earlier operation locations in Los Angeles area, and each of them.   Representations relating to the website are published under the authority, control and/or authorization of RITA ALEXANDER and/or Dr. LALLANDE.

27.     Through July 2016, StemGenex represented on its website that it was accredited by the Accreditation Association for Ambulatory Care (AAAHC), which provides seals of approval for outpatient surgical centers.  The following logo was published on StemGenex's website, at the bottom of nearly every page:



28.     Plaintiffs are informed and believe that the representation by Defendants and the use of the AAAHC logo was false and that StemGenex was not, in fact, accredited by AAAHC.  Plaintiffs are informed and believe that the accreditation logo as to StemGenex itself was removed from StemGenex's website in August 2016, when a newspaper reporter from the Los Angeles Times confronted StemGenex about the false accreditation and AAAHC issued a cease-and-desist letter to StemGenex.

**B.     What does StemGenex do?**

29.     StemGenex holds itself out to consumers as a pioneer in research and devoted to effective Stem Cell Treatments, making representations during the putative Class Period such as the following on its website:

> StemGenex Medical Group has made great strides in the advancement of stem cell therapy and is dedicated to providing patients access to safe and effective stem cell treatments.

30.     Using its website and internet ads which direct consumers to that website, StemGenex pitches its services at people with crippling diseases, including Alzheimer's, Parkinson's disease, chronic lung disease, autoimmune conditions (such as multiple sclerosis, lupus, and rheumatoid arthritis) as well as many other debilitating conditions.

31.     Ms. Moorer, Mr. Ginsberg, Ms. Gardner, Plaintiffs and all others similarly situated, have been subject to StemGenex's repeated false advertising, deception, and misrepresentation regarding the quality, character and  satisfaction with/of its Stem Cell Treatment, as well as omissions of material fact regarding the truth about its services, , and dissatisfaction rates.  StemGenex's website highlights this variety of claimed Stem Cell Treatments (sometimes referred to as "therapy") on its home page, with the following representations made during the putative Class Period:

## Stem Cell Therapy Studies

**Alzheimer's Stem Cell Therapy**

With the onset of Alzheimer's disease, information transfer at the synapses (the connection between the nerve cells and extensions) starts to break down, and the number of synapses decreases significantly.

LEARN MORE

**Autoimmune Stem Cell Therapy**

Autoimmune diseases are conditions in which the patient's immune system generates cellular and antibody responses to substances and tissues normally present in the body.

LEARN MORE

**COPD Stem Cell Therapy**

In each condition there is chronic obstruction of the flow of air through the airways and out of the lungs, and the obstruction generally is permanent and may be progressive over time.

LEARN MORE

**Rheumatoid Arthritis Stem Cell Therapy**

Rheumatoid Arthritis is an autoimmune disease that attacks the body's own tissues, specifically the synovium, a thin membrane lining the joints. As a result, joint fluid builds up, causing pain in the joints and inflammation that's systemic.

LEARN MORE

**Parkinson's Stem Cell Treatment**

Parkinson's disease is a chronic progressive neurological disease that affects nerve cells (neurons) in an area of the brain known as the substantia nigra.

LEARN MORE

**Osteoarthritis Stem Cell Therapy**

Osteoarthritis, or degenerative joint disease, is the most common type of arthritis. It is caused by the degradation of a joint's cartilage.

LEARN MORE

**Multiple Sclerosis Stem Cell Treatment**

Multiple sclerosis (or MS) is a degenerative disease involving the deterioration of nerve cells. MS attacks the central nervous system (CNS), which is made up of the brain, spinal cord, and optic nerves.

LEARN MORE

**Diabetes Stem Cell Therapy**

Diabetes is the condition in which the body does not properly process food for use as energy. When you have diabetes, your body either doesn't make enough insulin or can't use its own insulin as well as it should.

LEARN MORE

32.     StemGenex represents that they can effectively treat degenerative diseases as follows:

StemGenex Medical Group offers patients access to cutting-edge adipose stem cell therapy for many degenerative diseases. We offer patients access to stem cell treatments with a level of quality and patient-centric care that simply cannot be found elsewhere. StemGenex Medical Group utilizes board-certified surgeons and a accredited surgical center along with our own PhD neuroscientist setting forth and refining stem cell processing protocols. These cutting-edge protocols utilize targeted administration methods and the latest activation methods to ensure the safest most effective stem cell treatments possible. We believe in providing patients with IRB approved studies for stem cell treatments registered through The National Institutes of Health. Through these stem cell therapy studies, we hope to provide patients with options that may change the course of their lives as well as the course of their disease.

33.    The StemGenex business is fueled by its robust website advertising campaign, which reaches consumers nationwide and beyond.  StemGenex represents on its website that "over 70% of patients travel to StemGenex Medical Group from out of state."  StemGenex directs internet traffic, including social media traffic, and requests for information to its website, which Plaintiffs are informed and believe is viewed by every prospective StemGenex Stem Cell Treatment purchaser throughout the country.   Through this advertising and subsequent direct contact made with the company , StemGenex, including but not limited to STEMGENEX, STEMGENEX MEDICAL GROUP and STEM CELL RESEARCH CENTRE, INC., received dozens or more paying patients each month for stem cell treatments during the Putative Class Period.

