UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SELENA MOORER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STEMGENEX MEDICAL GROUP, INC., et al.,<br><br>Defendants. | Case No.: 3:16-cv-2816-AJB-NLS<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANTS' MOTION TO DISMISS (Doc. No. 49), AND**<br><br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE (Doc. No. 50)** |

The parties are embroiled in a battle of semantics. The main issue in Defendants' motions is whether Plaintiffs are attempting to backdoor an impermissible claim into their newly-amended complaint by using certain objectionable words. Because the Court finds Plaintiffs are not trying to evade this Court's prior order to bring the previously-denied claim, the Court **DENIES** Defendants' dismissal motion. For similar reasons, the Court **DENIES IN PART** and **GRANTS IN PART** Defendants' motion to strike.

## I. <u>BACKGROUND</u>

This case's procedural history and factual background were detailed in the Court's April 6, 2017 order on Defendants' previous dismissal motion. (Doc. No. 39 at 2–7.) The

Court incorporates that history as though set out here, and will only highlight details pertinent to the instant motion.

Defendants argued in their first dismissal motion—and again here—that Plaintiffs' claims must be dismissed as they "are based solely upon the supposed lack of substantiation for the advertised efficacy of StemGenex's Stem Cell Treatment." (Doc. No. 33-1 at 13.) As the Court previously held, it was impermissible for Plaintiffs to bring a lack of substantiation claim, but permissible to plead actual falsity. (Doc. No. 39 at 11–14.) Although Plaintiffs argued that the stem cell treatment's efficacy was "not the focus of this case" (Doc. No. 37 at 12), the Court agreed with Defendants, stating "Plaintiffs' claims are deeply entrenched in a lack of substantiation theory." (Doc. No. 39 at 13.) The Court found Plaintiffs' falsity claim unpersuasive and questioned "whether Plaintiffs will be able to demonstrate that Defendants' representations about the efficacy of their Stem Cell Treatments are actually false or misleading because they have not alleged that Defendants' claims have actually been disproved." (*Id.*)

Ultimately, the Court dismissed all claims based on the StemGenex treatment's efficacy and cautioned Plaintiffs that if they do not intend to bring an efficacy of treatment claim, they "should consider clarifying this stance in their next amended complaint." (*Id.* at 14.) Plaintiffs abandoned both an efficacy theory and an actual falsity theory in the newest complaint. (Doc. No. 53 at 5 ("Plaintiffs have chosen not to challenge the *treatment* itself.").) The Court found Plaintiffs' Unfair Competition Law, False Advertising Law, Consumer Legal Remedies Act, Negligent Misrepresentation, and Fraud claims regarding patient satisfaction ratings were sufficiently pled. (Doc. No. 39 at 15–19.)

## II. **MOTION TO DISMISS**

Defendants move to dismiss Plaintiffs' Fourth Amended Complaint (FAC) arguing (1) Plaintiffs once again pled the previously-dismissed "lack of efficacy" theory, and (2) the FAC fails both Rule 12(b)(6) and Rule 9(b) requirements.

A Rule 12(b)(6) motion to dismiss tests a complaint's legal sufficiency. Fed. R. Civ. P. 12(b)(6). The Court must accept the complaint's allegations as true and construe all

reasonable inferences in favor of the nonmoving party, but is not required to accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). To avoid a dismissal at this stage, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In addition, complaints alleging fraud must satisfy Rule 9(b)'s heightened pleading requirements, stating with particularity "the time, place[,] and specific content of the false representations as well as the identities of the parties to the misrepresentation." Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)

### 1. **Lack of Efficacy Claim**

Defendants argue "[t]he FAC is replete with allegations that StemGenex's treatment is not effective and the FAC remains entrenched in a lack of efficacy theory." (Doc. No. 49-1 at 9.) But Plaintiffs plainly assert—and repeatedly insist—that they "are NOT making a claim of lack of total efficacy for this product that will require expert testimony on substantiation . . . ." (Doc. No. 53 at 4–5.) "Again, Plaintiffs have chosen not to challenge the *treatment* itself." (*Id.* at 5.) "Plaintiffs have let go of references to the effectiveness of the treatment from a *substantiation* basis about the product overall and removed multiple mentions of 'effectiveness' per se." (*Id.* at 6.)

