Clark R. Hudson, SBN 149329
Nicole T. Melvani, SBN 281718
NEIL, DYMOTT, FRANK, MCCABE & HUDSON, APLC
110 West A Street, Suite 1200
San Diego, CA 92101-4959
P (619) 238-1712 / F: (619) 238-1562
Attorneys for Defendant, ANDRE P. LALLANDE, D.O.

David Rosenberg; SBN 99105
Annette Farnaes; SBN 128701
ROSENBERG, SHPALL & ZEIGEN, APLC
750 B Street, Suite 3210
San Diego, California 92101
T: (619) 232-1826 / F: (619) 232-1859

Malte L.L. Farnaes; SBN 222608
Christina M. Lucio; SBN 253677
FARNAES & LUCIO, APC
2235 Encinitas Blvd., Suite 210
Encinitas, California 92024
T: (760) 942-9431 / F: (760) 452-4421
Attorneys for Defendants, STEMGENEX MEDICAL GROUP, INC., STEMGENEX, INC., STEM CELL RESEARCH CENTRE, INC., and RITA ALEXANDER

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SELENA MOORER, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>STEMGENEX MEDICAL GROUP, INC., a California Corporation; STEMGENEX, INC., a California Corporation; STEM CELL RESEARCH CENTRE, INC., a California Corporation; ANDRE P. LALLANDE, DO, an Individual; SCOTT SESSIONS, M.D., an individual; RITA ALEXANDER, an individual; and DOES 1-100,<br><br>    Defendants. | CASE NO.: 3:16-cv02816 AJB NLS<br><br>**DEFENDANTS' JOINT REPLY BRIEF IN SUPPORT OF DR. LALLANDE'S MOTION TO STRIKE REPORT OF DR. DAVID STEWART**<br><br>Judge:      Hon. Anthony J. Battaglia<br>Magistrate: Hon. Nita L. Stormes<br><br>FAC Filed:  September 15, 2016<br>Trial Date: Not Set |

DEFENDANTS, Andre P. Lallande, D.O., StemGenex Medical Group, Inc., StemGenex, Inc., Stem Cell Research Centre, Inc., and Rita Alexander ("Defendants"), hereby jointly submit this Reply brief in support of Defendants' Motion to exclude the report of Dr. David Stewart (ECF Nos. 109 & 113).

## I. Introduction.

Plaintiffs rely on the report of Dr. David Stewart to show that "the amount that each Class Member overpaid for SCTT can be determined by means of a survey and reasoned methodology." However, the proposed methodology offered by Dr. Stewart is unreliable and would not result in an accurate assessment of damages to class members. Most importantly, Dr. Stewart's model of damages does not fit plaintiffs' theory of liability. Plaintiffs' theory of liability is unrelated to the treatment's efficacy. In fact, plaintiffs have renounced pursuing an efficacy theory, and the Court has ruled that it is not an issue that will be litigated. Yet, Dr. Stewart's model relies on efficacy. To be sure, in deposition, he testified that his model requires a reasonable estimate of the treatment's efficacy rate. Therefore, his model does not fit plaintiffs' theory of liability. Plaintiffs' opposition fails refute this fatal point.

It is well-established that "[u]nder *Daubert*, the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011). "There are three basic requirements that must be met before expert testimony can be admitted. First, the evidence must be useful to a finder of fact. Second, the expert witness must be qualified to provide this testimony. Third, the proposed evidence must be reliable or trustworthy." *Sterner v. U.S. Drug Enforcement Agency,* 467 F.Supp.2d 1017, 1033 (S.D.Cal. 2006) (citations omitted)).

Rule 23(b)(3) requires Plaintiffs to show "damages are capable of measurement on a class-wide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). To satisfy *Comcast,* Plaintiffs must present a method of proving damages/restitution which is tied

to their theory of liability. *Id*. at p. 35. Damages under the FAL, UCL and CLRA are determined by taking "the difference between the market price actually paid by consumers and the true market price that reflects the impact of the unlawful, unfair, or fraudulent business practices." *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d at 1122.

Here, Dr. Stewart's proposed survey and report are inadmissible because they do not satisfy the requirements under *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) and *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), and his survey is not relevant to the issues in this case.

