UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SELENA MOORER, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STEMGENEX MEDICAL GROUP, INC., a California corporation; STEMGENEX, INC., a California corporation; STEM CELL RESEARCH CENTRE, INC., a California Corporation; ANDRE P. LALLANDE, D.O., an Individual; SCOTT SESSIONS, M.D., an Individual; RITA ALEXANDER, an Individual; and DOES 1-100,<br><br>Defendants. | Case No.: 16-cv-02816-AJB-NLS<br><br>**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT**<br><br>**(Doc. No. 171)** |

Presently before the Court is Selena Moorer, Rebecca King, Jennifer Brewer, and Alexandra Gardner, including Subclass A Representatives Jennifer Brewer and Alexandra Gardner, and Subclass B Representatives Andrea Andrews and Jennifer Delaney's (collectively, "Plaintiffs") motion for orders: (1) granting preliminary approval of a partial settlement between the Class Members and Defendant Andre P. Lallande, D.O. ("Lallande") pursuant to Fed. R. Civ. P. 23(e), and (2) finding the settlement between the Class Members and Lallande a "good faith settlement," within the meaning of Sections 877

1

and 877.6 of the California Code of Civil Procedure. (Doc. No. 171.) The motion is unopposed. Having reviewed the parties' moving papers under controlling legal authority, and pursuant to Local Civil Rule 7.1.d.1, the Court finds the matter suitable for disposition on the papers and without oral argument. For the reasons set forth below, the Court **GRANTS** Plaintiffs' unopposed motion in its entirety.

## I.   BACKGROUND

On August 22, 2014, Plaintiffs filed a putative class action complaint against multiple Defendants in the Superior Court of California, County of San Diego, alleging violations of California's Unfair Competition Law, Business and Professions Code § 17200, et seq., ("UCL"), California's False Advertising Law, Business and Professions Code § 17500, et seq., ("FAL"), California's Consumer Legal Remedies Act, California Civil Code § 1770, et seq., ("CLRA"), California's Health and Safety Code § 24170, et seq., ("Human Experimentation"), 18 U.S.C. § 1961, et seq., ("RICO"), Fraud, Negligent Misrepresentation, and Unjust Enrichment. (Doc. No. 1-2.) On September 15, 2016, Plaintiffs filed a First Amended Complaint, ("FAC"), to include a claim for damages under the CLRA. (Doc. No. 1-3.) The FAC contained similar factual allegations, but added Plaintiff Stephen Ginsberg to the action and alleged an additional claim for Financial Elder Abuse. (*Id.*) On November 16, 2016, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(a) and (b). (Doc. No. 1.)

The operative complaint alleges that Defendants engaged in a nationwide scheme to "wrongfully market and sell 'stem cell treatments'" to consumers who are often "sick or disabled, suffering from incurable diseases and a dearth of hope." (Doc. No. 24 at 3.) Specifically, Plaintiffs allege that Defendants advertised their "stem cell treatments" to consumers via their website and made misrepresentations that the treatments "effectively treat a multitude of diseases," when in actuality, Defendants maintained "no reasonable basis" to make these claims. (*Id.*) Plaintiffs further allege that Defendants represented to consumers that "100% of its prior consumers are satisfied with its service," while omitting material information about its services, including consumer dissatisfaction and complaints

regarding the ineffectiveness of the treatments. (*Id.*) These statements were based upon "Patient Satisfaction Ratings" or "PSR" collected by Defendants. Plaintiffs represent a class of all consumers nationwide who purchased Stem Cell Treatments from Defendant StemGenex between December 8, 2013 and present, and a subclass of all members of the nationwide class aged 65 years or older at the time of purchase. (*Id.* ¶¶ 64–65.) Plaintiffs allege that each customer was exposed to Defendants' website, relied on Defendants' "false and misleading marketing" of the Stem Cell Treatments, and have been harmed as a result. (*Id.*)

Specifically, Plaintiff Moorer, suffering from lupus, and Plaintiff Gardener, suffering from diabetes, each relied upon the customer satisfaction statistics posted on the StemGenex website in deciding to purchase Defendants' Stem Cell Treatments. (*Id.* ¶¶ 8–9A.) Plaintiffs allege that each Plaintiff paid a total of $14,900.00 for the treatment, did not benefit from the treatment, and informed Defendants of their dissatisfaction. (*Id.* ¶¶ 8–9A, 11.) Further, Plaintiffs allege they would "not have paid for the Stem Cell Treatment had they known that the statistics on the StemGenex website regarding consumer satisfaction were false, and that StemGenex had no reasonable basis for its marketing claim that the Stem Cell Treatments were effective to treat diseases as advertised." (*Id.* ¶ 10.)

