UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SELENA MOORER, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STEMGENEX MEDICAL GROUP, INC., a California corporation; STEMGENEX, INC., a California corporation; STEM CELL RESEARCH CENTRE, INC., a California corporation; ANDRE P. LALLANDE, D.O., an Individual; SCOTT SESSIONS, M.D., an Individual; RITA ALEXANDER, an Individual; and DOES 1 through 100,<br><br>Defendants. | Case No.: 16-cv-02816-AJB-AHG<br><br>**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**(Doc. No. 206)** |

Presently pending before the Court is Selena Moorer, Rebecca King, Jennifer Brewer, and Alexandra Gardner, including Subclass A Representatives Jennifer Brewer and Alexandra Gardner, and Subclass B Representatives Andrea Andrews and Jennifer Daley's (collectively, "Plaintiffs") motion for preliminary approval of class action settlement between the Class Members and Defendants StemGenex Medical Group, Inc., StemGenex, Inc., Stem Cell Research Centre, Inc., and Rita Alexander (collectively, "StemGenex Defendants") pursuant to Fed. R. Civ. P. 23(e). (Doc. No. 206.) The motion

1

is unopposed. Having reviewed the parties' moving papers under controlling legal authority, and pursuant to Local Civil Rule 7.1.d.l, the Court finds the matter suitable for disposition on the papers and without oral argument. For the reasons set forth below, the Court **GRANTS** Plaintiffs' unopposed motion.

## I.   BACKGROUND

On August 22, 2014, Plaintiffs filed a putative class action complaint against the StemGenex Defendants, Andre Lallande, D.O., and Scott Sessions, M.D., (collectively, "Defendants") in the Superior Court of California, County of San Diego, alleging violations of California's Unfair Competition Law, Business and Professions Code § 17200, *et seq.*, California's False Advertising Law, Business and Professions Code § 17500, *et seq.*, California's Consumer Legal Remedies Act, California Civil Code § 1770, *et seq.*, ("CLRA"), California's Health and Safety Code § 24170, *et seq.*, 18 U.S.C. § 1961, *et seq.*, Fraud, Negligent Misrepresentation, and Unjust Enrichment. (Doc. No. 1-2.) On September 15, 2016, Plaintiffs filed a First Amended Complaint, ("FAC"), to include a claim for damages under the CLRA. (Doc. No. 1-3.) The FAC contained similar factual allegations but added Plaintiff Stephen Ginsberg to the action and alleged an additional claim for Financial Elder Abuse. (*Id.*) On November 16, 2016, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(a) and (b). (Doc. No. 1.)

The operative complaint alleges that Defendants engaged in a nationwide scheme to "wrongfully market and sell 'stem cell treatments'" to consumers who are often "sick or disabled, suffering from incurable diseases and a dearth of hope." (Doc. No. 24 at 3.) Specifically, Plaintiffs allege that Defendants advertised their "stem cell treatments" to consumers via their website and made misrepresentations that the treatments "effectively treat a multitude of diseases," when, in actuality, Defendants maintained "no reasonable basis" to make these claims. (*Id.*) Plaintiffs further allege that Defendants represented to consumers that "100% of its prior consumers are satisfied with its service," while omitting material information about its services, including consumer dissatisfaction and complaints regarding the ineffectiveness of the treatments. (*Id.*) These statements were based upon

"Patient Satisfaction Ratings" or "PSR" collected by Defendants. Plaintiffs represent a class of all consumers nationwide who purchased Stem Cell Treatments from Defendant StemGenex between December 8, 2013 and the present, and a subclass of all members of the nationwide class aged 65 years or older at the time of purchase. (*Id.* ¶¶ 64–65.) Plaintiffs allege that each customer was exposed to Defendants' website, relied on Defendants' "false and misleading marketing" of the Stem Cell Treatments, and have been harmed as a result. (*Id.*)

As to the allegations against Defendant Alexander individually, Plaintiffs allege Alexander founded StemGenex, and directs and controls the businesses of StemGenex, StemGenex Medical Group, Inc., and Stem Cell Research Centre, Inc. Plaintiffs assert Alexander was intimately involved with the PSR marketing scheme, and was directly involved in the questionnaire process on the day following customers' stem cell therapy treatment to collect data which was used in the publication of the PSR. Alexander denies liability and contends that she had no involvement in publishing or disseminating the PSR.

