Janice F. Mulligan (SBN 99080)
*mulligan@janmulligan.com*
Elizabeth A. Banham (SBN 131734)
*banham@janmulligan.com*
**MULLIGAN LAW**
2442 Fourth Avenue, Suite 100
San Diego, California 92101
Telephone: (619) 238-8700
Facsimile: (619) 238-8701

Brian K. Findley (SBN 251172)
*brian@findleyinjurylaw.com*
**FINDLEY LAW**
1602 5th Avenue, Suite 625
San Diego, California 92101
Telephone/Facsimile: (619) 860-1712

Harvey C. Berger (SBN 102973)
*berger@bwrllp.com*
Timothy G. Williams (SBN 193810)
*williams@bwrllp.com*
Stephanie Reynolds (SBN 220090)
*reynolds@bwrllp.com*
**BERGER, WILLIAMS & REYNOLDS, LLP**
401 B Street, Suite 2000
San Diego, California 92101
Telephone: (619) 595-1366
Facsimile: (619) 236-9677

Attorneys for Plaintiffs & Appointed as Class Counsel

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SELENA MOORER, individually and on behalf of others similarly situated, | Case No.: 3:16-cv-02816-AJB-AHG<br>Class Action |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT BETWEEN PLAINTIFFS-CLASS MEMBERS AND DEFENDANTS STEMGENEX MEDICAL GROUP, INC., STEMGENEX, INC., STEM CELL RESEARCH CENTRE, INC., AND RITA ALEXANDER** |
| vs. | |
| STEMGENEX MEDICAL GROUP, INC., a California corporation; STEMGENEX, INC., a California corporation; STEM CELL RESEARCH CENTRE, INC., a California Corporation; ANDRE P. LALLANDE, D.O., an Individual; SCOTT SESSIONS, M.D., an Individual; RITA ALEXANDER, an Individual; and DOES 1-100, | |
| Defendants. | Hearing:<br>Judge: Hon. Anthony J. Battaglia<br>Courtroom 4A<br>Hearing Date: February 24, 2022<br>Hearing Time: 2:00 p.m. |

Plaintiffs SELENA MOORER, REBECCA KING, JENNIFER BREWER, and ALEXANDRA GARDNER, including Subclass A Representatives JENNIFER BREWER and ALEXANDRA GARDNER, and Subclass B Representatives ANDREA ANDREWS and JENNIFER DELANEY (collectively, "Plaintiffs"), individually and on behalf of the 1,063 certified class members in this action (altogether, the "Class" or "Class Members"), submit this Memorandum of Points and Authorities in support of their Motion for an Order granting final approval to a settlement between the Class Members and Defendants STEMGENEX MEDICAL GROUP, INC., STEMGENEX, INC., STEM CELL RESEARCH CENTRE, INC., and RITA ALEXANDER ("Defendants") pursuant to Fed. R. Civ. P. 23(e).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION AND SUMMARY OF MOTION ……………….……….1

II.   FINAL APPROVAL SHOULD BE GRANTED………..................……..3

    A.    The Class Notice Process was Completed in a Timely Manner................3

    B.    The Notice Process was Successful……………………………………..4

    C.    The Propriety of Certification of the Class for Settlement has Been Confirmed Following Finality of the Appeal……...………………5

    D.    The Settlement is Legally and Factually Appropriate…………………...5

III.  ALLOCATION AND DISTRIBUTION OF SETTLEMENT FUNDS………………………………………………………………6

    A.    Service Awards to the Plaintiffs and Class Representatives ……………6

    B.    Costs of Settlement Administration……………………………………10

    C.    Attorney's Fees and Costs Awards to Class Counsel…………………10

        1.    Attorneys' Fees………………………………………………..10

        2.    Costs…………………………………………………………...16

    D.    Distribution of Funds to the Class……………………………………16

IV.   CONCLUSION AND PROPOSED SCHEDULING ORDER………………..17

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases:</u>

*Aguayo v. Oldenkamp Trucking*
   2006 WL 3020943 (E.D. Cal., Oct. 17, 2006)……………………….…8-9

*Apple Computer, Inc. v. Superior Court*
   126 Cal.App.4th 1253 (2005)………………………………………………11

*Blum v. Stenson*
   465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)………………...14

*Bogosian v. Gulf Oil Corp.*
   621 F.Supp. 27 (E.D. Pa. 1985)……………………………………………8

*Bryan v. Pittsburgh Plate Glass Co. (PPG Industries, Inc.)*
   59 F.R.D. 616 (W.D. Pa. 1973)……………………………………………8

*Clesceri v. Beach City Investigations & Protective Services, Inc.*,
   2011 WL 320998 (C.D. Cal., Jan. 27, 2011)………………………………8

*Cox v. Clarus Mktg. Grp., LLC*
   291 F.R.D. 473 (S.D. Cal. 2013)………………………………………...7-8

*Dennis v. Kellogg Co.*
   2010 WL 4285011 (S.D. Cal., Oct. 14, 2010)……………………………8

*Faigman v. AT & T Mobility LLC*
   2011 WL 672648 (N.D. Cal., Feb. 16, 2011)……………………………...8