34.    StemGenex's website represents that its "adult adipose-derived stem cell therapy" is "effective" to "treat diseases":

## The Future is Here

**The StemGenex Medical Group prides itself in being the world-wide pioneers in providing stem cell therapy to patients throughout the world and is passionately committed to helping people with unmet clinical needs achieve optimum health and better quality of life through the healing benefits of their own stem cells.**

As the premiere leader in the United States for regenerative medicine, StemGenex Medical Group is dedicated to providing stem cell therapy options to help individuals suffering with inflammatory and degenerative illnesses. Board Certified Physicians administer safe and effective adult adipose-derived stem cell therapy, a minimally invasive procedure using an individual's own stem cells to treat diseases including Multiple Sclerosis, Parkinson's, Rheumatoid Arthritis, COPD and Osteoarthritis.

35.     "Adipose-derived" means from the fatty tissue of the body.  StemGenex' website offers treatments based on injecting consumers with stem cells supposedly drawn and created from their own adult body fat.    The Stem Cell Treatments offered at StemGenex begin with liposuction – they take part of the consumer's belly fat and then, after minimal processing, inject the "stem cells" back into the same spot, and/or other spots on the body.

36.     StemGenex appeals to consumers with the thought they will be receiving special attention, getting an approach that is not "cookie-cutter", and that this will increase the effectiveness of the treatment:

**Customized Treatment Plans**

Every patient treated through StemGenex Medical Group receives a customized treatment plan based upon the disease and complications they are experiencing. Stem cell treatment centers using a cookie-cutter approach to stem cell therapy undoubtedly limit the effectiveness of the patient's treatment. StemGenex Medical Group treatment plans consist of cutting edge protocols developed by top physicians over the years. Patients receiving treatment through StemGenex Medical Group can be confident they will always have access to the latest advancements in stem cell treatment.

FOURTH AMENDED COMPLAINT

37.     StemGenex at various times represents its work as treatment, and at other times as "studies," often within the same paragraph.   As an example, on its home page, StemGenex represents, "These cutting-edge protocols utilize targeted administration methods and the latest activation methods to ensure the safest most effective stem cell treatments possible." At the end of the same paragraph Stemgenex continues:  "Through these stem cell therapy studies, we hope to provide patients with options that may change the course of their lives as well as the course of their disease." In the recesses of its website, and completely contrary to its own promises and representations in all prominent portions of the website, StemGenex attempts to quietly disavow that "treatment using autologous stem cells [that is, cells drawn from the patient's own body] are a cure for any condition, disease or injury." According to StemGenex' website, its "principal purpose is helping people with unmet clinical needs achieve optimum health and better quality of life," and that it has "anecdotal feedback…. from our patients that their symptoms have dramatically improved and their quality of life has substantially increased." (Emphasis added).   These anecdotal testimonials are in violation of the Federal Trade Commission's guides for endorsements on social media, which represent the applicable standard of care for these types of advertisements.   The testimonials do not reflect that the results are not typical nor does it disclose clearly and conspicuously the generally expected circumstances, nor does it disclose that there are patients for whom nothing happened or happens.  Plaintiffs are informed and believe that Defendants intentionally omitted information on their website that some endorsements have been made by employees or by others who were paid to do so. The video segments on the website are therefore further misrepresentations published by StemGenex.  In July of 2014, RITA ALEXANDER formed STEM CELL RESEARCH CENTRE, INC.   By that time, Defendant, StemGenex, including but not limited to STEMGENEX, STEMGENEX MEDICAL GROUP, Ms. ALEXANDER and Dr. LALLANDE, had been advertising that STEMGENEX was engaging in clinical trials.  By that time, those same

Defendants had also been publishing patient statistics of satisfaction.  RITA ALEXANDER formed STEM CELL RESEARCH CENTRE, INC., in order to bolster publication of false patient satisfaction statistics and false data collection for clinical "trials."  Ms. ALEXANDER admitted during the Putative Class Period that STEM CELL RESEARCH CENTRE, INC., was a corporation formed to avoid liability of STEMGENEX and STEMGENEX MEDICAL GROUP.   At all times, RITA ALEXANDER, STEMGENEX, STEMGENEX MEDICAL GROUP, Dr. LALLANDE and STEM CELL RESEARCH CENTRE, INC. (the latter since its formation in 2014) were involved in the publication of false information with regard to the involvement in clinical trials – particularly that there was active participation and/or scientific gathering and/or reporting of medical evidence on outcomes – and that patients were 100% satisfied with the outcome of their procedures.

38.     StemGenex admits that its Stem Cell Treatment is not FDA approved. Indeed Plaintiffs can find no evidence that Defendants ever even submitted an application for FDA approval.  During the pendency of this action, Defendants have added a small print disclaimer, still non-prominent, to the bottom of each page of their website that says, "Stem cell therapy is not FDA approved and is not a cure for any medical condition."   This disclaimer was not on the various pages of the website at the times Putative Class Members, and Putative Class Representatives Ms. Moorer, Mr. Ginsberg and Ms. Gardner, saw and relied on the website.  It also contradicts other, more prominent claims on the website.

39.     StemGenex promises consumers "the most effective stem cell treatments possible," giving the consumer the clear impression that some "effect" will occur if they pay for the "treatment."  This, coupled with the 100% satisfaction rates, is a material misrepresentation because it deceives people looking at these publications into belief that 100% of people felt an effect after treatment.

40.     Certain language is repeated over and over on its site, creating a promise of benefit from the treatments.  StemGenex uses terms like "truly benefit" and

"significantly improve one's quality of life."   On virtually every page of its website, StemGenex makes the following claim:



StemGenex Medical Group offers access to individualized stem cell treatment plans. Most stem cell treatment centers and clinics offer a standard treatment utilizing an IV or direct injections. We believe the key to the most effective stem cell treatment is through treatment plan customization. As each patient's disease is different, each treatment must be tailored around their specific disease related complications and symptoms. This is why StemGenex Medical Group offers access to individualized treatment plans which consist of targeted administration methods to hone in on each part of the body where the complications exist. Through customized, targeted stem cell treatment plans our goal is to offer patients access to stem cell treatment options a patient can truly benefit from to significantly improve one's quality of life.