Looking at the FAC as a whole, the Court finds that the FAC is no longer seeped in a lack of substantiation theory. *Bronson v. Johnson & Johnson*, No. C 12-04184 CRB, 2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013) ("Courts look to a plaintiff's complaint as a whole when determining if a plaintiff merely alleged a lack of substantiation claim."). Plaintiffs meticulously eliminated references to any efficacy-based theory, as shown in an attached redlined version of the complaint. (*See* Doc. No. 53-2 ¶¶ 3, ~~10~~/9, ~~33~~/31, ~~41~~/38, ~~42~~/39, ~~44~~/41, 50, ~~61~~/66, ~~70~~/73(ii), ~~77~~/80, ~~137~~, ~~138~~, ~~151~~/131.) In fact, there are only a handful of references left relating to the "effectiveness" or "benefits" of the treatment. (*See* Doc. No. 43 ¶¶ 34, 39, 40, 84, 125.) However, drawing all inferences in favor of Plaintiffs, these remaining challenged statements can be read as supporting the patient

satisfaction claims, which are cognizable. (*See, e.g.*, *id.* ¶ 125 ("StemGenex knew that some consumers were dissatisfied, had had no effects and/or wanted their money back.").)

Enough offending references to the treatment's efficacy have been removed that it is no longer plausible Plaintiffs are bringing a lack of substantiation theory. Plaintiffs have properly amended their complaint and removed any efficacy theory in accordance with the Court's prior order. Thus, the Court **DENIES** dismissing the FAC on these grounds.

### 2. Patient Satisfaction Claims

Additionally, Defendants renew their prior dismissal motion arguments that Plaintiffs' patient satisfaction claims fail to state a claim under Rule 12(b)(6) and fail to satisfy Rule 9(b)'s requirements. (Doc. No. 49-1 at 14.) While the Court specifically found these claims were sufficiently pled in its April 6, 2017 order, and the claims regarding patient satisfaction rates remain largely unchanged, the Court will briefly analyze Defendants' arguments. First, Defendants continue to argue that Plaintiffs "plead their claims in a way that blurs the distinction" between effectiveness and satisfaction, intentionally conflating the two "in an effort to backdoor in their improper 'lack of efficacy' claims." (Doc. 49-1 at 15–16.) But, as the Court just held, Plaintiffs removed both efficacy-based and actual falsity claims from the FAC, thereby mooting this argument.

Next, Defendants attack the pie graphs in the FAC. They first contend that "Plaintiffs' characterization of the advertised statements relating to patient satisfaction also remains inaccurate on its face," because "none of the graphs purport to reflect that the treatment was 'effective' for all patients." (*Id.* at 16.) While that may be true based on the wording found in each pie graph, (Doc. No. 43 ¶¶ 54 ("How would you describe your overall experience with StemGenex, in terms of meeting your expectation?"), 55 ("How satisfied are you with the medical team that performed your Stem Cell treatment?"), those graphs are not the only allegations related to patient satisfaction ratings. For example, Plaintiffs allege that "Defendants . . . misrepresented on the StemGenex website, and through private mailings, that 100% of patients were satisfied or extremely satisfied. The express wording was used '0% Unsatisfied' . . . until this lawsuit was filed." (Doc. No. 43

4

3:16-cv-2816-AJB-NLS

¶ 58 (emphasis added).) These allegations assert there are statements other than (or in addition to) the pie graphs in which Plaintiffs rely on to prove their underlying claims.

Defendants then take aim at the undefined term "patient expectations," found in the first pie chart, arguing "Plaintiffs should also not be permitted to merge 'lack of efficacy' with 'patient satisfaction' into one overarching misrepresentation that all patients' undefined 'expectations' were met" and that "this does not meet the particularity required by Rule 9(b)." (Doc. No. 49-1 at 16.) On both factual attacks, the Court already denied dismissal, holding that "Plaintiffs have alleged enough facts at this stage" to state a claim and that "these allegations are enough to infer that the customer satisfaction ratings are *at least* misleading to potential customers." (Doc. No. 39 at 16.) The Court also found these allegations passed Rule 9(b)'s muster as Plaintiffs "plead enough facts to allege claims for fraud and negligent misrepresentation." (*Id.* at 18.) The Court finds no reason to reverse itself now.

Finally, Defendants argue that "Plaintiffs have not demonstrated that StemGenex's claims about the effectiveness of its treatment are actually false. Plaintiffs therefore cannot maintain a claim that StemGenex misrepresented patients' satisfaction with the treatments' effectiveness." (Doc. No. 49-1 at 17.) However, as the Court previously stated, "[i]t is not necessary at this stage to determine whether they are actually false." (Doc. No. 39 at 16 (*See In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011) ("A statement may be deceptive and actionable under the UCL, FAL, and CLRA even though it is truthful.")).)