## II. Dr. Stewart's proposed survey and report do not pass muster under *Daubert* or *Comcast*.

The proposed survey is not relevant to the issues in this case as it is focused on the treatment's efficacy and not patient satisfaction with overall experience. The survey is not designed to lead to a reliable determination of the price premium attributable to Defendants' use of the Pie Chart.

In order to meet the standard set forth in *Comcast*, Plaintiffs must: (1) propose a reliable damages model that measures only those damages attributable to their theory of liability (the allegedly false 100% patient satisfaction with overall experience); and (2) demonstrate that such damages can be measured on a class-wide basis. In order to be relevant and helpful to the trier of fact, the damages methodology proposed by Plaintiffs must therefore be capable of determining the price premium attributable to Defendants' use of the allegedly misleading Pie Chart. By its flawed design, this is not what Dr. Stewart's proposed survey would accomplish. The survey should be excluded under *Daubert* as irrelevant and unreliable.

Plaintiffs claim Dr. Stewart's proposed survey is a "straight-forward analysis of the value of Defendants' 'satisfaction' claims, and will quantify a reliable estimate of a 'discount' to which people believe they're entitled to when they have a prior belief that there is a 100 % likelihood of a positive outcome, and they were told that there is only

a 50% likelihood of a positive outcome." (ECF No. 124 at p. 9). Plaintiffs repeatedly argue that the "proposed survey will result in a quantifiable figure that will demonstrate how much of a price discount (if any) consumers would expect to obtain if instead of a 100% success rate, the success rate is a 50% success rate." (ECF No. 124 at pp. 18, 26). Plaintiffs admit that "inclusion of [the 50%] percentage is necessary for a damages analysis." (ECF No. 124 at p. 26).

Plaintiffs opposition fails to address a key barrier to admissibility of Dr. Stewart's proposed survey and opinions – his proposed survey requires determination of the true "success rate" of the procedure, i.e. the rate of efficacy for the stem cell treatment.

Dr. Stewart offered the following testimony when explaining that he needed a reliable estimate of the rate of efficacy of the stem cell treatment for his survey:

> A   When we talk about some of the specifics like the percentages, <u>I need to know that</u> in order to design the survey. I use the most credible testimony that I saw. If someone wants to provide me with better data on <u>efficacy</u>, I can plug that into the survey that I have yet to run.
>
> ….
>
> Q   Would you expect that there could be a significant difference in the result of this survey depending on the percentage that you use?
> A   There could be, yes.
> Q   So if you put 50% as opposed to 5% that could have a substantial impact in the results that you get back?
> A   It could have, yes.
>
> ….
>
> Q   In order to set up your survey accurately, do you need to know the actual rate of efficacy.
> A   I don't. I need an estimate, but I don't think I have to have a precise estimate, or precise value.
> Q   Would it need to be a reliable estimate?
> A   I think it would need to be a reliable estimate. Reliability, of course, means there may be some degree of uncertainty and some degree of variability but, yes, I would want it to be reliable.

(Ex. 27 at 131:9-132:5; 170:13-21, emphasis added).[1]

Dr. Stewart is apparently unaware that the efficacy of stem cell treatment is not an issue that will be decided in this case. Dr. Stewart's proposed survey is not tied to Plaintiff's theory of liability because the entire survey is designed around an issue that has already been excluded from the litigation per the Court's Order on Defendants' motions to dismiss. (ECF No. 39).

Dr. Stewart's proposed survey is also irrelevant and unreliable because it is premised upon alteration of the actual representation at issue in this case. The "uniform" representation at issue in this case is the Pie Chart that reflected satisfaction with "overall experience." Dr. Stewart's methodology will not determine the price premium attributable to the Pie Chart because he substantially and meaningfully changes the nature of the representation made to putative class members.

Dr. Stewart's proposed survey asks survey respondents how much of a discount they would want if they learned "that only 50% of all patients who obtained the procedure reported any major improvement." The actual language in Dr. Stewart's proposed survey is thus inextricably tied to the efficacy of the procedure – i.e. whether patients had experienced "major improvement" after the procedure. His survey is not tied to the actual language of the representation at issue in this case – i.e. whether patients were satisfied with their "overall experience" at StemGenex. Dr. Stewart does not explain why he conflates the distinct concepts of "satisfaction with overall experience" and "clinical outcome of major improvement." These are two distinct things that can exist independent of one another. This is demonstrated by the many declarations from former patients who indicated they did not experience "major" improvements but were nonetheless satisfied with their overall experience.