## II.     PROCEDURAL HISTORY

On August 6, 2018, Plaintiffs filed a motion for class certification. (Doc. No. 95.) The motion was granted by the Court on June 25, 2019. (Doc. No. 134.) On December 24, 2019, the Ninth Circuit issued an order granting a request for permission to appeal this Court's class certification order by four of the Defendants: StemGenex, Inc., StemGenex Medical Group, Inc., Stem Cell Research Centre, Inc., and Rita Alexander (collectively, "the StemGenex Defendants"). Defendant Lallande filed a motion to join or intervene in the appeal as an appellant. On October 30, 2020, during the pendency of the appeal, Plaintiffs filed an unopposed motion for preliminary approval of partial settlement as to Defendant Lallande only. As a condition of settlement, Defendant Lallande agreed to file a notice of withdrawal of and/or motion to withdraw motion to intervene on October 15,

2020, which was granted by the Ninth Circuit on October 30, 2020. (Doc. No. 171-1 at 11.) The appeal as to the StemGenex Defendants is currently pending, and this order follows.

## III. LEGAL STANDARD

"Voluntary conciliation and settlement are the preferred means of dispute resolution in complex class action litigation." *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG (WMC), 2013 WL 163293, at *2 (S.D. Cal. Jan. 14, 2013) (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)). "In a class action, however, any settlement must be approved by the court to ensure that class counsel and the named plaintiffs do not place their own interests above those of the absent class members." *Dennis v. Kellogg Co.*, 697 F.3d 858, 861 (9th Cir. 2012); *see also* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval.").

## IV. DISCUSSION

"[C]ourt approval of a class action settlement involves a two-step process—preliminary approval, followed by final approval of the settlement. . . ." *In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *3 (S.D. Cal. Apr. 13, 2009). In this case, the Court is at the first step—preliminary approval. This "initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Justice*, 688 F.2d at 625. The "Court need not review the settlement in detail at this juncture; instead, preliminary approval is appropriate so long as the proposed settlement falls within the range of possible judicial approval." *In re M.L. Stern Overtime Litig.*, 2009 WL 995864, at *3 (citation and internal quotation marks omitted). However, even at this preliminary stage, "a district court may not simply rubber stamp stipulated settlements." *Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 WL 1793774, at *1 (N.D. Cal. June 19, 2007). Rather, the Court must "ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

//

### A.     The Propriety of Class Certification

To approve a settlement, a district court must first make a finding that a class can be certified. Rule 23(a) sets out four prerequisites for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). In the Court's June 25, 2019 order granting Plaintiff's motion for class certification, (Doc. No. 134), the Court found all the prerequisites present for class certification. Following this decision, the StemGenex Defendants appealed the Court's order to the Ninth Circuit. (Doc. No. 135.) Thus, the question is whether the pending appeal affects the Court's finding of the appropriateness of class certification. The Court concludes it does not. Defendant Lallande filed with the Ninth Circuit a petition seeking to intervene in the appeal. However, as a condition of settlement, Lallande filed a notice of withdrawal of and/or motion to withdraw motion to intervene on October 15, 2020, which was granted by the Ninth Circuit on October 30, 2020. (Doc. No. 171-1 at 11.) Moreover, Plaintiffs and Lallande agreed that the instant settlement is not conditioned on the StemGenex Defendants' appeal. In particular, the parties agreed "[a]ll financial and other obligations in the settlement are expressly conditioned on preliminary and final approval, and if the Appeal results in any de-certification of any of the 1,063 Class Members, it will have no effect on the settlement; in such event, the parties stipulated to certification of a "settlement class" consisting of the same 1,063 Class Members for the sole purpose of effectuating a settlement under their agreement." (Doc. No. 171-1 at 12; Doc. No. 171-4, Ex. 1, Section C.1.)