On August 6, 2018, Plaintiffs filed a motion for class certification. (Doc. No. 95.) The motion was granted by the Court on June 25, 2019. (Doc. No. 134.) On December 24, 2019, the Ninth Circuit issued an order granting a request for permission to appeal this Court's class certification order by the StemGenex Defendants. Defendant Lallande individually filed a motion to join or intervene in the appeal as an appellant. On October 30, 2020, during the pendency of the appeal, Plaintiffs filed an unopposed motion for preliminary approval of partial settlement as to Defendant Lallande only. As a condition of settlement, Defendant Lallande agreed to file a notice of withdrawal and/or motion to withdraw motion to intervene on October 15, 2020, which was granted by the Ninth Circuit on October 30, 2020. (Doc. No. 171-1 at 11.) On November 24, 2020, the Ninth Circuit affirmed every aspect of the Court's order granting Plaintiffs' motion for class certification, but ordered the Court to revise the Subclass definitions to include StemGenex customers who "saw" the misleading marketing material. (Doc. No. 183 at 1–2; *see also* Doc. No 179.)

On August 20, 2020, during the pendency of the appeal, the parties all attended a private mediation conducted by Judge Carl West (Ret.) of JAMS. There was no immediate settlement, but after weeks of additional settlement discussions between Plaintiffs and Lallande, an agreement was reached to settle the Plaintiffs and all Class Members' claims against Lallande, individually. (Doc. No. 171-4.) Plaintiffs then moved this Court to preliminarily approve of the Settlement Agreement and find that it is a "good faith settlement" while Plaintiffs and all Class Members continued to pursue their claims against the StemGenex Defendants. The Court granted preliminary approval and final approval to the Lallande Settlement on January 8, 2021, and May 4, 2021, respectively. (Doc. Nos. 174 & 198.)

On July 9, 2021, following the Amended Order granting class certification, Plaintiffs and StemGenex Defendants filed a joint statement regarding notice to the Class. (Doc. No. 203.) Plaintiffs and StemGenex Defendants have agreed to settle in writing after extensive settlement conferences and executed it as of September 23, 2021, which the parties now submit to the Court for preliminary approval.

## II. LEGAL STANDARD

"Voluntary conciliation and settlement are the preferred means of dispute resolution in complex class action litigation." *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG (WMC), 2013 WL 163293, at *2 (S.D. Cal. Jan. 14, 2013) (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)). "In a class action, however, any settlement must be approved by the court to ensure that class counsel and the named plaintiffs do not place their own interests above those of the absent class members." *Dennis v. Kellogg Co.*, 697 F.3d 858, 861 (9th Cir. 2012); *see also* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval.")

"[P]reliminary approval and notice of the settlement terms to the proposed class are appropriate where '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not

improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with [sic] the range of possible approval . . . .'" *Eddings v. Health Net, Inc.*, No. CV 10–1744–JST (RZx), 2013 WL 169895, at *2 (C.D. Cal. Jan. 16, 2013) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation and citation omitted)) and (citing *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.")).

## III. DISCUSSION

### A. The Proposed Settlement

#### 1. The Settlement Terms

Plaintiffs and the StemGenex Defendants have executed a "Settlement Agreement of Class Action Claims." The primary terms of Settlement are provided below:

1. The Settlement is between the Class Members and the remaining four StemGenex Defendants (as well as a release of Scott Sessions, M.D.).

2. The StemGenex Defendants, through their insurer, Admiral, will pay One Million One Hundred Fifty Thousand Dollars ($1,150,000.00) (the "Settlement Amount") as a no reversion/no refund settlement payment to settle and resolve all claims in the action by or on behalf of the 1,063 Class Members against the StemGenex Defendants. The Settlement Amount will only be used: to pay claim shares to the 1,063 Class Members; to pay a settlement claims administrator; to pay any amounts that may be awarded as service fees; and to pay Class Counsel for any award of attorneys' fees, costs, and expenses incurred in the action.

3. In exchange for the Settlement Amount, upon final approval the 1,063 Class Members will dismiss the action against the StemGenex Defendants, resulting in a dismissal of the entire action, to include the FAC and all Counts and all forms of relief sought by the 1,063 Class Members through the FAC against all remaining Defendants that

arose within the Subclass periods certified by the Court (including a release of Scott Sessions, M.D.).

4.  All financial and other obligations in the settlement are expressly conditioned on preliminary and final approval. Payment of the Settlement Amount will be made by Admiral to the Court-appointed settlement administrator upon the final effective date of the approval process.

### 2.  Amount and Distribution

The parties have agreed to a class-wide settlement, comprising of $1,150,000 from this proposed settlement and an additional $2,500,000 from the Lallande settlement, totaling $3,650,000. (Doc. No. 206-5 at 5–25.) The parties intend to subtract a number of payments from this gross settlement amount. (*Id.* at 10; Doc. No. 206-1 at 18–25.) These payments consist of service payments to named plaintiffs, attorneys' fees, reimbursement to Class Counsel, and costs of administration incurred by the settlement administrator. (Doc. No. 206-5 at 10.)