*Fox v. Vice*
   563 U.S. 826, 838 (2011)…………………………………………………...15

*Fulford v. Logitech, Inc.*
   2010 WL 807448 (N.D. Cal. 2010)………………………………………8

*Hartless v. Clorox Co.*
   273 F.R.D. 630 (S.D. Cal. 2011)…………………………………………8

*Hensley v. Eckerhart*
   461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)……………………...14-15

*In re Bluetooth Headset Products Liability Litigation*
   654 F.3d 935 (9th Cir. 2011)……………………………………………...11

*In re Mego Fin. Corp. Sec. Litig.*
   213 F.3d 454 (9th Cir. 2000) ……………………………………………...8

/ / /

ii

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

<u>Cases (Continued)</u>:

*In re Nexus 6P Products Liability Litigation*
    2019 WL 6622842 (N.D. Cal., Nov. 12, 2019)…………………………………..15

*In re Online DVD-Rental Antitrust Litig.*
    779 F.3d 934 (9th Cir. 2015)…………………………………………………..12

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*
    295 F.R.D. 438 (C.D. Cal. 2014)……………………………………………..8

*Isquierdo v. W.G. Hall, LLC*
    2017 WL 4390250 (N.D. Cal., Oct. 3, 2017)…………………………………15

*Kerr v. Screen Extras Guild, Inc.*
    526 F.2d 67 (9th Cir. 1975)…………………………………………………14

*Khoja v. Orexigen Therapeutics, Inc.*
    2021 WL 5632673 (S.D. Cal., Nov. 30, 2021)……………………………12-13

*Morales v. City of San Rafael*
    96 F.3d 359 (9th Cir. 1996)…………………………………………………14

*Pataky v. Brigantine, Inc.*
    2019 WL 183583 (S.D. Cal., Jan. 14, 2019)…………………………………8

*Rodriguez v. West Publishing Corp.*
    563 F.3d 948 (9th Cir. 2009)………………………………….....................7

*Rosado v. Ebay Inc.*
    2016 WL 3401987 (N.D. Cal., June 21, 2016)……………………………...15

*Ruiz v. Xpo Last Mile, Inc.*
    2017 WL 6513962 (S.D. Cal. 2017)……………………………………12, 16

*Schneider v. Chipotle Mexican Grill, Inc.*
    336 F.R.D. 588 (N.D. Cal. 2020)………………………………...11, 15, 16

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003)………………………………………………7

*Van Vranken v. Atlantic Richfield Co.*
    901 F.Supp. 294 (N.D. Cal. 1995)…………………………………………8

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir. 2002)…………………………………...11, 12, 14

PLAINTIFFS' POINTS AND AUTHORITIES ISO
MOTION FOR FINAL APPROVAL
                    3:16-cv-02816-AJB-AHG

# <u>TABLE OF AUTHORITIES (CONTINUED)</u>

<u>Cases (Continued)</u>:

*Walters v. Target Corp.*,
   No. 3:16-CV-1678-L-MDD, 2020 WL 6277436 (S.D. Cal., Oct. 26, 2020)…...7

<u>Other Authority</u>:

28 U.S.C. § 1715 …………………………………………………………………3, 5

California Code of Civil Procedure § 1021.5……………………………...............10

California Civil Code § 1780(e)…………………………………………………...10

Fed. R. Civ. P. 23 …………………………………………………………*Passim*

iv

## I.   <u>INTRODUCTION AND SUMMARY OF MOTION</u>

As Plaintiffs outlined in their Motion for Preliminary Approval ("Preliminary Approval Motion") and supporting papers and pleadings filed September 24, 2021, Doc. Nos. 206-206.6, this case was filed on August 22, 2016 in State Court and subsequently removed to this Court. After extensive discovery, on June 25, 2019, this Court granted Plaintiffs' Motion for Class Certification of all claims in Plaintiffs' operative Fourth Amended Complaint ("FAC") against Defendants STEMGENEX MEDICAL GROUP, INC., STEMGENEX, INC., STEM CELL RESEARCH CENTRE, INC., ANDRE P. LALLANDE, D.O., and RITA ALEXANDER (collectively, the "Defendants"). Doc. No. 134. This Court also supervised notice to the Class and, as of August 2020, the Class was known to be comprised of 1,063 individuals. *See* Doc Nos. 166 & 167.

On December 24, 2019, the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") issued an Order granting a request for permission to appeal this Court's class certification order by four of the Defendants, STEMGENEX, INC., STEMGENEX MEDICAL GROUP, INC., STEM CELL RESEARCH CENTRE, INC., and RITA ALEXANDER (collectively, "the StemGenex Defendants") assigning the matter Case No. 19-56500 (the "Appeal"). Ninth Circuit Doc. No. 10.

On August 20, 2020, during the pendency of the Appeal, the parties—Plaintiffs and all five Defendants—attended a private mediation conducted by Judge Carl West (Ret.) of JAMS. *See* Declaration of Harvey C. Berger Motion supporting the Preliminary Approval Motion, Doc. 206.2, ¶ 2. All counsel, parties, and insurance carrier adjusters attended "virtually" (via Zoom). *Id*. After weeks of additional settlement discussions between Plaintiffs and ANDRE P. LALLANDE, D.O. ("Lallande"), they reached an agreement to settle the Plaintiffs and all Class Members' claims in the action against Lallande, individually (the "Lallande settlement"), which agreement was executed as of October 10, 2020 and submitted to the Court for preliminary approval of a partial settlement of the action as between the

1

Class and Lallande. Doc. No. 171-4. This Court granted preliminary approval and final approval to that Lallande settlement on January 8, 2021, and May 4, 2021, respectively. Doc. Nos. 174 & 198.