41.     StemGenex, including but not limited to RITA ALEXANDER, Dr. LALLANDE, STEMGENEX, STEMGENEX MEDICAL GROUP and STEM CELL RESEARCH CENTRE, INC. omits on these pages the information it knows to be true:  There are people who have reported zero effect to them from the service they purchased.

**C.     Who Buys StemGenex's Treatments?**

42.     Plaintiffs, and members of the proposed Class of StemGenex's consumers, are ill and/or disabled and are seeking hope and some possibility of an effective and lasting treatment for their disease, or at least an improvement in their relative levels of disability.  Many are in great financial hardship having incurred significant medical expenses to treat a chronic condition or disease.

43.     StemGenex puts the consumers up in hotels and supplies them a car

service to get to and from the clinic once they arrive in the San Diego area.   Photos of a lovely hotel and happy people entering a limo grace the pages of the site under the section, "We Make Getting Here Easy."

**D.      How Much Money Do Consumers Pay StemGenex?**

44.     Sadly, because of their desperation, many consumers with serious conditions rely on their families to help them to pay StemGenex.  All consumers must pay a non-refundable initial deposit and then an additional payment for a total base price of $14,900 per treatment, exclusive of "add-ons."  This cost is not covered by health insurance plans or by government benefit programs such as Medicare or Medicaid.

45.     Payment for the surgery must be made in advance, and StemGenex requires all patients to pay by cashier's check for the balance after deposit.  This is part of the scheme to avoid return of funds due to dissatisfaction, and easier liquidity of funds.

46.     Consumers are encouraged by StemGenex employees to begin crowd-sourcing fundraising activities, such as "Go Fund Me" pages, in order to raise the money to pay for StemGenex's fees.

47.     StemGenex promotes the idea that consumers should have more than one Stem Cell Treatment, both on its website and in follow-up calls to consumers, even those that are in the hospital undergoing other treatments.  The representation is made on StemGenex' website:  "Could a stem cell therapy be repeated?  Yes, a stem cell therapy may be repeated.  Current studies indicate the strong possibility of a cumulative effect from multiple stem cell therapies a consumer received for their condition.   Long-term studies will attempt to better understand this detail."

48.     RITA ALEXANDER and Dr. LALLANDE, on behalf of themselves and StemGenex, and their employees at their direction sold the consumers another treatment if they were unhappy with the outcome of the first treatment.   Plaintiffs are informed and believe that RITA ALEXANDER and Dr. LALLANDE, on behalf of

themselves and StemGenex, encouraged the manipulation of data to appear as if consumers were satisfied and authorized and ratified that statements of dissatisfaction be kept out of the patients' medical files and not be revealed to the public.

49.    Plaintiffs are informed and believe that RITA ALEXANDER and Dr. LALLANDE, on behalf of themselves and StemGenex discouraged employees from speaking out about these practices and that managers of StemGenex, were instructed and permitted to change the wording of notes in patient files to make it appear that the patients were satisfied when they were not.

50.    StemGenex, including RITA ALEXANDER, Dr. LALLANDE, STEMGENEX, STEMGENEX MEDICAL GROUP and STEM CELL RESEARCH CENTRE, INC., lead dissatisfied consumers to believe that the first treatment did not 'take' and that the consumers should return for more, expensive Stem Cell Treatments.

51.    The persons leading dissatisfied consumers to believe that the treatments take more time to work include, but are not limited to Stemgenex employees called "Patient Advocates" who are and all times were under the control of Ms. ALEXANDER and/or Dr. LALLANDE.   Patient Advocates often have no medical training, but make statements of a medical nature to prospective consumers and to former patients who call with questions or statements of dissatisfaction.  As an example, they will qualify patients for treatment, telling them they can have treatments and/or are telling them they need two treatments.  Patient Advocates also are made to reiterate the high customer satisfaction rates as seen on the website. Plaintiffs are informed and believe that Employees of StemGenex make commissions for the sale of the treatments.

52.    Consumers are told by StemGenex employees at the direction and control of Ms. ALEXANDER and DR. LALLANDE:  "Some consumers have taken up to 6 months before seeing the full effect of the treatment." StemGenex posts the following:

▼ **How long will it take to see results?**

Each condition and patient is unique, and there is no guarantee of what results will be achieved or how quickly they may be observed. Most patients report the results become apparent over 1-3 months, but it can take as long as 6-9 months.

E.   **What About StemGenex's 100% Satisfied "Patient Ratings"?**

53.   On or about December 8, 2013, StemGenex, through the direction of RITA ALEXANDER and/or Dr. LALLANDE, began advertising "Patient Ratings." On December 17, 2013, a Press Release was published by StemGenex stating, "StemGenex®, the leading resource for adult adipose stem cell therapy in the US aimed at improving the lives of patients dealing with degenerative diseases today announced the public release of their satisfaction ratings for patients who have received stem cell therapy through StemGenex.  Patients have trusted StemGenex for years to provide them with access to cutting edge stem cell therapies at the absolute highest levels of care.  StemGenex believes this is something that has been lacking in the industry for some time now.  These ratings now allow the public transparency into patient satisfaction in multiple categories which are now posted and updated monthly on the StemGenex website."