While the Court apperceives Defendants' concern that "StemGenex would bear the burden of proving its treatment is effective in order to defend against the claim that it did not misrepresent patient satisfaction," (Doc. No. 49-1 at 17), the Court simply disagrees. Instead, "StemGenex will [only] bear the burden of proving that it did not misrepresent patient satisfaction." (Doc. No. 53 at 9.) But, to alleviate Defendants' concerns, the Court reaffirms its prior ruling that Plaintiffs are not permitted to continue on any efficacy theory. Plaintiffs have asserted they will not bring a lack of substantiation claim and made a good faith effort to remove the corresponding language from their new complaint as such. And,

as previously held, the FAC adequately states a claim for relief on the patient satisfaction ratings claims. Thus, the Court **DENIES** Defendants' motion to dismiss.

### III. MOTION TO STRIKE

Defendants move to strike DOE Defendants and any substantiation-theory related allegations. (Doc No. 50-1.) The former request is proper—and unopposed—and thus **GRANTED**. Regarding the latter request, Defendants maintain that the FAC failed to "remove allegations regarding the efficacy of Defendants' treatments despite the Court's dismissal of such claims in its April 6, 2017 Order."[1] (*Id.* at 3.)

A court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Immaterial and impertinent matters are generally defined as allegations which have no bearing or relevance on the issues before the Court. *See In re 2TheMart.com, Inc. Securities Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). But, "[the] motion . . . should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation. If there is any doubt . . . the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citations omitted). The court views the pleading in the light most favorable to the nonmoving party. *Id.*

Specifically, Defendants request the Court to strike references to "effectiveness," "effect," "efficacy," "quality," "character," "benefit of treatment," and "pseudo-medical treatments." (Doc. No. 50-1 at 8–9.) Plaintiffs respond that the listed terms support the underlying claims regarding patient satisfaction ratings. (Doc. No. 54 at 4–5.) For example, they state that "the 'character,' 'quality' and 'benefit' are indeed not as stated by the Defendants in their ads because this is not a *globally* 100% satisfying product as it has been purported to be by the Defendants." (*Id.* at 5.) The Court agrees with Plaintiffs that the

---

[1] Plaintiffs argue Defendants waived filing this motion because they did not file one with their previous dismissal motion. (Doc. No. 54 at 3.) However, because the Court chooses to rule on the motion's merits, the Court need not discuss any procedural defects.

1 objected-to terms are relevant when used in light of patient satisfaction ratings. It is nearly impossible to divorce "patient satisfaction" from "effectiveness" when one is determined by the other. In other words, Plaintiffs are not referencing 'efficacy' and its ilk to attack the StemGenex treatment itself, but to support their claim that consumers indeed reported their dissatisfaction with the product (because it failed to work for them), but that their reports were never included in the satisfaction ratings regarding effectiveness. (Doc. No. 54 at 4–5.) Thus, the terms are neither immaterial nor impertinent, and the Court **DENIES** striking them from the FAC.

Defendants also seek to strike allegations that "StemGenex's consumers are often sick or disabled, suffering from incurable diseases and a dearth of hope" and are "[s]adly, because of their desperation." (Doc. No. 50-1 at 8–9.) Plaintiffs claim these references are "foundational" to show Plaintiffs' "context and state of mind in which they viewed Defendants' ads . . . ." (Doc. No. 54 at 5–6.) "Allegations supplying background or historical material or other matter of an evidentiary nature will not be stricken unless unduly prejudicial to defendant. Moreover, allegations which contribute to a full understanding of the complaint as a whole need not be stricken." *In re Facebook PPC Advertising Litig.*, 709 F. Supp. 2d 762, 773 (N.D. Cal. 2010) (internal citations omitted). Defendants have not shown how these allegations would unduly prejudice them, only stating "[t]hese allegations do not contribute to Plaintiffs' substantive claims, are unnecessary, and highly prejudicial to Defendants and must be stricken from the FAC." (Doc. No. 50-1 at 8.) Absent a showing of undue prejudice, and viewing the FAC in the light most favorable to Plaintiffs, the Court also **DENIES** striking these allegations.

## IV. <u>CONCLUSION</u>

In light of the above, the Court **DENIES** Defendants' motion to dismiss, (Doc. No. 49), and **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to

//

//

7

3:16-cv-2816-AJB-NLS

strike, allowing the striking of DOE Defendants but denying striking any other allegations, (Doc. No. 50).

IT IS SO ORDERED.

Dated: September 11, 2017

Hon. Anthony J. Battaglia
United States District Judge