///

---

[1] Citations are to Defendants' Joint Exhibit List in Opposition to Motion for Class Certification (ECF No. 117).

It is notable that Dr. Stewart testified he did not know how he could possibly use the actual language from the Pie Chart in his survey. He suggested it would be improper for him show the actual representation at issue (the Pie Chart) and then ask survey respondents what discount they would expect if the Pie Chart was inaccurate (i.e. if some different percentage of patients reported they were less than satisfied with their "overall experience"). Dr. Stewart testified he did not think "the information in the pie charts is representative of people's inferences," and he used the language he did because he was "asking people about a price point and a change in efficacy." (Ex. 27 at 165:17-167:5). Dr. Stewart thus concedes that survey respondents were unlikely to interpret the Pie Chart as relating to efficacy.

Dr. Stewart's significant and unwarranted alteration of the representation at issue in this case demonstrates his proposed survey is not tied to Plaintiff's theory of liability and will not determine the price premium attributable to StemGenex's use of the Pie Chart. The significant and unwarranted alteration of the representation at issue renders Dr. Stewart's proposed methodology unreliable, irrelevant, and inadmissible.

Even if Dr. Stewart's survey focus and question design shifted away from efficacy to "satisfaction,"[2] neither Plaintiffs nor Dr. Stewart have explained how the true rate of "patient satisfaction" can be established. This is another fatal deficiency in Dr. Stewart's survey design that renders it unreliable.

Dr. Stewart does not propose to survey the putative class to determine their rate of satisfaction, and it is clear on its face that such a survey would be unreliable and potential biased in light of this litigation. It would be virtually impossible to determine a reliable rate of satisfaction that existed pre-litigation. Further, such determination would require highly individualized inquiry into each putative class member's results and subjective feelings of satisfaction.

///

---

[2] Neither Plaintiffs nor Dr. Stewart have proposed an alternative survey design.

Defendants have put forth significant evidence demonstrating that the vast majority of patients were satisfied <u>and</u> experienced improvements, and that the Patient Satisfaction Surveys were accurately reported on its website. Contrary to Plaintiffs' assertion, Defendants have refuted the 50% efficacy rate that was pulled out of thin air by Defendants' competitor, Joe Perricone, and utilized by Dr. Stewart. Dr. Lallande testified in his experience, less than 10% of patients saw zero results from treatment between 2015 and 2017. (Ex. 30 to the JEL at 134:11-136:5).

Of note, Plaintiffs characterize Mr. Perricone's testimony as follows: "Mr. Perricone testified that 50% of people had very little response to the SCTT, which included 30-40% of people who had no response at all to the treatment." (See ECF No. 95-1 at p. 14). Thus, Plaintiffs acknowledge that Mr. Perricone was testifying about the rate of the efficacy of the treatment, not about the rate of patient satisfaction. Plaintiffs have not put forth any evidence of the true rate of patient satisfaction that justifies Dr. Stewart's use of a 50% rate in his proposed survey.

Further, Mr. Perricone worked at StemGenex, Inc. for a brief period of time as a sales representative before opening a competing business that also provides stem cell treatment. His testimony is biased, lacks foundation, is vague and ambiguous, is speculative, and is not credible. Dr. Stewart admitted he did not know how long Mr. Perricone worked at StemGenex, which time period Mr. Perricone was referring to when he indicated 50% of patients saw very little response in his observation, or how Mr. Perricone would have efficacy information as a sales representative. (Ex. 27 at 124:19-132:5). Dr. Stewart credited a known competitor's nonspecific testimony over the testimony of a treating physician who provided reliable year-by-year estimates of patient response rates. This demonstrates that Dr. Stewart's survey is flawed, biased and unreliable.

///

///

///

Dr. Stewart's proposed methodology and survey design would not reliably estimate damages that are attributable to Defendants' use of the Pie Chart. The deficiencies in Dr. Stewart's survey design demonstrate that damages cannot reliably be measured on a class-wide basis.