As such, based on this Court's prior certification of Plaintiffs' class, and the parties' stipulation that the StemGenex Defendants' appeal will have no bearing on the settlement, the Court finds the settlement class meets the requirements of Rule 23 for the purpose of preliminary approval of this partial settlement.

### B.     Fairness of the Proposed Settlement

In conducting the second part of the inquiry, Federal Rule of Civil Procedure 23(e) requires a district court to determine whether a proposed class action settlement is

5

fundamentally fair, adequate, and reasonable. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *see also Officers for Justice*, 688 F.2d at 630 (holding a settlement must stand or fall in its entirety because a district court cannot "delete, modify or substitute certain provisions"). A court must assess several factors to determine the overall fairness of a proposed class action settlement: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026.

Several factors weigh in favor of a finding of fairness. First, the parties have engaged in significant discovery and law-and-motion practice. The facts and the parties' respective legal positions have been extensively briefed in this Court, and in the Ninth Circuit. Class Counsel has also accumulated significant discovery related to Defendants' business, including data learned from litigation in parallel proceedings in Bankruptcy Court. *See In re Wireless Facilities, Inc. Secs. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

Second, that the settlement was reached with the assistance of an experienced mediator further suggests that the settlement is fair and reasonable. *See Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 620 (N.D. Cal. 2014) (noting that discovery and the use of a mediator "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement" (citation omitted)). On August 20, 2020, the parties—Plaintiffs, StemGenex Defendants, and Lallande—all attended a private mediation conducted by Judge Carl West (Ret.) of JAMS. (*See* Declaration of Timothy G. Williams ("Williams

6

Decl."), ¶ 2.) All counsel, parties, and insurance carrier adjusters attended via Zoom. (*Id.*) After weeks of additional settlement discussions between Plaintiffs and Lallande, an agreement was reached to settle Plaintiffs and all Class Members' claims in the action against Lallande. The agreement has been reduced to writing and executed as of October 10, 2020. (Doc. No. 171-4.)

Third, courts generally afford great weight to the recommendation of counsel with respect to settlement because counsel "are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Secs. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, counsel found that the strengths and risks of the case support the compromises reached by both sides. Counsel notes the agreement results in monetary relief to Class Members but does not foreclose additional relief from the StemGenex Defendants. Given Plaintiffs' counsels' experience with similar class action litigation, the Court finds that affording deference to their decision to settle the case, as well as the terms of that settlement, is appropriate.

Taken together, these facts support finding the settlement to be fair, reasonable, and adequate.

### C.     California Code of Civil Procedure Section 877 Good Faith Settlement

Next, Plaintiffs seek a determination by the Court that the partial settlement is in good faith pursuant to California Code of Civil Procedure Section 877. Section 877 generally permits a plaintiff to release one of several defendants claimed to be liable for the same damages, and Section 877.6 describes the process in which such a settlement may be determined by the court to be in good faith which would bar other defendants from further claims against the settling defendant. (Doc. No. 171-1 at 19.) A federal court sitting in diversity has discretion to determine whether a settlement is in good faith under California Code of Civil Procedure Section 877.6. *See Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1064 (9th Cir. 2011). When a settlement is determined to have been made in good faith, further negligence-based equitable contribution or comparative indemnity claims against settling parties are barred "so long

as the other tortfeasors were given notice and an opportunity to be heard." *Gackstetter v. Frawley*, 135 Cal. App. 4th 1257, 1273 (2006). A determination that a settlement has been conducted in good faith will also "reduce the claims against the [remaining defendants] in the amount stipulated by the release." Cal. Civ. Proc. Code § 877(a).

When making a determination that a settlement was made in good faith pursuant to section 887.6(a)(2), a court considers the following: (1) the amount of the settlement; (2) a rough approximation of plaintiff's total recover and the settlers' proportionate liability; (3) allocation of settlement proceeds among the plaintiff's settlement; (4) the settlers' financial condition and insurance limits; (5) evidence of fraud or collusion; and (5) a recognition that a settler should pay less in settlement than he would if he were found liable at trial. *See Tech–Bilt, Inc. v. Woodward–Clyde & Associates*, 38 Cal.3d 488, 499–500 (1985).