The parties have agreed that each of the named Plaintiffs should receive service payments of up to $3,000 each for their role in representing the litigation, totaling $15,500. (Doc. No. 206-1 at 18–21.) Also uncontested is Class Counsel's request of attorneys' fees awarding 30% of the common fund of $3,650,000 from this settlement and the Lallande settlement, equal to $1,095,000. (*Id.* at 24.) Additionally, Class Counsel requests reimbursement of their out-of-pocket costs of an estimated $439,000. (*Id.*) Finally, the Plaintiffs seek approval of settlement administration costs, "estimated to be in the range of $43,000." (*Id.* at 25.) Therefore, from a total gross settlement amount of $3,650,000, the net settlement amount is estimated at $2,057,500. (*Id.*)

Class Counsel proposes the net settlement amount to be distributed equally among the 1,063 Class Members, resulting in shares of approximately $1,935 to each person. (*Id.*) This equates to a repayment of approximately 13% of what each Class Member paid for their original treatment with StemGenex Defendants. (*Id.*)

///

### B. The Proposed Settlement Warrants Preliminary Approval

#### 1. The Propriety of Class Certification

To approve a settlement, a district court must first make a finding that a class can be certified. Rule 23(a) sets out four prerequisites for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). In the Court's June 25, 2019 order granting Plaintiff's motion for class certification, (Doc. No. 134), the Court found all the prerequisites present for class certification. Following this decision, the StemGenex Defendants appealed the Court's order to the Ninth Circuit. (Doc. No. 135.) The Ninth Circuit concluded, "the subclass definitions must be modified to limit the class to those who actually saw the Patient Satisfaction Ratings (PSRs), but that the district court's certification order was otherwise proper." (Doc. No. 179 at 4.) The Court thereafter granted Plaintiffs' motion for class certification. (Doc. No. 183.) As such, the settlement class meets the requirements of Rule 23.

#### 2. Fairness of the Proposed Settlement

In conducting the second part of the inquiry, Federal Rule of Civil Procedure 23(e) requires a district court to determine whether a proposed class action settlement is fundamentally fair, adequate, and reasonable. S*ee Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *see also Officers for Justice*, 688 F.2d at 630 (holding a settlement must stand or fall in its entirety because a district court cannot "delete, modify or substitute certain provisions"). A court must assess several factors to determine the overall fairness of a proposed class action settlement: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and

///

views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026.

Several factors weigh in favor of a finding of fairness. First, the parties have engaged in significant discovery and law-and-motion practice. The facts and the parties' respective legal positions have been extensively briefed in this Court, and before the Ninth Circuit. Class Counsel has also accumulated significant discovery related to Defendants' business, including data learned from litigation in parallel proceedings in Bankruptcy Court. *See In re Wireless Facilities, Inc. Secs. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

Second, that the settlement was reached with the assistance of an experienced mediator further suggests that the settlement is fair and reasonable. *See Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 620 (N.D. Cal. 2014) (noting that discovery and the use of a mediator "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement" (citation omitted)). On August 20, 2020, the parties—Plaintiffs, StemGenex Defendants, and Alexander—all attended a private mediation conducted by Judge Carl West (Ret.) of JAMS. (*See* Declaration of Harvey C. Berger, Doc. No. 206-2, ¶ 2.) All counsel, parties, and insurance carrier adjusters attended via Zoom. (*Id.*) After months of additional settlement discussions between Plaintiffs and the StemGenex Defendants, an agreement was reached to settle Plaintiffs and all Class Members' claims in the action against the remaining Defendants. The agreement has been reduced to writing and executed as of September 23, 2021. (Doc. No. 206-5 at 4–19.)

Third, courts generally afford great weight to the recommendation of counsel with respect to settlement because counsel "are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Secs. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, counsel found that the strengths and risks of the case support the compromises reached by both sides. Given Plaintiffs' counsels' experience with similar class action litigation, the Court finds that affording

deference to their decision to settle the case, as well as the terms of that settlement, is appropriate.

Taken together, these facts support finding the settlement to be fair, reasonable, and adequate.

### 3. Product of Serious, Informed, Non-Collusive Negotiations

In reviewing the next Rule 23(e) factor, the Court must examine the settlement for additional indicia of collusion that would undermine a prima facie arm's length negotiation. Signs of collusion may include (a) disproportionate distributions of settlement funds to counsel; (b) negotiation of attorney's fees separate from the class fund (a "clear sailing" provision); or (c) an arrangement for funds not awarded to revert to the defendants. *See Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). If multiple indicia of implicit collusion are present, the district court has a heightened obligation to assure that fees are not unreasonably high. *Id.*

Based on the intensive settlement process, the Court finds that the settlement was negotiated at arm's length and there is no evidence of collusion. Thus, this factor weighs in favor of approval.