On February 3, 2021, in between the dates of preliminary and final approval of the Lallande settlement, the Ninth Circuit issued a Mandate resolving the Appeal. Doc. No. 179. The Ninth Circuit Memorandum Opinion affirmed this Court's 2019 class certification order in every respect regarding commonality, typicality, predominance, and the certification of a nationwide class; however, the Ninth Circuit observed that the District Court intended to certify a class of those individuals who "saw" the allegedly misleading advertisement and ordered the class definition modified accordingly. Doc. No. 179, at p. 4, item #5. As a result, on February 12, 2021, this Court entered an Amended Order granting class certification adding the phrase "and seeing the Patient Satisfaction Ratings" to its 2019 Order. Doc. No. 183.

On July 9, 2021, following the February 12, 2021 Amended Order granting class certification, Plaintiffs and the StemGenex Defendants filed a joint statement regarding notice to the Class. Doc. No. 203. In the months leading up to that joint filing, the parties also appeared at two Mandatory Settlement Conferences with Magistrate Judge Goddard, considered two separate "Mediator's Proposals," and had extensive dialogue with Judge Goddard in her capacity as a settlement conference officer. *See, e.g.,* Doc. Nos. 192-194, & 196; *see also* Declaration of Harvey C. Berger Motion supporting the Preliminary Approval Motion, Doc. 206.2, ¶ 3. The parties continued a dialogue toward settlement which resulted in an agreement in principle to resolve the case between the Class and the StemGenex Defendants. Doc. No. 204. Plaintiffs and the StemGenex Defendants reduced their agreement to writing and executed it as of September 23, 2021, and submitted it to the Court for preliminary approval of settlement of the remainder of the action. Preliminary Approval Motion Exhibit 1, Doc. No. 206-5, pp. 5-25.

/ / /

2

On October 26, 2021, this Court granted Plaintiffs' unopposed Preliminary Approval Motion and established a process for notice to the Class. Doc. No. 210 (the "Preliminary Approval Order"). As detailed below, notice was completed as ordered: the 30-day notice period to the Class began November 17, 2021 and ended December 17, 2021. No Class Members have objected to the settlement or otherwise filed any comments against it, and none have indicated intent to appear at the final approval hearing. This motion is timely filed as ordered by the Court in the Preliminary Approval Order, within twenty-one (21) days following December 17, 2021, i.e., by January 7, 2022.

Finally, the StemGenex Defendants also fulfilled their obligations to provide notice of the settlement to appropriate government agencies. As demonstrated by Defendants' Notice of Non-Opposition filed October 12, 2021, Doc. 208, on October 4, 2021 Defendants timely fulfilled the notice requirements of 28 U.S.C. § 1715. More than ninety days have elapsed since October 4, 2021, as necessitated by Section 1715(d), for any governmental agency to intervene or object to the settlement. No such objections or intervention requests have been made.

Accordingly, all notices and obligations associated with this Court's Preliminary Approval Order were accomplished in a timely and complete manner, and without any opposition. For all of the reasons supporting Plaintiffs' Preliminary Approval Motion, and because of the success of the settlement notice process, final approval is now appropriate.

## II.    FINAL APPROVAL SHOULD BE GRANTED

### A. The Class Notice Process was Completed in a Timely Manner

This Court's November 17, 2021 Preliminary Approval Order granting Plaintiffs' Preliminary Approval Motion stated:

> Having reviewed the proposed Notice of Settlement of Certified
> Class Action, the Court concludes that the notice complies with Federal
> Rule of Civil Procedure 23. The Court also appoints A.B. Data, Ltd. as

3

the third-party claims administrator. A.B. Data, Ltd. must (1) distribute the Notice of Settlement of Certified Class Action by regular mail and email to all Class Members for whom such addresses are known within 21 days of the entry of this preliminary approval order; and (2) create and host the website for notice.

. . .

The Court additionally (1) appoints A.B. Data, Ltd. as the settlement administrator and approves of Plaintiffs' proposed Class notice, (2) orders the 30-day notice period to begin within 21 days of the entry of this preliminary approval order, in which any comments/objections can be filed by Class Members . . . .

Doc. No. 210, 11:12-17 & 11:27-12:3.

As detailed in the Declaration of Mark Cowen supporting Plaintiff's Motion for Final Approval ("Cowan Decl."), AB Data, Ltd. successfully performed all duties related to the notice process. *Id.*, ¶ 2-3. AB Data, Ltd. received updates from Class Counsel to the Class List in its database, further updated mailing addresses, and beginning November 17, 2021, timely mailed the court-approved "Notice of Settlement of <u>Entire</u> Certified Class Action" ("Notice") to all 1,063 Class Members, including re-mailing as updated addresses were obtained. *Id.*, ¶¶ 4-6, and Exhibit A thereto. AB Data, Ltd. also emailed the Notice to all known Class Member email addresses. *Id.*, ¶¶ 7-8. AB Data, Ltd. also established a website and call center for the case which received a combined 108 hits/calls. *Id.*, ¶¶ 9-10.