54.   When the original Complaint was filed, the ratings appeared on the home page of StemGenex's website in the following format:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16



17    55.    The "Patient Ratings" from July of 2016, on the home page of

18  StemGenex's website, read as follows:

19  / / / / /

20  / / / / /

21  / / / / /

22  / / / / /

23  / / / / /

24  / / / / /

25  / / / / /

26  / / / / /

27  / / / / /

28

1
2
3
4
5
6
7
8
9
10
11
12



13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

56.    In all of StemGenex's representations to the public, for August of 2016 through at least February 2017, the satisfaction levels add up to **100% of consumers being satisfied.**  StemGenex made these same or substantially similar representations of 100% consumer satisfaction all the way back to at least December 2013.  The disclaimer tag line about satisfaction data being based on "patient exit surveys" **was not added to the StemGenex web advertising until between Nov. 25, 2015 and May 16, 2016**.  The statistics, even with the disclaimer above, are likely to mislead or deceive the consumer.

57.    Defendants, and each of them, know, and knew at all times of publication, that the 100% satisfaction rate was not true and evidence available to StemGenex proves it was not true at the time the representations were made.  Plaintiffs are informed and believe that at the time of these material misrepresentations of 100% satisfaction, StemGenex had received complaints, including but not limited to statements from consumers that no effect had been experienced, that the promised effect had not been experienced, and/or that they

wanted a refund because StemGenex did not live up to its promises.

58.     Plaintiffs are informed and believe that during the Putative Class Period, employees of StemGenex were directed by RITA ALEXANDER and DR. LALLANDE to not record, or to change records, about the **actual** satisfaction rates. At all times during the Putative Class Period, it Defendants, and each of them, misrepresented on the Stemgenex website, and through private mailings, that 100% of patients were satisfied or extremely satisfied.  The express wording was used "0% Unsatisfied" at points in the Putative Class Period until this lawsuit was filed.

59.     Plaintiffs are further informed and believe that during the Putative Class Period in an effort to bolster satisfaction rates, Dr. LALLANDE and/or an employee under his or RITA ALEXANDER's direction would go to patients' hotel rooms the day after their surgery be present while patients filled out the patient survey and would then collect the survey from the patient.  This control of the "survey results" ensured that patients would be less likely to "rate" the experience as anything but satisfactory and had the effect of eliciting a "rating" before the patients actually had time to truly and accurately report on the effects of the treatment or their satisfaction with it. .

60.     Plaintiffs are further informed and believe that during the Putative Class Period when prospective consumers called, the StemGenex sales team was made to claim a high percentage of satisfaction, as is further reported in **Exhibit "1"**.

61.     StemGenex knew that not all persons who received its Stem Cell Treatment benefited from it or were satisfied and that, in fact, a significant portion of patients were dissatisfied.  Accordingly**, StemGenex's statements and representations to the public contain <u>false and misleading information</u> that misrepresented or omitted this information and StemGenex is being, and has been, unjustly enriched as a result.**   StemGenex's marketing of its product is in violation of laws of the state of California and the United States. Plaintiffs and others have been harmed by reliance on StemGenex's misrepresentations and omissions.

62.     StemGenex's methods for gathering information from former consumers follows no systemic protocol, is inaccurately recorded, and does not accurately measure consumer satisfaction. As a result, month after month, false and misleading "consumer ratings" are posted anew in a prominent position on their website.  These monthly false "statistics" are material misrepresentations and give consumers a sense of comfort and willingness to go forward with the treatment.

63.     After this action was on file, the language has changed to no longer show the exact quote "0% Unsatisfied", although the graph shows 100% expectations met. The overall EFFECT of this statement still makes the same appearance to prospective consumers:  that there are still no unsatisfied consumers.

**F.     What About Positive Consumer Reviews On Other Websites?**

64.     Plaintiffs are informed and believe that false reviews have been posted by StemGenex on various consumer review websites, through the direction and authorization of RITA ALEXANDER and/or Dr. LALLANDE and that at least before November 2015, StemGenex requested its own employees to write reviews of the company as if they were actual consumers, and to give high ratings.  These or other false ratings were then published by agents and/or employees of StemGenex, at the direction of RITA ALEXANDER and Dr. LALLANDE, which gave the public another further sense of security that the product/service they were purchasing was of high and effective quality.  As evidence and support of this, Plaintiffs attach as "Exhibit 1" a review on the employment site Glassdoor.com, which appears even now on the website from a former employee.   "StemGenex's Response" from C.E.O. RITA ALEXANDER appears following it, indicating knowledge of the employee who posted that information publicly on Nov. 24, 2015.

**G.     What Can Be Done About It?**

65.     StemGenex has taken advantage of desperate consumers, particularly consumers that are sick with degenerative and incurable diseases. It has made material misrepresentations and has, thereby, given these consumers false hope that they will

also certainly be helped by Stemgenex' treatment.

66.     The false and misleading material representations are made primarily via StemGenex's primary marketing tool, its website.  Further, aside from StemGenex's website, material misrepresentations and omission of important information from other communications by StemGenex to consumers, including marketing packets that are mailed directly to potential patients.

67.     While individual actions by consumers would be expensive, time consuming, and unlikely to support the cost of litigation, StemGenex's wronged consumers, as well as its prospective consumers and the public at large, would be benefited by the damages, restitution, and injunctive relief requested here on a class-wide basis.

## CLASS ACTION ALLEGATIONS

68.     Plaintiffs bring this action on behalf of themselves and all others similarly situated as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

69.     The Class which Plaintiffs seek to represent is defined as follows: All persons, nationwide, who purchased Stem Cell Treatment from StemGenex between December 8, 2013 and present.

70.     Plaintiffs reserve the right to amend the Class definition if discovery and/or further investigation reveal the Class definition should be modified.