### III. Mr. Falkenhagen is eminently qualified to render opinions and criticisms of Dr. Stewart's report.

In an effort to divert attention from the obvious deficiencies in Dr. Stewart's survey and report, Plaintiffs attack the qualifications of Defendants' expert, Mark Falkenhagen. Mr. Falkenhagen is eminently qualified to render opinions as to the flawed damages model proposed by Dr. Stewart.

Mr. Falkenhagen briefly summarized his background and professional experience in his declaration. *See* ECF 117, Ex. 22. He then indicated further information about his background and experience could be found in his CV, which was intended to be attached as an exhibit to his declaration. The CV was not attached due to a clerical error during the filing process. Defendants have filed a corrected version of Mr. Falkenhagen's declaration with the CV attached, as was intended. A copy of his CV is also attached as Exhibit B to the Reply Brief in support of Defendants' motion to exclude the reports of Drs. Kamins and Hartstone. If Plaintiffs seriously desired to learn or explore Mr. Falkenhagen's extensive qualifications, all they had to do was simply ask for a copy of his CV from defense counsel. Defendants were unaware that the CV was inadvertently not attached until Plaintiffs' opposition was filed.

As detailed in his report and CV, Mr. Falkenhagen is a Senior Partner at Hagen, Streiff, Newton & Oshiro, P.C., a forensic consulting firm which specializes in the application of finance, valuation, economics and statistical principles. *See* Ex. 22 at ¶ 3.; Ex. B. Mr. Falkenhagen earned his Bachelor of Science in Business Administration from University of Southern California in 1992. *See* Ex. 22 at ¶ 3. He is a member of several professional associations and has published regarding calculating economic damages. *See* Ex. B. Additionally, Mr. Falkenhagen has previously calculated damages

and performed analyses related to class certification claims, and he has testified extensively in deposition and trial in both state and federal court. *See* Exh. 22 at ¶ 3.

Other than a missing CV, Plaintiffs do not point to any actual evidence to support their attacks on either Dr. Chiagouris or Mr. Falkenhagen's qualifications. Plaintiffs' arguments are based on pure speculation that Dr. Chiagouris and Mr. Falkenhagen do not have experience in market research, consumer surveys, survey design, and statistics. Plaintiffs cannot sincerely challenge these experts' qualifications when they never questioned either expert regarding their education, training, background or professional experience in the issues involved in this litigation. Defendants made both Dr. Chiagouris and Mr. Falkenhagen available for deposition in the time frame prescribed by the Court in its prior discovery orders. Plaintiffs elected <u>not</u> to proceed with the depositions, despite the fact that they insisted upon unnecessary motion practice to obtain a Court order compelling these depositions, which they apparently never intended to take.

Mr. Falkenhagen is eminently qualified to render the opinions offered in his report. His opinions are reliable, relevant and supported by sufficient facts, data, knowledge, and methodology. Defendants' expert reports are admissible under *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) and Fed. R. Evid. 702 and 703. Plaintiffs do not make a serious challenge otherwise.

**IV. Conclusion.**

Based on the foregoing, Defendants respectfully request the Court exclude the unreliable and irrelevant opinions and proposed survey of Plaintiffs' expert, Dr. Stewart.

Dated: February 1, 2019   NEIL, DYMOTT, FRANK, MCCABE & HUDSON
A Professional Law Corporation

By:   /s/ Nicole Melvani
Clark R. Hudson
Nicole T. Melvani
Attorneys for Defendant
ANDRE P. LALLANDE. D.O.

Dated: February 1, 2019   ROSENBERG, SHPALL & ZEIGEN, APLC
A Professional Law Corporation

By:   /s/ Annette Farnaes
David Rosenberg
Annette Farnaes
Attorneys for Defendants
STEMGENEX MEDICAL GROUP, INC.,
STEMGENEX, INC., STEM CELL
RESEARCH CENTRE, INC., and RITA
ALEXANDER

Dated: February 1, 2019   FARNAES & LUCIO
A Professional Corporation

By:   /s/ Malte Farnaes
Malte L.L. Farnaes
Christina M. Lucio
Attorneys for Defendant
STEMGENEX MEDICAL GROUP, INC.,
STEMGENEX, INC., STEM CELL
RESEARCH CENTRE, INC., and RITA
ALEXANDER