Here, Lallande's settlement payment of $2,500,000 through a professional liability insurance policy with The Doctors Company ("TDC") is a good faith settlement. The uncertainties of a subsequent trial, including Lallande's liability to the Class both individually and as a portion of Defendants' total potential liability support this settlement. Also, Lallande and TDC dispute whether any of the claims in this action are covered claims under the policy in the event of an adverse judgment. (Doc. No. 171-1 at 20.) Thus, absent a settlement, there is a possibility that no money under the TDC policy would be available to pay the claims of any Class Members in the case of a verdict against Lallande. Furthermore, the Court also notes that Plaintiffs' request for this finding is unopposed by any Defendants. For these reasons, the settlement is determined to be a "good faith settlement" between the Class and Lallande under California Code Civil Procedure Sections 877 and 877.6.

**D.     Notice**

Rules 23(c)(2)(B) and (e)(1) generally require that a Rule 23(b)(3) settlement class should receive notice in a reasonable manner, and that the notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Amchem*

*Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Regular mail, electronic mail, and other appropriate means should all be considered. *See* Fed. R. Civ. P. 23(c)(2)(B).

Here, Plaintiffs propose that notice to the Class be sent by both electronic mail, and regular mail to ensure delivery. In addition, Plaintiffs suggest a website for notice created by the settlement administrator as an additional resource for the Class. To implement these notice procedures, Class Counsel has obtained a proposal from A.B. Data, Ltd., a settlement administration company, for administration of the Notice of Partial Settlement of Certified Class Action, which includes regular mail, email, and the creation and hosting of a website for notice. (Doc. No. 171-6, Ex. 3.)

The proposed Notice of Partial Settlement of Certified Class Action includes the opportunity for a Class Member to object, as provided by Rule 23(e)(5)(A). (*Id.*) Regarding Rule 23(e)(4)'s opportunity to seek exclusion, Ninth Circuit authority supports that no such option should be permitted when Class Members had an opportunity to seek exclusion previously. *See, e.g.*, *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018). Here, the Class Members were previously offered the opportunity in the original class notices to either remain in the case or seek exclusion. (*See* Doc. Nos. 171-1 at 21.) The Class Members were explicitly notified that if they remained in the case, their decision will be final and binding, and Class Members will not be able to change their mind later and request exclusion. (*Id.*) As the Class Members were previously given an opportunity to seek exclusion, a second opportunity is not needed.

Having reviewed the proposed Notice of Partial Settlement of Certified Class Action, the Court concludes that the notice complies with Federal Rule of Civil Procedure 23. The Court also appoints A.B. Data, Ltd. as the third-party claims administrator. A.B. Data, Ltd. must (1) distribute the Notice of Partial Settlement of Certified Class Action by regular mail and email to all Class Members for whom such addresses are known within 21 days of the entry of this preliminary approval order; and (2) create and host the website for notice.

//

### E.   Final Approval Hearing and Other Dates

A court must hold a hearing before finally determining whether a class settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). The Court thus **ORDERS** that the final fairness hearing be set for **April 29, 2021 at 2:00 PM**. Regarding all other applicable dates, the Court **ADOPTS** the implementation schedule requested by Plaintiffs. The Motion for Final Approval must set forth Plaintiff's Counsel's request for fees and costs, with detailed records of hours, rates, and costs documented.

## V.   CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiffs' unopposed motion for preliminary approval of partial settlement in its entirety. The Court additionally (1) appoints A.B. Data, Ltd. as the settlement administrator and approves of Plaintiffs' proposed Class notice, (2) orders the 30-day notice period to begin within 21 days of the entry of this preliminary approval order, in which any comments/objections can be filed by Class Members, and (3) sets a final approval briefing schedule to begin within 21 days of the end of the 30-day notice period, with a hearing on fairness and final approval of the settlement to be held on **April 29, 2021 at 2:00 PM**.

**IT IS SO ORDERED.**

Dated:  January 8, 2021

Hon. Anthony J. Battaglia
United States District Judge