### 4. No Obvious Deficiencies

The Court does not find any apparent deficiencies in the proposed settlement. The parties have made it clear that the Settlement Amount will only be used to pay: (1) the claim shares to the 1,063 Class Members; (2) a settlement claims administrator; (3) any amounts that may be awarded as service fees; and (4) Class Counsel for any award of attorneys' fees, costs, and expenses incurred in the action. (Doc. No. 206-1 at 11.) The service fees to be awarded to the named plaintiffs do not appear facially unreasonable. The remaining funds will be distributed equally among all Class Members, guaranteeing equal treatment. Additionally, the estimated $43,000.00 Settlement Administrator Fee is reasonable. Accordingly, this element also weighs in favor of approval.

///

///

### 5. Does Not Improperly Grant Preferential Treatment

While Plaintiffs' counsel have applied for "class representative incentive awards," the settlement agreement does not require a bonus to the named Plaintiffs. Rather, the settlement agreement mandates that the net settlement amount will be shared equally by all of the participating class members. Accordingly, the Court finds that the proposed settlement does not improperly grant preferential treatment and that this factor also supports approval.

### 6. Falls Within Range of Possible Approval

Given the fact that the settlement is the product of serious, informed, and non-collusive negotiations, has no obvious defects, and does not improperly grant preferential treatment, the Court finds that the proposed settlement falls within the range of possible approval.

### C. The Proposed Notice Form and Method Is Sufficient

Rules 23(c)(2)(B) and (e)(1) generally require that a Rule 23(b)(3) settlement class should receive notice in a reasonable manner, and that the notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Regular mail, electronic mail, and other appropriate means should all be considered. *See* Fed. R. Civ. P. 23(c)(2)(B).

Here, as in the Lallande partial settlement, Plaintiffs propose that notice to the Class be sent by both electronic mail and regular mail to ensure delivery. In addition, Plaintiffs suggest a website for notice created by the settlement administrator as an additional resource for the Class. To implement these notice procedures, Class Counsel has obtained a proposal from A.B. Data, Ltd., the settlement administration company approved by the Court in the Lallande settlement, for administration of the Notice of Settlement of Certified Class Action, which includes regular mail, email, and the creation and hosting of a website for notice. (Doc. No. 206-5 at 36–38.)

///

The proposed Notice of Settlement of Certified Class Action includes the opportunity for a Class Member to object, as provided by Rule 23(e)(5)(A). (*Id.* at 27–32.) Regarding Rule 23(e)(4)'s opportunity to seek exclusion, Ninth Circuit authority supports that no such option should be permitted when Class Members had an opportunity to seek exclusion previously. *See, e.g.*, *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018). Here, the Class Members were previously offered the opportunity in the original class notices to either remain in the case or seek exclusion. (*See* Doc. No. 206-1 at 26.) The Class Members were explicitly notified that if they remained in the case, their decision will be final and binding, and Class Members will not be able to change their mind later and request exclusion. (*Id.*) As the Class Members were previously given an opportunity to seek exclusion, a second opportunity is not needed.

Having reviewed the proposed Notice of Settlement of Certified Class Action, the Court concludes that the notice complies with Federal Rule of Civil Procedure 23. The Court also appoints A.B. Data, Ltd. as the third-party claims administrator. A.B. Data, Ltd. must (1) distribute the Notice of Settlement of Certified Class Action by regular mail and email to all Class Members for whom such addresses are known within 21 days of the entry of this preliminary approval order; and (2) create and host the website for notice.

### D.     Final Approval Hearing and Other Dates

A court must hold a hearing before finally determining whether a class settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). The Court thus **ORDERS** that the final fairness hearing be set for **February 24, 2022 at 2:00 PM**. Regarding all other applicable dates, the Court **ADOPTS** the implementation schedule requested by Plaintiffs. The Motion for Final Approval must set forth Plaintiff's Counsel's request for fees and costs, with detailed records of hours, rates, and costs documented.

### IV.    CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiffs' unopposed motion for preliminary approval of partial settlement in its entirety. The Court additionally (1) appoints A.B. Data, Ltd. as the settlement administrator and approves of Plaintiffs'

11

proposed Class notice, (2) orders the 30-day notice period to begin within 21 days of the entry of this preliminary approval order, in which any comments/objections can be filed by Class Members, and (3) sets a final approval briefing schedule to begin within 21 days of the end of the 30-day notice period, with a hearing on fairness and final approval of the settlement to be held on **February 24, 2022 at 2:00 PM**.

**IT IS SO ORDERED.**

Dated: October 26, 2021

Hon. Anthony J. Battaglia
United States District Judge