**B. <u>The Notice Process was Successful</u>**

The 30-day period in which Class Members could object to or comment on the settlement, or file a notice of intent to appear at the final approval hearing expired on December 17, 2021. At no point during that period, or since, has any Class Member submitted to AB Data, Ltd. an objection to or comment against the propriety of the

4

settlement, nor filed a notice of intent to appear at the final approval hearing. Cowan Decl., ¶ 11.

Class Counsel has been in regular contact with AB Data, Ltd. throughout the Notice process. *See* Declaration of Timothy G. Williams supporting Plaintiff's Motion for Final Approval ("Williams Decl.") ¶ 2, and Declaration of Elizabeth A. Banham supporting Plaintiff's Motion for Final Approval ("Banham Decl.") ¶ 2. Class Counsel received numerous inquiries about the litigation and the settlement before and during the 30-day notice period, aside from other regular contact by Class Members. *Id*. Class Counsel did not receive any written objections or comments against the settlement, nor any indications that anyone intends to appear at the final approval hearing. *Id*.

Additionally, more than ninety days have elapsed for any governmental agency to intervene or object to the settlement, as necessitated by Section 1715(d). No such objections or intervention requests have been made.

## C. <u>The Propriety of Certification of the Class for Settlement has Been Confirmed Following Finality of the Appeal</u>

This Court first certified the Class in June 2019, and reiterated the propriety of the Class in its February 12, 2021 Amended Order granting class certification. The Ninth Circuit's Mandate also confirmed that all elements of a Rule 23(b)(3) class exist in this action, as this Court further recognized in its October 26, 2021 Preliminary Approval Order. Doc. No. 210, 7:1-13.

## D. <u>The Settlement is Legally and Factually Appropriate</u>

Plaintiffs' Preliminary Approval Motion and this Court's Preliminary Approval Order recite all of the reasons why the Settlement Agreement meets the standards of a fundamentally fair, adequate, and reasonable settlement under Fed. R. Civ. P. 23(e): the Class Representatives and Class Counsel have adequately represented the Class; the settlement with the StemGenex Defendants was negotiated at arm's length between experienced counsel and an insurer with the experience of a retired judge who has handled scores of complex cases, as well as Judge Goddard; and the relief

5

provided for the Class is adequate, taking into account the Lallande settlement, as well as the costs, risks, and delays of trial and further appeal. Fed. R. Civ. P. 23(e)(2)(A)-(C)(i). No objections have been lodged to the contrary.

There are no other "agreements" regarding this settlement which would be required to be identified under Rule 23(e)(3). Williams Decl., ¶ 3. The settlement otherwise treats all Class Members equitably relative to each other, as detailed in Plaintiffs' Preliminary Approval Motion and as discussed in Section III.D., *infra*, regarding distributions. Fed. R. Civ. P. 23(e)(2)(D).

## III.   ALLOCATION AND DISTRIBUTION OF SETTLEMENT FUNDS

The factors within Rule 23(e)(2)(C)(ii) related to the effectiveness of the proposed method of distributing relief to the class, and Rule 23(e)(2)(C)(iii) regarding the proposed award of attorney's fees, among other of Plaintiffs' and Class Counsel's proposals, are addressed below.

### A. Service Awards to the Plaintiffs and Class Representatives

Both settlement agreements (with Lallande and the StemGenex Defendants) consider that reasonable service fees will be requested on behalf of the Plaintiffs/Class Representatives, in addition to their respective claim shares, for their individual and collective efforts and risks in the representation of the entire Class over the past five years. In their Preliminary Approval Motion, Plaintiffs and Class Counsel outlined the reasons supporting the requested awards, including the variance among the individuals. Doc. 206-1, 12:8-15:8; Doc. 206.4, ¶ 14. The proposed individual service awards to the named Plaintiffs and Class Representatives total $15,500 from the $3,650,000.00 total settlement (less than one-half of one percent) as follows:

- Selena Moorer: $2,000
- Rebecca King: $3,000
- Alexandra Gardner: $3,000
- Jennifer Brewer: $3,000
- Stephen Ginsberg: $1,000

PLAINTIFFS' POINTS AND AUTHORITIES ISO
MOTION FOR FINAL APPROVAL

3:16-cv-02816-AJB-AHG

- Jennifer Delaney: $1,500
- Andrea Andrews: $2,000

Named plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments. *Staton v. Boeing Co*., 327 F.3d 938, 977 (9th Cir. 2003).

> Incentive awards are fairly typical in class action cases. See 4 William B. Rubenstein et al., Newberg on Class Actions § 11:38 (4th ed. 2008); Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 U.C.L.A. L.Rev. 1303 (2006) (finding twenty-eight percent of settled class actions between 1993 and 2002 included an incentive award to class representatives). Such awards are discretionary, *see In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 463 (9th Cir. 2000), and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general. Awards are generally sought after a settlement or verdict has been achieved.