71.     This action has been brought and may properly be maintained as a class action, because there is a well-defined community of interest in the litigation in which common issues predominate, the Class is so numerous as to make it impracticable to bring all of its members before the Court, and the proposed class is easily ascertainable.

72.     **Numerosity**. During the Class Period, StemGenex's Stem Cell Treatment was sold directly by StemGenex in California, and was marketed through the internet to consumers throughout the United States. Plaintiffs are informed and

believe that the proposed putative Class is made-up of at least several hundred residents of California and of other states.

73.     **Common Issues Predominate**. Common questions of law and fact exist as to all members of the Class and predominate over any questions which affect only individual members of the Class. This action is based primarily upon false and materially misleading statements and material omissions made by StemGenex about consumer satisfaction of its Stem Cell Treatments via its primary point of contact with consumers, its website (www.stemgenex.com), as well as in written materials mailed to prospective customers.  Each class member purchasing Stem Cell Treatments from StemGenex would have viewed identical false and misleading statements as complained of in this action.  Plaintiffs are informed and believe that no Class member was provided the information alleged as material omissions in this complaint, via the website or otherwise.  The StemGenex website and dissemination of information about StemGenex's Stem Cell Treatments was within StemGenex's possession and control at all relevant times.  There is a well-defined community of interest in the questions of law and fact involved and that affect consumers who purchased the Stem Cell Treatments.  These questions of law and fact predominate over questions that affect only individual Class members. The common questions of law and fact include, without limitation:

i. Whether StemGenex's statements and statistics regarding patient satisfaction were false or misleading;

ii. [RESERVED]

iii. Whether StemGenex knew and/or recklessly or otherwise disregarded the falsity or misleading nature of their statements;

iv. Whether StemGenex concealed and failed to disclose material facts in its communications and disclosures to Plaintiffs and Class members regarding its Stem Cell Treatments;

v. Whether StemGenex has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in connection with the marketing and sale of its Stem Cell Treatments;

vi. Whether StemGenex's conduct constitutes violations of law as alleged in this Complaint;

vii. Whether consumers are and were likely to be deceived by StemGenex's conduct;

viii. Whether, as a result of StemGenex's misconduct, Plaintiffs and the Class members have suffered damages, and if so, the amount thereof; and

ix. Whether, as a result of StemGenex's misconduct, Plaintiffs and Class members are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

74.   **Typicality**.   Plaintiffs' claims are typical of the claims of the Class members in that Plaintiffs and the Class members made a direct purchase from StemGenex based upon identical, false and materially misleading marketing statements made by StemGenex.

75.   **The Class is Ascertainable**. Plaintiffs have adequately and objectively defined the Class, as detailed above, so the Court and Class members will be able to use the definition to determine Class membership. On information belief, Defendants have records which would permit each person in the Class to be identified and to receive Notice of this action.

76.   **Adequacy**.  Plaintiffs will fairly and adequately represent the interests of all Class members. Plaintiffs have purchased a stem cell treatment from StemGenex and are adequate representatives of the Class as they have no interests which are adverse to the interests of absent Class members.  Plaintiffs have retained counsel with experience and success in the prosecution of complex medical and class action litigation.

77.   **Superiority**.  A class action is superior to other available means for the fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  The disposition of their claims in this case and as part of a single class action lawsuit, rather than hundreds or thousands of individual lawsuits, will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds of separate lawsuits. Furthermore, given the extraordinary expenses and burden in conducting discovery and presentation of evidence, the burden of individual litigation would make it extremely difficult, if not impossible, for individual members of the Class to redress the wrongs asserted herein, while an important public interest will be served by addressing the matter as a class action. Moreover, separate prosecution by hundreds or thousands of individual members of the Class would likely establish inconsistent standards of conduct for StemGenex and result in the impairment of and potential harm to, Class members' rights and the disposition of their interests through actions to which they were not parties. Plaintiffs are informed and believe that a great amount of time and expense will be saved by conducting the discovery and presentation of evidence in a single class action lawsuit, in contrast to the repeated discovery and presentation of evidence in hundreds or thousands of separate lawsuits brought on the common questions presented by the allegations of this complaint. Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

## FIRST COUNT

(Violations of Cal. Bus. & Prof. Code § 17200 et seq.)

*Against All Defendants*

78.   Plaintiffs repeat and re-allege all paragraphs within this THIRD AMENDED COMPLAINT and incorporate them as if fully set forth herein.

79.     Plaintiffs bring this count on behalf of themselves and the Class, pursuant to California Business and Professions Code, §17200, et seq.

80.     StemGenex's conduct constitutes unfair, unlawful and fraudulent business acts and/or practices because StemGenex's practices have caused and are likely to cause substantial injury to Plaintiffs and the Class, which injury is not reasonably avoidable by Plaintiffs and the Class in light of StemGenex's exclusive knowledge of the truth about its Stem Cell Treatments, its consumer satisfaction rates, and the basis for claims about customer satisfaction, though it misrepresented, concealed and omitted this truth.

81.     StemGenex's acts and practices are unlawful because they violate the Consumer Legal Remedies Act, Civil Code 1750 et seq., Bus. & Prof. Code § 17500, as alleged in this Complaint and incorporated here by reference.

82.     StemGenex's acts and practices are fraudulent in that they have deceived and/or are "likely to deceive" Plaintiffs, the proposed Class and members of the public. StemGenex sold Plaintiffs and Class members Stem Cell Treatments and/or induced them to make deposits for such treatments, for which they made false and misleading statements, and omitted material information, in order to induce reliance and encourage deposits and purchases by Plaintiffs and members of the Class.