*Rodriguez v. West Publishing Corp*., 563 F.3d 948, 958-59 (9th Cir. 2009). *See also Walters v. Target Corp*., No. 3:16-CV-1678-L-MDD, 2020 WL 6277436, at *8 (S.D. Cal., Oct. 26, 2020).

District courts typically consider several factors in determining whether to award incentive payments, including: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *See Cox v. Clarus Mktg. Grp., LLC*, 291 F.R.D. 473, 483 (S.D. Cal. 2013) (approving

7

PLAINTIFFS' POINTS AND AUTHORITIES ISO
MOTION FOR FINAL APPROVAL

3:16-cv-02816-AJB-AHG

$5,000 incentive awards for plaintiffs given their efforts advancing the interests of the absent class members by retaining counsel with particular experience in consumer class actions and by assisting counsel with case investigations), citing *Van Vranken v. Atlantic Richfield Co*., 901 F.Supp. 294, 299 (N.D. Cal. 1995); *see also In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig*., 295 F.R.D. 438, 470 (C.D. Cal. 2014) (approving $5,000 service awards). Awards in the range of $2,500 - $40,000 have been well-documented in other cases. *See, e.g., Pataky v. Brigantine, Inc.*, 2019 WL 183583, at *7 (S.D. Cal., Jan. 14, 2019) ($2,500 in service awards to the each of the three named plaintiffs from a $550,000 settlement fund); *Fulford v. Logitech, Inc*., 2010 WL 807448, at *3, fn. 1 (N.D. Cal. 2010) (collecting cases awarding service payments ranging from $5,000 to $40,000); *Bogosian v. Gulf Oil Corp*., 621 F.Supp. 27, 32 (E.D. Pa. 1985) (award of $20,000 each to two class representatives in antitrust case, $40,000 total award); *Bryan v. Pittsburgh Plate Glass Co. (PPG Industries, Inc.)*, 59 F.R.D. 616, 617 (W.D. Pa. 1973), aff'd 494 F.2d 799 (3rd Cir.), cert. denied (1974) 419 U.S. 900 (payments of $17,500 to class members who aided in advancing Title VII case); *In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 463 (9th Cir. 2000) (approving a $5,000 incentive award for each class representative); *Faigman v. AT & T Mobility LLC*, 2011 WL 672648, *5 (N.D. Cal., Feb. 16, 2011) (approving an incentive payment of $3,333.33 for each n three class representatives, and noting that "[i]n [the Northern] [D]istrict, incentive payments of $5,000 are presumptively reasonable"); *Clesceri v. Beach City Investigations & Protective Services, Inc*., 2011 WL 320998, *2 (C.D. Cal., Jan. 27, 2011) (preliminarily approving an award of $3,000 to two named plaintiffs); *Hartless v. Clorox Co*., 273 F.R.D. 630, 646–47 (S.D. Cal. 2011) (approving an award of $4,000 for one named plaintiff and $2,000 for another); *Dennis v. Kellogg Co*., 2010 WL 4285011, *3 (S.D. Cal., Oct. 14, 2010) (preliminarily approving an incentive award of $5,000); *Aguayo v. Oldenkamp Trucking*, 2006 WL 3020943, *10 (E.D. Cal., Oct. 17, 2006) (preliminarily approving

8

a settlement agreement, which provided that class counsel would apply for an incentive award of no more than $5,000 for the named plaintiff).

As detailed with Plaintiffs' Preliminary Approval Motion, in this case, each of the six individuals identified contributed to the prosecution of this action and the settlement in various ways and to various degrees. Initially, they all sought the advice of counsel in this matter and were advised by Class Counsel of the time, costs, and risks associated with being a plaintiff in a lawsuit, and specifically, with being a plaintiff and class representative in a class action lawsuit; this included the risks if the case were lost, including a potential adverse judgment and personal liability for all of the defendants' costs incurred in the defense of large-scale class action litigation. They were also advised by Class Counsel that the lawsuit could last several years, and that they could resolve their own claims on an individual basis faster than by filing a class action on behalf of scores of unknown other individuals. In spite of the risks and delays associated with this lawsuit, each of them agreed to proceed on behalf of the potential class, and assisted counsel in preparing the Complaints, with investigation and discovery processes, and in the settlement phases. Each client met with and communicated with Class Counsel regularly over the past five years and have demonstrated their devotion to pursuing the Class claims on behalf of other individuals unknown to them. Such work and commitment warrant service fee awards.

No objections were lodged to the proposed service awards. They are reasonable under the above criteria to compensate the Plaintiffs and Class Representatives for their respective service to the Class overall, and with regard to their work related to and participation in achieving the settlement. The proposed enhancements are well-within the incentive awards given to named plaintiffs in suits involving similar settlement funds. In light of the total settlement and allocation of settlement proceeds, Plaintiffs and Class Counsel request the Court approve of these individual service payments.

/ / /

9

**B. <u>Costs of Settlement Administration</u>**

Both settlement agreements (with Lallande and the StemGenex Defendants) consider that reasonable settlement administration fees will be paid from the settlement fund. In their Preliminary Approval Motion, Plaintiffs and Class Counsel outlined an estimated $43,000.00 in costs would be paid to the court-appointed Settlement Administrator, AB Data, Ltd., from the $3,650,000.00.