83.     StemGenex was obliged to disclose the material facts because: a) StemGenex had exclusive knowledge of the material facts not known to Plaintiffs and Class members, since only StemGenex had access to the aggregate data from its consumers, its own research and tests, and complaints from its consumers; and b) StemGenex actively concealed and suppressed the material facts from Plaintiffs and Class members in regard to the true facts available on those subjects.

84.     The injury to consumers is substantial, particularly due to the significant cost of the Stem Cell Treatments. Plaintiffs and Class members paid thousands of dollars for Stem Cell Treatments that they would not otherwise have spent, had they known the truth about the fact that prior patients had reported to Defendants that the

treatment did not work for them and the true level of patient satisfaction with StemGenex.

85. The injury to consumers is not outweighed by any countervailing benefits to consumers or competition. Any purported benefits to consumers are negated by consumers' interests in knowing the true facts regarding services offered for purchase, particularly medical or pseudo-medical treatments they are purchasing at substantial cost. Consumers have an important interest in being informed of this information in order to make an intelligent and informed decision about whether to purchase the service.

86. The injury to consumers is not an injury that consumers themselves could reasonably have avoided because consumers did not know the true facts regarding the Stem Cell Treatments and had no reason to believe that StemGenex's statements were false, misleading, or omitted material information.

87. StemGenex's acts and practices offend established public policy and are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers.

88. Plaintiffs and others similarly situated, were misled by Stemgenex' material misrepresentations into believing that StemGenex had no dissatisfied patients, and did not give informed consent for medical treatment for which there had been previously unsatisfied participants.

89. Plaintiffs and Class members reasonably relied on StemGenex's unfair, unlawful and fraudulent conduct with regard to material misrepresenations made about patient satisfaction and would not have purchased the Stem Cell Treatments had StemGenex provided truthful information about the satisfaction of its prior patients.

90. StemGenex's conduct caused Plaintiffs' and Class members' injuries in that Plaintiffs and Class members would not have purchased the Stem Cell Treatments, would have paid less for them, or would not have paid deposits for them, had StemGenex conducted itself fairly during the transactions.

91.     StemGenex's unfair, unlawful and fraudulent business acts and practices directly and proximately caused Plaintiffs' and Class members' injuries as complained of in this complaint.  StemGenex's material omissions and misrepresentations have a tendency to deceive a significant portion of the consuming public and/or of targeted consumers.

92.     Plaintiffs and Class members seek an order of this Court awarding restitution of all payments made to Defendants for Stem Cell Treatments, injunctive relief and all other relief allowed under Section 17200, et seq., plus interest, attorneys' fees, and costs.

## **SECOND COUNT**

(Violations of Cal. Bus. & Prof. Code § 17500 et seq.)

*Against All Defendants*

93.     Plaintiffs repeat and re-allege all paragraphs within this THIRD AMENDED COMPLAINT and incorporate them as if fully set forth herein.

94.     Plaintiffs bring this cause of action on behalf of themselves and the Class pursuant to California Business and Professions Code, §17500, et seq., with more specific allegations as particularly stated in Paragraphs 6 through 67.

95.     StemGenex is a "person" as defined by Cal. Bus. & Prof. Code § 17506.

96.     StemGenex falsely advertised the Stem Cell Treatments by making partial, false and materially misleading representations, while omitting material information, as alleged in this complaint.

97.     StemGenex's false advertising has deceived and is "likely to deceive" Plaintiffs and Class members.

98.     Plaintiffs and Class members relied on StemGenex's false advertising to their detriment in that they would not have purchased the Stem Cell Treatments or made non-refundable deposits on the same, had StemGenex disclosed the true facts.

99.     StemGenex's false advertising directly and proximately caused Plaintiffs' and Class members' injuries in that StemGenex's false statements, misleading statements and omissions were a substantial factor in their deposits and purchases of the Stem Cell Treatments and at the significant amount that was charged, and that but for StemGenex's failures to disclose material information, Plaintiffs and Class members would not have put deposits upon, paid for and/or overpaid for the treatments.

100.    Plaintiffs and Class members have suffered injury in fact and have lost money as a result of StemGenex's false advertising as above.

101.    Pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17535, Plaintiffs seek an order 1) requiring StemGenex to immediately cease the unlawful, unfair, and or fraudulent business acts and/or practices and false and misleading advertising complained of herein; 2) enjoining StemGenex from continuing to falsely advertise the Stem Cell Treatments; and 3) requiring StemGenex to provide full restitution to Plaintiffs and Class members, plus interest and attorneys' fees.

## THIRD COUNT

(Violations of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. – Seeking Injunctive Relief and Damages)

*Against All Defendants*

102.    Plaintiffs repeat and re-allege all paragraphs within the THIRD AMENDED COMPLAINT and incorporate them as if fully set forth herein.

103.    Plaintiffs seek to enjoin StemGenex's violation of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 et seq. Plaintiffs also seek damages on behalf of themselves and the Class, specifically alleging as particularly already stated in Paragraphs 6 through 67.

104.    At all times relevant hereto, Plaintiffs and Class members were "consumer[s]" as that term is defined in Civ. Code § 1761(d).

105.   At all times relevant hereto, StemGenex constituted a "person" as that term is defined in Civ. Code § 1761(c).

106.   StemGenex's material false and misleading statements and omissions as detailed in this complaint represented that their services had sponsorship, approval, characteristics, ingredients, uses, benefits or qualities that they do not have and that their personnel has sponsorship, approval, status, affiliation or connection that they do not have, in violation of Cal. Civ. Code §1770 (a)(5).

107.   StemGenex's material false and misleading statements omissions as detailed in this complaint represented that their services are of a particular standard, quality or grade when they are not, in violation of Cal. Civ. Code §1770 (a)(7).