In the Declaration of Mark Cowen in Support of Motion for Final Approval of Settlement supporting the Lallande settlement, Doc. 191-4, and in the newly filed Cowan Decl. in support of this final approval motion, AB Data, Ltd. itemizes all of the work it has undertaken in support of the two settlement motions, and in compliance with this Court's orders. Such costs are supported and well-documented. The costs incurred to date, and which are estimated through distribution and case closure, total up to $45,000, and will not exceed that figure. Cowan Decl., ¶¶ 12-13. This is consistent with the previous estimates provided in the range of $43,000. *See* Doc. 206.1, 18:19-19:12. No objections were lodged to the proposed administrative costs payment. It is reasonable and should be approved for payment up to $45,000.

**C. <u>Attorney's Fees and Costs Awards to Class Counsel</u>**

California law provides for payment of attorneys' fees, costs, and expenses in the event of recovery resulting from the type of violations alleged in this case. Cal. Civ. Code § 1780(e); Cal. Code of Civ. Proc. § 1021.5. Class Counsel requests an attorney's fees award of 30% of the common fund of $3,650,000 from this settlement and the Lallande settlement, equal to $1,095,000. In addition, Class Counsel requests that the costs they have invested in the case having been advanced to the Class in prosecution of the matter be reimbursed from the settlement proceeds totaling $460,622.01.

**1. <u>Attorneys' Fees</u>**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ.

10

P. 23(h). In a case where state law claims are pursued in federal court, as in this case, state law also governs the calculation of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Court may also still look to federal authority for guidance in awarding attorneys' fees. *Schneider v. Chipotle Mexican Grill, Inc*., 336 F.R.D. 588, 600 (N.D. Cal. 2020), citing *Apple Computer, Inc. v. Superior Court*, 126 Cal.App.4th 1253, 1264, n. 4 (2005).

In common fund cases, the Court has discretion to employ either the percentage of the fund method or the lodestar method to calculate a proper fee award. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir. 2011). Under the percentage of the fund method, the Court awards some specific percentage of the fund as fees. The Ninth Circuit benchmark rate is twenty-five percent (25%), *id*. at 942, which in this case would be $912,500.00. Meeting the benchmark rate, however, does not end the selection analysis. "Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino, supra,* 290 F.3d at 1048. Relevant factors when determining the percentage ultimately awarded may include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See id*. at 1048-50.

The Ninth Circuit has also commented,

> The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case. As we said in WPPSS, in passing on post-settlement fee applications, "courts cannot rationally apply any particular percentage—whether 13.6 percent, 25 percent or any other number—in the abstract, without reference to all

11

the circumstances of the case." *Id*. at 1298; *see also Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 775 (11th Cir.1991) (noting with approval that district courts are increasingly "'supporting their percentage awards with particular findings showing factors considered.'" (quoting Herbert Newberg, Attorney Fee Awards § 2.07 (1st ed.1986))).

*Vizcaino, supra,* 290 F.3d at 1048 (9th Cir. 2002). "While the benchmark is not per se valid, it is a helpful 'starting point.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 955 (9th Cir. 2015) quoting *Vizcaino*, 290 F.3d at 1048.

In *Vizcaino*, for example, the court approved of the district court's upward adjustment from the 25% benchmark because of the exceptional results obtained following litigation of a risky case taken on appeal, as well as the benefits generated beyond the monetary results. *Id*., at 1048-1049. Other factors commonly considered in determining a reasonable percentage include the reaction of the class, the effort, experience, and skill of counsel, the complexity of issues, risks of nonpayment assumed by class counsel, and comparison with counsel's lodestar. *See Ruiz v. Xpo Last Mile, Inc*., 2017 WL 6513962, at *7 (S.D. Cal. 2017) (awarding a 35% contingent fee from the common fund, and $246,889.98 in costs reimbursement).

Additionally, as several courts in the Ninth Circuit—including this Court—have observed, attorneys' fee awards from settlements involving a common fund, as this Settlement involves, frequently exceed the 25 percent benchmark. *Ford v. ECE Ent. Inc*., Case No.: 14cv677 JLS (JLB), 2015 WL 11439033, at *5 (S.D. Cal. Dec. 14, 2015) (citing *In re Omnivision Techs*., 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *Pokorny v. Quixtar, Inc*., CASE NO. C 07–0201 SC, 2013 WL 3790896, at *4 (N.D. Cal. July 18, 2013)); *Jamil v. Workforce Res*., Case No.: 18-CV-27 JLS (NLS), 2020 WL 6544660, at *4 (S.D. Cal. Nov. 5, 2020)

12

(approving an attorneys' fees award of one-third of the common fund); *Howell v. Advantage RN, LLC*, Case No.: 17-CV-883 JLS (BLM), 2020 WL 5847565, at *5 (S.D. Cal. Oct. 1, 2020) (approving an attorneys' fees award of one-third of the common fund); *Ruiz v. XPO Last Mile, Inc.*, Case No.: 5-CV-2125 JLS (KSC), 2017 WL 6513962, at *8 (S.D. Cal. Dec. 20, 2017) (approving an attorneys' fees award of 35 percent of the common fund). Indeed, "[d]istrict courts in this circuit have routinely awarded fees of one-third of the common fund or higher after considering the particular facts and circumstances of each case," and the Ninth Circuit has upheld such awards. *See Beaver v. Tarsadia Hotels*, Case No. 11-cv-01842-GPC-KSC, 2017 WL 4310707, at *10 (S.D. Cal. Sept. 28, 2017) (collecting cases).