108.   StemGenex's material false and misleading statements and omissions as detailed in this complaint advertised services with intent not to sell them as advertised, in violation of Cal. Civ. Code §1770 (a)(9).

109.   At all times relevant hereto, Plaintiffs' and Class members' purchases of StemGenex's Stem Cell Treatments and deposits for the same constituted a "transaction" as that term is defined in Civ. Code § 1761(e).

110.   At all times relevant hereto, StemGenex provided "services" to Plaintiffs and members of the Class within the meaning of Civil Code § 1761(b).

111.   Plaintiffs and Class members would have behaved differently by not purchasing the Stem Cell Treatments from StemGenex, or paying deposits toward them, and/or by paying less for the Stem Cell Treatments, had they been aware of the true facts.

112.   StemGenex was obliged to disclose the material facts because: a) StemGenex had exclusive knowledge of the material facts not known to Plaintiffs and Class members, since only StemGenex had access to the aggregate data from its consumers, its own research and tests, and complaints from its consumers; and b) StemGenex actively concealed and suppressed the material facts from Plaintiffs and Class members in regard to the true facts available on those subjects.

113.   Plaintiffs and Class members justifiably acted or relied to their detriment upon the false statements, misleading statements, and concealment and/or non-disclosure of material facts as evidenced by their purchases of the Stem Cell Treatments.  Had StemGenex disclosed the true material facts, Plaintiffs and the Class members would have behaved differently by not buying the service, not paying deposits, and/or paying less.

114.   StemGenex's material false and misleading statements, misleading statements, and omissions of material facts directly and proximately caused Plaintiffs' and Class members' injuries in that Plaintiffs and Class members would not have overpaid for the Stem Cell Treatments, or purchased them at all. As such, Plaintiffs and Class members did not receive the benefit of the bargain.

115.   Cal. Civ. Code § 1780 (a)(2) permits any court of competent jurisdiction to enjoin practices that violate Civil Code § 1770.  Pursuant to Cal. Civ. Code § 1782(d), Plaintiffs seek injunctive relief under this cause of action.

116.   Plaintiff, Selena Moorer, on behalf of herself and all others similarly situated, sent StemGenex a notice letter that complies with Cal. Civ. Code § 1782(a). On August 30, 2016, the notice period of that letter expired.  At the time of the filing of the original complaint, StemGenex had not satisfied any of the elements of Cal. Civ. Code § 1782(c)(1)-(4), or indicated its agreement to satisfy those elements. Plaintiffs amended this complaint to include a claim for damages under the CLRA:

(a) As a result of such conduct in violation of California Civil Code §§1770, et seq., Plaintiffs and members of the Class have suffered damages. Plaintiffs and members of the Class had actual reliance on Defendants' misrepresentations and suffered actual injury as a result of those misrepresentations.

(b) Pursuant to California Civil Code §1780, et seq., Plaintiffs and members of the Class are entitled to actual damages, punitive damages, court costs and attorneys fees.

(c) The aforesaid acts of Defendants, and each of them, which were performed, authorized and/or ratified by Defendants' officers, directors and/or managing agents were malicious, fraudulent  and/or oppressive, as defined by <u>Civil Code</u> Section 3294, therefore justifying an award of exemplary and punitive damages.

## FOURTH COUNT

(Fraud)

*Against All Defendants*

117.   Plaintiffs repeat and re-allege all paragraphs in this THIRD AMENDED COMPLAINT and incorporate them as if fully set forth herein.

118.   StemGenex, by and through its managing agents RITA ALEXANDER and/or Dr. LALLANDE intentionally misrepresented or caused to be intentionally misrepresented to Plaintiffs and members of the Class that it had no dissatisfied consumers, when in fact that was not true.   StemGenex repeatedly published charts/pie charts/diagrams that showed 100% of its consumers' expectations were met and that 0% were unsatisfied.  This was untrue and StemGenex knew it at the time of StemGenex's publication.   As to each of the allegations in this Cause of Action, please see the incorporated specific allegations of Paragraphs 6 through 67, herein.

119.   These intentional misrepresentations constitute fraud.  StemGenex perpetrated this fraud on Plaintiffs and members of the Class by purveying these false statements on its website at www.stemgenex.com and in written marketing materials.

120.   StemGenex also perpetrated this fraud on Plaintiffs and some members of the Class by making the same or similar verbal false statements..   When Plaintiffs called StemGenex as a result of being drawn in through the website during the Putative Class Period, Patient Advocates at the direction and control of RITA ALEXANDER and/or ANDRE LALLANDE would repeat the statements as particularly alleged in Paragraphs 6 through 67.

121.   StemGenex also perpetrated this fraud on Plaintiffs and members of the Class by publishing or directing to be published false and fabricated reviews of its services on the internet.

122.   StemGenex knowingly concealed and omitted material information from its consumers as described in this Complaint, as particularly alleged in Paragraph 6 through 67, despite a duty to disclose the information.

123.   StemGenex knew that the representations above were false when they made them or StemGenex made the representations recklessly and without regard for their truth, as particularly alleged in Paragraphs 6 through 67.

124.   StemGenex intended that Plaintiffs and the members of the Class rely on StemGenex' representation.   StemGenex knew that by publishing information that 100% of its patients were satisfied or extremely satisfied with its services that consumers would be more likely to purchase and pay for its Stem Cell Treatment, as particularly alleged in Paragraphs 6 thought 67.