*Khoja v. Orexigen Therapeutics, Inc.,* 2021 WL 5632673, at *9 (S.D. Cal., Nov. 30, 2021).

Here, among other factors detailed in several of the Court's previous orders and motions by the parties, including the Plaintiffs' Final Approval Motion, Class Counsel have exhaustively litigated this case for over five years. Class Counsel defended against numerous challenges to the Complaint to survive with an operative Fourth Amended Complaint; obtained an order granting class certification following extensive written discovery and dozens of depositions taken across the country; retained and paid expert witnesses to ensure class certification; pursued one defendant through Bankruptcy Court and obtained relief to pursue insurance proceeds—the very proceeds now being used to pay the $1,150,000.00; and successfully defended an appeal of the class certification order, among other work. *See* Williams Decl., ¶ 8; Banham Decl., ¶ 7. Class Counsel also negotiated the $3,650,000.00 in settlement proceeds, a substantial result for 1,063 individuals in light of the claims being pursued to trial. *Id*. The risk of nonpayment assumed by Class Counsel was not insignificant, especially in light of the disputed nature of the claims, the contingency-based nature

13

of their agreement with Plaintiffs, and the bankruptcy of a defendant. There have been no objections by the Class Members to the proposed settlement, indicating a favorable reaction of the award to Class Counsel. The effort, experience, and skill of Class Counsel all contributed to the pending settlement. Based on the relevant factors, the requested fee award of 30% of the common fund is well-justified.

When using the percentage-of-the-fund approach, district courts may also apply the lodestar method as a cross-check of the reasonableness of the percentage award. *See Vizcaino, supra,* 290 F.3d at 1050 ("[Although] the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award.") Here, the lodestar cross-check further confirms the soundness of the requested award.

"The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996); *see also Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate.). After computing the "lodestar," the district court may then adjust the figure upward or downward taking into consideration twelve "reasonableness" factors: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Morales*, 96 F.3d at 363 n. 8, quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). The hours expended and the rate should be supported by adequate documentation and other

14

evidence; thus, attorneys working on cases where a lodestar may be employed should keep records and time sheets documenting their work and time spent. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). However, trial courts may use "rough" calculations and "take into account their overall sense of a suit [to] use estimates in calculating and allocating an attorney's time," so long as they apply the correct standard. *Fox. v. Vice*, 563 U.S. 826, 838 (2011).

In this case, Class Counsel spent over 5,000 billable hours in the matter at a lodestar of approximately $2,500,000, which is more than twice the fee award sought. *See* Williams Decl., ¶¶ 6, 7, 9; Banham Decl., ¶¶ 6, 8, 9. Class Counsel's lodestar calculation employs hourly rates of $450-$500 for partners, $275 for associates, $150 for as senior paralegal and $125 for law clerks who worked on the instant litigation. *Id*. These rates are within the prevailing standards in the community and have not been challenged; they are reasonable, if not under-valued.

Moreover, where class counsel is not seeking to recover the full lodestar amount, a de facto "negative multiplier" also suggests the fee request is reasonable. *Schneider*, *supra*, 336 F.R.D. at 601, citing *In re Nexus 6P Products Liability Litigation*, 2019 WL 6622842, at *13 (N.D. Cal., Nov. 12, 2019) (30% award was reasonable when the requested amount represented a negative lodestar multiplier); *Rosado v. Ebay Inc*., 2016 WL 3401987, at *8 (N.D. Cal., June 21, 2016) (conducting a lodestar cross-check and finding that a negative multiplier "strongly suggests the reasonableness of the negotiated fee"); *Isquierdo v. W.G. Hall, LLC*, 2017 WL 4390250, at *8 (N.D. Cal., Oct. 3, 2017) (fact that the requested amount constituted a reduction in the lodestar amount weighed in favor of its reasonableness).

No objections were lodged to the proposed fee award. It is entirely reasonable under the above criteria to compensate Class Counsel. In light of the lodestar cross-check, and the other factors considered as mentioned above, the $1,095,000 attorneys' fees sought by Class Counsel should be approved.

/ / /

## 2. Costs

In addition, Class Counsel requests repayment of a combined total of $460,622.01 in itemized "out-of-pocket" costs which they have collectively expended in the case. *See* Williams Decl., ¶¶ 4-5; Banham Decl., ¶¶ 3-5; Exhibits 1 & 2; *see also* Doc. 206-3, ¶ 8, Doc. 206-4, ¶ 15, and Doc. 206-5, Exhibits 5 & 6 (pp. 40-61). This is consistent with the estimate submitted at preliminary approval of approximately $440,000.00. Doc. 206-1, 18:11-18. It is also typical for a case of this magnitude and work. *See, e.g., Schneider*, *supra*, 336 F.R.D. at 602 (approving $636,556.28 in expenses similarly incurred in a class action; *Ruiz, SUPAR,* 2017 WL 6513962, at *7 ($246,889.98 in costs reimbursement).