125.   Plaintiffs and the members of the Class relied on the false representations and material omissions.   Their reliance upon StemGenex's representations was justified because of the manner in which StemGenex made the representations.   This included an impressive website with not just a statement about the statistics, but round graphic representations.   These statistics were simply "cooked up" and were not based on actual and complete consumer feedback.  In fact, at the time, StemGenex knew that some consumers were dissatisfied, had had no effects and/or wanted their money back.  RITA ALEXANDER and DR. LALLANDE knew this, but took steps to conceal this from the public, for the benefit of themselves and StemGenex entities, and each of them.   But, Plaintiffs and members of the Class had no reasonable way to know this.      The reasonable reliance also came about because of powerful and persuasive on-line reviews which were actually manufactured by StemGenex itself through direction to its agents and employees.   This also included firm and repeated

verbal false statements about the consumer satisfaction with StemGenex's Stem Cell Treatment.

126.   As a result of their reliance upon the material misrepresentations and omissions by Defendants, Plaintiffs and the members of the Class were damaged because they made payments and incurred charges for Stem Cell Treatments, travel, and other expenses.

127.   The material misrepresentations and omissions alleged herein were made by Defendants and their managing agents with intent to cause injury to Plaintiffs and the Class or with willful and knowing disregard of the rights and safety of Plaintiffs and the Class and constitute oppression and despicable conduct, thereby justifying an award of punitive damages for the purpose of punishing the Defendants and to discourage similar conduct in the future.

### FIFTH COUNT

(Negligent Misrepresentation)

*Against All Defendants*

128.   Plaintiffs repeat and re-allege all paragraphs within this THIRD AMENDED COMPLAINT and incorporate them as if fully set forth herein.

129.   StemGenex misrepresented to the Plaintiffs and members of the Class that it had no dissatisfied consumers, when in fact that was not true.  As used in this cause of action, "StemGenex" includes STEMGENEX, STEMGENEX MEDICAL GROUP, INC., STEM CELL RESEARCH CENTRE, INC., RITA ALEXANDER and Dr. LALLANDE.  All allegations in this cause of action were done by RITA ALEXANDER and/or Dr. LALLANDE on behalf of themselves and StemGenex, as if individually set forth herein, and with incorporation of the detailed specific allegations above.   As to each of the allegations in this Cause of Action, please see the incorporated specific allegations of Paragraphs 6 through 67, herein.

130.   StemGenex represented to Plaintiffs and members of the Class that they would benefit from the StemGenex Stem Cell Treatment when in fact StemGenex

had no reasonable grounds for making those representations because Defendants knew or should have known it had at least some customers had minimal or no benefit from the Stem Cell Treatment and some did not improve at all.

131.    StemGenex represented to Plaintiffs and members of the Class that 100% of prior patients were satisfied or extremely satisfied with Stemgenex's treatment when in fact StemGenex had no reasonable grounds for making those representations because Defendants knew or should have known it had at least some patients were not satisfied with their treatment and that those patients reported that they did not improve at all, or had insignificant improvement.

132.    StemGenex omitted material information from disclosure to Plaintiffs and the members of the Class, though it had a duty to disclose it.

133.    StemGenex may have believed its representations were reasonably made and omitted information was reasonably concealed or not disclosed, but its belief was unreasonable and fell below the applicable duty of care.

134.    StemGenex intended Plaintiffs and members of the Class to rely on these representations alleged above.

135.    Plaintiffs and the members of the Class reasonably relied on StemGenex' representations.

136.    Plaintiffs and the members of the Class were harmed.

137.    Plaintiffs and the members of the Class' reliance on the representations and material omissions, and each of them, was a substantial factor in causing their harm.

## PRAYER

WHEREFORE, Plaintiffs, individually, on behalf of the Class and on behalf of the public, pray for judgment against Defendants as follows:

1.      That this action be certified as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2.      That Plaintiffs be appointed Class Representatives as requested in this Complaint;

3.      That Plaintiffs be afforded a jury trial on behalf of themselves and the Class, and a jury trial is demanded;

4.      That pursuant to the CLRA, UCL and False Advertising Law, all defendants, their officers, directors, principals, assignees, successors, agents, representatives, employees, subsidiaries, affiliates, and all persons, corporations and other entities acting by, through, under, or on behalf of said defendants, or acting in concert or participation with them, be permanently enjoined from directly or indirectly making any illegal, untrue or misleading statements in violation of the CLRA, Business and Professions Code §§ 17200 et seq. and 17500 et seq., including, but not limited to, the untrue or misleading statements alleged in this complaint;

5.      Awarding Plaintiffs and members of the Class, pursuant to California Civil Code §1750, et seq., actual damages, punitive damages, court costs and attorneys' fees.

6.      Ordering the restitution to the Plaintiffs and members of the Class of all sums unjustly obtained by Defendants for Stem Cell Treatments and other services;

7.      That a finding be made that all Defendants are the alter egos of the other Defendants in this matter and that the corporate veil be pierced;

8.       Awarding Plaintiffs and the members of the Class compensatory damages according to proof;

9.      Awarding Plaintiffs and the members of the Class general damages according to proof;

10.      Awarding Plaintiffs and the members of the Class economic damages according to proof;

11.      Awarding Plaintiffs and members of the Class punitive and exemplary damages according to proof;

12.    Awarding prejudgment and post-judgment interest at the maximum legal rate;

13.    Awarding attorneys' fees according to proof;

14.    Awarding costs of suit; and

15.    All such other and further relief as the Court deems just and proper.

Dated:  May 10, 2017

MULLIGAN, BANHAM, & FINDLEY
/s/ Elizabeth A. Banham
Elizabeth A. Banham
banham@janmulligan.com
Attorneys for Plaintiff and the Putative Class

FOURTH AMENDED COMPLAINT