No objections were lodged to the proposed costs reimbursement request. Accordingly, in light of the lodestar cross-check, and the other factors considered as mentioned above, the $460,622.01 in costs reimbursement sought by Class Counsel should be approved.

## D. Distribution of Funds to the Class

From a total settlement of $3,650,000, less requested service fees totaling $15,500, less requested attorneys' fees of $1,095,000, less Class Counsel's costs reimbursement of $460,622.01, and less settlement administration costs of no more than $45,000, a total of approximately $2,033,878 (including any accrued interest in the AB Data, Ltd. settlement fund) will remain for distribution to the Class There are 1,063 Class Members, each of whom paid $14,900 (or potentially slightly more, depending on ancillary expenses). Class Counsel proposed the balance of the settlement proceeds be equally divided among all Class Members. There were no objections to this formula or rationale. It will result in estimated claim shares of $1,913 to each person, nearly identical to the $1,935 estimated at preliminary approval and included in the Notices to Class Members. Doc. No. 206-1, 19:13-22; Cowan Decl., Exhibit A.

/ / /

## IV.   CONCLUSION AND PROPOSED SCHEDULING ORDER

The requisites of Rule 23(e) have been satisfied. The settlement with the Defendants, combined with the Lallande settlement, is fair, reasonable, and adequate in totality. The Class Representatives and Class Counsel have adequately represented the Class; the settlements were negotiated at arm's length between experienced counsel and insurers with the experience of a retired judge and Judge Goddard; and the aggregate relief provided to the Class is adequate, taking into account the costs, risks, and delays of further litigation, trial and appeals. Fed. R. Civ. P. 23(e)(2)(A)-(C)(i). The additional factors of Rule 23(e)(2)(C)(ii) & (iii)—the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, and the terms of any proposed award of attorney's fees, including timing of payment—are also satisfied as shown by the record and applicable case law. The settlement otherwise treats all Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D).

There was no opposition to Plaintiffs' Preliminary Approval Motion. The Notice process was successful. No Class Member or government agency has objected to or commented against the settlement, or stated an intent to appear at the final approval hearing. All aspects of Fed. R. Civ. P. 23(e) have been fulfilled. For all of these reasons, the Court should grant Plaintiffs' final approval motion and enter an Order of final approval of the settlement.

The Court should also order the parties to comply with all aspects of the Settlement Agreement (Doc. No. 206-5, pp.5-25), including but not limited to:

- Defendants, through their insurer, Admiral Insurance Company, to pay the Settlement Amount of ONE MILLION ONE HUNDRED FIFTY THOUSAND DOLLARS ($1,150,000.00) as a no reversion/no refund settlement payment to settle and resolve all claims in the action by or on behalf of the 1,063 Class Members against each of the Defendants and SCOTT SESSIONS, M.D. Payment by Admiral Insurance Company to be made by wire transfer in one

17

lump sum to a qualified settlement fund established by AB Data, Ltd. within ten (10) business days of the entry of a final approval order (as dictated by Sections B.7 and D.1. of the Settlement Agreement).

- As soon as practicable after receipt of the $1,150,000.00, and within thirty (30) days, AB Data., Ltd. should distribute all of the $3,650,000.00, plus any accrued interest, by paying Class Counsel's attorney's fees and costs as stated above; distributing checks for the service awards as stated above; withdrawing its administrative costs as stated above; and distributing the balance of the money equally among the 1,063 Class Members as indicated in Cowan Decl., ¶ 6, including as provided by Section C.7. of both settlement agreements:

> In the event that any Class Member does not cash issued settlement proceeds, such funds will be submitted for escheatment by the court approved settlement administrator to the State of California Unclaimed Property Fund (or similar appropriate state agency) in the names of each Class Member whose check is un-cashed. It is specifically understood and agreed that any such monies will not revert to [the Defendants] nor be paid to any *cy pres* recipients.

In exchange for the Settlement Amount, the Court should enter a dismissal with prejudice of the action by the 1,063 Class Members against STEMGENEX MEDICAL GROUP, INC., STEMGENEX, INC., STEM CELL RESEARCH CENTRE, INC., RITA ALEXANDER, and SCOTT SESSIONS, M.D. as to the operative FAC and all Counts and all forms of relief sought by the 1,063 Class Members through the FAC against the Defendants individually and collectively, that arose within the Subclass periods certified by the Court, all as provided by the Settlement Agreement. The Court should retain jurisdiction over the action and the Settlement Agreement in order to enforce its terms and conditions, and to resolve any

PLAINTIFFS' POINTS AND AUTHORITIES ISO
MOTION FOR FINAL APPROVAL

3:16-cv-02816-AJB-AHG

dispute regarding the Settlement Agreement or any issues that may arise with respect to settlement administration.

For all of the foregoing reasons, Plaintiffs and Class Counsel request the motion be granted and a corresponding Order entered by the Court.

Respectfully submitted,

Dated: January 6, 2022          **BERGER, WILLIAMS & REYNOLDS, LLP**

By: /s/ Timothy G. Williams
Timothy G. Williams
Attorneys for Plaintiffs/Class Counsel

PLAINTIFFS' POINTS AND AUTHORITIES ISO
MOTION FOR FINAL APPROVAL

3:16-cv-02816-AJB-AHG